

**American Civil Liberties
Union of Idaho**
P.O. Box 1897
Boise, ID 83701
Telephone 208.923.1016
E-mail psouthwick@acluidaho.org

June 3, 2024          **By Email and Mail**

Josh Tewalt
Director
Idaho Department of Corrections
1299 N. Orchard St., Suite 110
Boise, ID 83706
jtewalt@idoc.idaho.gov

Karin Magnelli
Lead Deputy Attorney General
Department of Correction
700 W. Jefferson St., #210
Boise, ID 83720
kmagnell@idoc.idaho.gov

Miriam Anderson
Contract Monitor
1299 N. Orchard St., Suite 110
Boise, ID 83706
mianders@idoc.idaho.gov

Centurion of Idaho, LLC
c/o Christina M. Hesse
Duke Evett, PLLC
1087 W. River St., Suite 300
Boise, ID 83702
cmh@dukeevett.com

Dear Director Tewalt, Karin Magnelli, Miriam Anderson and Christina Hesse:

We are writing to express our grave concerns about the impact of HB 668 ("the Act") on transgender individuals incarcerated in Idaho state prisons. Not only will the agency's implementation of the Act violate clearly established Ninth Circuit law, but it will also cause predictable and dire harm to transgender individuals incarcerated in Idaho who are being treated with the medication the new law prohibits. We urge you to ensure that the agency and those providing medical treatment to individuals in the custody of the Idaho Department of Corrections ("IDOC") comply with the requirements of the United States Constitution. Please respond to this

letter by June 7, 2024, to ensure that we can work out a solution in advance of the Act's effective date.

As you are likely aware, HB 668 was passed by the Idaho legislature and signed by Governor Little in March of this year and is set to go into effect on July 1. The law prohibits, among other things, the use of public funds for any medical treatment "for purposes of altering the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex." I.C.A. 18-8901 (2). The law further prohibits the use of any "state property, facility, or building" to provide such medical treatments. I.C.A. 18-8901 (6). By its plain terms, if enforced in IDOC, the Act will have the effect of preventing the agency and its officials and contractors from initiating and/or continuing medical treatment for prisoners with gender dysphoria diagnoses.

The Supreme Court has long held that prison officials' conscious disregard of a prisoner's serious medical needs amounts to cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[I]nmates have no choice but to rely on prison authorities to treat their medical needs, and 'if the authorities fail to do so, those needs will not be met.'" *Edmo v. Idaho Dep't of Correction*, 358 F. Supp. 3d 1103, 1108 (D. Idaho 2018), and aff'd in part, vacated in part, remanded sub nom. *Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019). The Ninth Circuit and many of its sister circuits have applied that black letter rule to the treatment of gender dysphoria in prison. *Id.*; Rosati v. Igbinoso, 791 F.3d 1037, 1040 (9th Cir. 2015) (alleged denial of gender affirming surgery due to blanket ban states an Eighth Amendment claim); *De'Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003)(denying hormone therapy to prisoner "based solely on the Policy rather than on a medical judgment" states deliberate indifference claim); *Fields v. Smith*, 653 F.3d 550, 552–53, 558–59 (7th Cir. 2011) (law banning hormone treatment and gender affirming surgery, even if medically necessary, violates the Eighth Amendment).

There is no question that gender dysphoria is a serious medical condition for purposes of the Eighth Amendment. As the Ninth Circuit explained in a challenge to Idaho's previous refusal to provide surgical treatment to a transgender prisoner with gender dysphoria:

> [Idaho] does not dispute that [Ms.] Edmo's gender dysphoria is a sufficiently serious medical need to trigger the State's obligations under the Eighth Amendment. Nor could it. Gender dysphoria is a "serious ... medical condition" that causes "clinically significant distress"—distress that impairs or severely limits an individual's ability to function in a meaningful way. DSM-5 at 453, 458.

*Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019). Upon information and belief, there are dozens of other transgender individuals in IDOC custody who, like Ms. Edmo, rely on treatment for gender dysphoria – treatment that IDOC already recognizes is medically necessary for them. Cutting these prisoners off from treatment for their serious medical condition and prohibiting the initiation of future necessary treatment runs headlong into the clear requirements of the Constitution.

The Ninth Circuit has held that denying medical treatment based on an administrative policy and not medical judgment is the "very definition of deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014). That is precisely what will happen here if IDOC enforces HB 668 in prisons. Every prisoner who currently needs or who may come to need hormone therapy to treat gender dysphoria will have that treatment withdrawn or denied even when every medical professional agrees it is necessary. This is not a close case. This is a textbook Eighth Amendment violation. As the Seventh Circuit held in affirming an injunction against a comparable law, "[r]efusing to provide effective treatment for a serious medical condition serves no valid penological purpose and amounts to torture." *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011).

Taking prisoners with gender dysphoria off their prescribed medication for non-medical reasons will result in serious and irreparable harms. At trial in *Fields v. Smith*, a Wisconsin case that resulted in the striking down of a comparable law to HB 668, the Defendants' own experts explained the harms of such a law:

> When asked why the taking away of medical decision-making was a concern, Dr. Kallas added: "It's difficult to articulate because it seems so obvious to me, that it's important that doctors are abl[e] to use their clinical judgment with respect to conditions that are significant, especially when it pertains to medically necessary treatment." (Trial Tr. vol. 2, 186, Oct. 23, 2007.) DOC Medical Director Dr. Burnett further testified that he did not believe it was medically appropriate to taper and terminate hormone therapy for inmates with GID.

*Fields v. Smith*, 712 F. Supp. 2d 830, 864 (E.D. Wis. 2010), aff'd, 653 F.3d 550 (7th Cir. 2011).

There are prisoners who are currently panicking as July 1st approaches. We trust that you recognize the serious harm that will flow from any enforcement of this law by IDOC, Centurion and any other contracted providers and want to work together to come up with a solution. Please contact us at psouthwick@acluidaho.org and cstrangio@aclu.org by June 7 at 5 PM so we can realistically work out a plan to prevent the catastrophic injury that will result if these treatments are taken away from the transgender prisoners who rely on them.

Very truly yours,

Paul C. Southwick
Legal Director
ACLU of Idaho

Chase Strangio
Deputy Director for Transgender Justice
ACLU's LGBT & HIV Project