Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org

*Motion for admission *pro hac vice* forthcoming

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **JANE POE**, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>**RAÚL LABRADOR**, et al.,<br><br>*Defendants*. | Case No. 1:24-cv-00306- DCN<br><br>**PLAINTIFFS JANE POE AND JANE DOE'S MEMORANDUM ISO MOTION TO PROCEED IN PSEUDONYM** |

## INTRODUCTION

Plaintiffs Jane Poe and Jane Doe request permission to proceed pseudonymously because they fear retaliation and harassment from IDOC staff and fear for their safety as transgender women in state custody. Ms. Poe and Ms. Doe are both incarcerated at the Idaho State Correctional Institution ("ISCI").[1]

## PROCEDURAL HISTORY AND FACTS

On July 1, 2024, the Court issued an Order granting a provisional Temporary Restraining Order as to the named Plaintiffs (Dkt. 13). The Court declined to enter a temporary restraining order as to the putative class, and deferred ruling on Plaintiffs' Motion for Class Certification and Preliminary Injunction until after a hearing set for July 15, 2024. The Court will use the hearing "to determine whether to enter a formal TRO or preliminary injunction during the pendency of this case." (Dkt. 13, p. 7).

Because the Court's provisional TRO only preserved the status quo as to Plaintiffs, and because, at the time, all Plaintiffs were only known to the Court and the Defendants by their pseudonymous names, it became necessary to disclose their legal and chosen names to counsel for Defendants in order for Plaintiffs to receive their prior dosage of medications consistent with the Court's order. Plaintiffs' counsel has made those disclosures to counsel for Defendants. *See* State Defendants' Withdrawal of Motion to Compel, Dkt. 19, p. 2. Counsel for the State Defendants have agreed to maintain the confidentiality of Plaintiffs' identities until either the Court decides Plaintiffs' Motion to Proceed in Pseudonym, and denies it, or they otherwise obtain permission from this Court. Counsel for Plaintiff have asked counsel for the Centurion Defendants to join

---

[1] Plaintiff Jane Roe, currently incarcerated at Idaho State Correctional Center, has decided to proceed in her legal name and chosen name. Her legal name, Cole Robinson, will be used on the title of the complaint and where otherwise necessary. Where possible, she requests to be referred to as Ms. Katie Heredia.

counsel for the State Defendants in the confidentiality agreement.

Plaintiff Jane Poe seeks permission to proceed in pseudonym to protect herself from retaliation and harassment. Jane Poe Declaration ISO this Motion ("Poe Decl."), ¶ 3. Ms. Poe also fears for her safety. Jane Poe Declaration ISO Motion for TRO (Dkt. 2-4) ("Poe TRO Decl.), ¶ 3. Ms. Poe reports that some correctional officers within the facility are not friendly towards the transgender population. Poe Decl. ¶ 4. Ms. Poe is concerned that the use of her legal or chosen name may make her a target for harassment. Poe Decl. ¶ 4. Ms. Poe reports that certain officers frequently misgender her. Poe Decl. ¶ 5. When Ms. Poe tells them that she is transgender and uses she/her pronouns, she has been told that she is in a men's facility, and will be treated like a man. Poe Decl. ¶ 5.

Ms. Poe recently heard an officer telling a group of prisoners that it was the transgender prisoners' fault that the food in the facility is poor, and that Idaho children's education is deteriorating. Poe Decl. ¶ 6. Ms. Poe believes the officer was implying that the cost of medical care for gender dysphoria was causing harm to Idahoans and to the prison population who is not transgender specifically. *Id*. The prisoners listening to the officer seemed upset and gave Ms. Poe strange looks. *Id*. It made Ms. Poe feel unsafe. *Id*.

In addition, this litigation involves information regarding Ms. Poe's medical treatments and diagnoses that is highly sensitive in nature. Poe TRO Decl. (Dkt. 2-4), ¶¶ 9-11; 16-21.

Plaintiff Jane Doe seeks to proceed in pseudonym to protect herself from retaliation and harassment. Declaration of Jane Doe ISO this Motion ("Doe Decl."), ¶ 3. Ms. Doe also fears for her safety. Declaration of Jane Doe ISO Motion for TRO (Dkt. 2-3) ("Doe TRO Decl."), ¶ 3. Some correctional officers within the facility are not friendly towards the transgender population. Doe Decl. ¶ 4. Ms. Doe is concerned that the use of her name may make her a target for harassment.

2

Doe Decl. ¶ 4. Ms. Doe is seeking parole within the timeframe in which this litigation is likely to be active. Doe Decl. ¶ 5. Ms. Doe is concerned that her participation in this lawsuit could influence a parole board's decision to release her. Doe Decl. ¶ 5. In addition, this litigation involves information regarding Ms. Doe's medical treatments and diagnoses that is highly sensitive in nature. Poe TRO Decl. (Dkt. 2-3), ¶¶ 8-25.

## ARGUMENT

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Sch.,* 596 F.3d 1036, 1042 (9th Cir. 2010). However, the Ninth Circuit has allowed parties to use pseudonyms "in the 'unusual case' when nondisclosure of the party's identity 'is necessary… to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981).) "{A} party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile Corp.*, 214 F.3d at 1068. "Applying this balancing test, courts have permitted plaintiffs to use pseudonyms… when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature…". *Id.*

Here, Plaintiffs' concerns for their safety and the risk of harassment or retaliation are justified and favor a finding that proceeding pseudonymously is permitted and warranted. In *Doe v. Pennsylvania Department of Corrections*, 585 F.Supp.3d 797 (W.D. Penn. 2022) ("*Penn DOC*"), the Court permitted an incarcerated non-binary individual to proceed in pseudonym, reasoning, in part, that:

"The Court cannot ignore the unique nature of congregant prison life. Life in

3

> even a low-security correctional institution presents heightened risks to inmates who are perceived to differ from the typical. [Plaintiff] Doe points out that at least one study has found that transgender people in jail and prison are five times more likely than cisgender people to be sexually assaulted by facility staff and over nine times more likely to be sexually assaulted by other incarcerated people. *See* [] Nat'l Center for Transgender Equality, *2015 U.S. Transgender Survey, Executive Summary*, 13 (2016), https://www.ustranssurvey.org/reports#USTS....Doe also cites data showing that 39.9% of transgender prisoners in state and federal facilities suffered sexual victimization in 2011-2012. *See* Allen J. Beck, U.S. Dept. of Justice, Bureau of Justice Statistics, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12* (2014) (reporting the sexual victimization statistics for transgender inmates), https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf []. Courts have found such statistical evidence supports leave to proceed under a pseudonym. *See Genesis HealthCare*, 535 F. Supp. 3d at 340 (plaintiff cited "statistical evidence and media reports describing the danger faced by transgender individuals in the community."); *Doe v. The Gardens for Memory Care at Easton*, No. 5:18-cv-4027, Doc. No. 3, p. 2 (M.D. Pa. Sept. 21, 2018) (same)."

*Penn DOC*, 585 F.Supp.3d at 805 (some internal citations and notations omitted). Other research corroborates these and similar dangers, such as harassment from correctional staff. The information contained below is from an article attached as Exhibit A to this Memorandum.

A 2015 study of 27,715 transgender people in the US found that among the 554 transgender people who had been incarcerated in the past year, 43% reported

4

they had been physically assaulted and 17% had been sexually assaulted by another incarcerated person – a sexual assault rate that is nine to ten times higher than that of the general US incarcerated population.

o   A 2011 study of 6,454 transgender and gender non-conforming people in the US found that among the 749 transgender women who had been incarcerated, **38% reported they had been harassed**, 9% physically assaulted, and 7% sexually assaulted **by correctional staff**.

o   In addition to physical and sexual assault, gender-based mistreatment of incarcerated transgender people by correctional officers and healthcare providers can come in the form of misgendering (i.e., using the incorrect name or pronoun – at times intentionally) as well as restricting access to gender-appropriate clothing, grooming items, and even medically-necessary, gender-affirming medical and psychological healthcare, including hormone therapy.

o   Further, transgender individuals who attempt to violate gender-related policies (e.g., grooming standards) are often met with punishment by correctional staff including citations that can lead to longer prison sentences, the restriction of privileges, and solitary confinement.

o   Correctional staff working in male prisons in the US and Australia have been reported to place transgender women in solitary confinement for extended periods disguised as a measure of "safety" and "protection" from abuse from other incarcerated people, also known as "protective custody" or "administrative segregation[.]" Thus, it follows, that even in the case when transgender individuals are reportedly isolated for their safety, such isolation can potentially

5

have significant and pervasive damaging psychological health consequences[.]

Annette Brömdal et al., *Whole-Incarceration-Setting Approaches to Supporting and Upholding the Rights and Health of Incarcerated Transgender People*, 20 Int'l J. Transgenderism 341, 342-43 (2019) (internal citations omitted) (emphasis added).

In light of the data demonstrating the risks of violence, harassment and retaliation faced by incarcerated transgender individuals, special circumstances justify Plaintiffs' request to proceed in pseudonym.

Additionally, the fact that Plaintiff Jane Roe is no longer proceeding in pseudonym does not undermine Jane Poe and Jane Doe's request to preserve their anonymity, as whether to proceed in pseudonym is a highly personal decision that involves weighing risks. In *Penn DOC, supra,* one of the defendants argued "that 'gender dysphoria litigants are not entitled as a matter of right to proceed under a pseudonym' and note[d] that 'another gender dysphoria litigant represented by Plaintiff's current counsel in this case is not proceeding under a pseudonym.' (internal citation omitted)." 585 F.Supp.3d at 806. In response, the Plaintiff argued "that whether to proceed under a pseudonym is a highly personal decision and that another plaintiff's decision to litigate publicly is not relevant to the present motion." *Id*. The Court then reasoned that it was "inclined to agree with [the Plaintiff] on this point and, in any event, the analysis of the issue turns in part on the circumstances of each plaintiff." *Id*. Here, the facts contained in the declarations of Jane Poe and Jane Doe, who are incarcerated in a different facility than the plaintiff formerly known as Jane Roe, justify granting their request to preserve their anonymity, regardless of Jane Roe's decision to no longer proceed in pseudonym.

Additionally, other courts have granted incarcerated plaintiffs' requests to proceed in pseudonym. *See Jane Doe #2 v. California*, 2023 WL 3956475 (E.D. Cal. June 12, 2023) (granting incarcerated plaintiffs' motion to proceed pseudonymously); *Doe 1 v. Michigan Dept. of*

*Corrections*, 2014 WL 2207136 (E.D. Mich. May 28, 2014) (same).

Moreover, permitting Plaintiffs to proceed in pseudonym here will not be prejudicial to Defendants in this litigation as Plaintiffs have already disclosed their true identities to counsel for Defendants and will continue to do so as necessary for discovery and other purposes. *See* State Defendants' Withdrawal of Motion to Compel, Dkt. 19, p. 2. Additionally, allowing Plaintiffs to proceed in pseudonym will not undermine the public's interest in this case. *See Advanced Textile Corp.*, 214 F.3d at 1072 ("The district court did not explain, and we fail to see, how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case").

## CONCLUSION

For foregoing reasons, Plaintiffs Jane Poe and Jane Doe respectfully request that the Court grant them permission to proceed in pseudonym.

Date:     July 3, 2024                                              Respectfully submitted,

/s/ *Paul C. Southwick*
Paul C. Southwick