Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org

*Motion for admission *pro hac vice* forthcoming

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **JANE POE**, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>**RAÚL LABRADOR**, et al.,<br><br>*Defendants*. | Case No. 1:24-cv-00306- DCN<br><br>**PLAINTIFFS REPLY ISO MOTION FOR TRO, PROVISIONAL CLASS CERTIFICATION AND PRELIMINARY INJUNCTION** |

**INTRODUCTION**

Plaintiffs seek temporary emergency relief narrowly tailored to a policy that is clearly unconstitutional under settled precedent. Before HB 668 was passed, IDOC, Centurion, and their contracted providers diagnosed numerous incarcerated people with gender dysphoria, which the Ninth Circuit has recognized as a serious medical condition, and prescribed hormone therapy as a medically necessary treatment. Plaintiffs' counsel heard from dozens of current class members, and spoke with many of them, who need this care. Now the state wishes to deny this care to the same people it has already determined require this medical treatment, and who, unlike non-incarcerated people, have nowhere else to obtain this care. That is unconstitutional. Plaintiffs request a formal temporary restraining order to preserve the status quo for themselves and the putative class.[1]

Plaintiffs also move this Court for a preliminary injunction. However, they continue their request that the Court defer ruling on this aspect of their Motion and "allow the parties to agree to a briefing schedule for the preliminary injunction." Dkt. 2, p. 2. Such a request is merited by the State Defendants' submission of over 400 pages of expert testimony. While Plaintiffs provide sufficient argument in this Reply to sustain a TRO, the Court may be aided by a more fulsome rebuttal as Plaintiffs cannot address all the issues raised by Defendants' experts in this 10-page reply brief. Postponing a ruling on Plaintiffs' Motion for Preliminary Injunction will enable the parties, and the Court, to more carefully evaluate the expert testimony while preserving the status quo to prevent irreparable harm to the Plaintiffs and putative class.

I.      **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AND, IN ANY EVENT, RAISE SERIOUS QUESTIONS ON THE MERITS**

---

[1] The Centurion Defendants do not oppose Plaintiffs' Motion as to the State Defendants. *See* Dkt. 23.

IDOC's own policy, in place since 2002, recognizes that hormone therapy is necessary for some individuals with gender dysphoria. Southwick Decl., Ex. A (IDOC Policy), at 5 ("Hormone replacement therapy will be provided as needed, but only when medically indicated and consistent with the inmate's treatment plan."). IDOC routinely provided hormone therapy pursuant to its policy for over twenty years prior to HB 668. Moreover, the Ninth Circuit has recognized that gender dysphoria is a serious medical need. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 803 (9th Cir. 2019); *see also Allard v. Gomez*, 9 F. App'x 793, 795 (9th Cir. 2001) (holding that triable issues existed as to "whether hormone therapy was denied [to plaintiff] . . . as a result of a blanket rule, the application of which constituted deliberate indifference to [plaintiff's] medical needs."); *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015). Other courts have recognized the same. *See De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013); *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011). Even now, Defendants do not contest that gender dysphoria is a serious medical need, their argument is limited to the appropriate treatment.

Defendants' expert declarations are largely irrelevant as they focus extensively on treatments and patient populations not at issue in this motion—minors, surgery, and puberty blockers. *See, e.g.*, Cantor Decl., Dkt. 24-1 at ¶¶ 17-19; 22-42; 74-79; 81-123; 129-135; 138-191; 198-205; 208-215; 220-226; 236-238; 241-303; 307-328; 330; 356-359; 414-433 (detailing treatments for minors, puberty blockers, and gender affirming surgery); Laidlaw Decl., Dkt. 24-2 at ¶¶ 57-105; 148-162 (same).

Moreover, as to the adult transgender population, both experts have testified in other recent cases that medical treatment for gender dysphoria is beneficial for some adults. *See* Ex. B at 126:18-21, Hearing Tr., *Loe v. Texas*, D-1-GN-23-003616 (2023) ("Q. Dr. Cantor, you support the provision of medical treatment for gender dysphoria in adults; is that correct? A. That is correct.");

Ex. C at 300:18-24, Hearing Tr., *Eknes-Tucker v. Ivey*, 2:22-cv-00184-LCB-CWB (2022) ("Q. Dr. Antommaria wrote. . . 'Quote, gender-affirming medical care is supported by clinical studies.' Is he right? A. That's true for adults, but that's not true for the other groups.") (cleaned up); Ex. D at 127:7-10, Cantor Dep., *Moe v. Yost*, 24-cv-002481 (2024) ("Q. You support the provision of medical treatment for gender dysphoria in adults in some circumstances, correct? A. Yes, I do."); Ex. E at 146:7-15, Laidlaw Dep., *C.P. v. Blue Cross Blue Shield of Illinois*, 3:20-cv-06145-RJB (2022) ("Q. Do you believe that adults, people above the age of majority, should not be able to access medical treatment in the form of hormones or surgery as treatment for gender dysphoria? A. I don't believe adults should be obstructed or blocked from receiving, you know, gender affirmative hormones or surgeries provided–provided, again, they have capacity to consent.) (cleaned up).

State Defendants spend considerable, unwarranted space in their brief arguing that WPATH is a discredited organization. To begin, the WPATH standards of care are independently endorsed by the American Medical Association, the Endocrine Society, the American Psychiatric Association, and the American Psychological Association. Ettner Decl., Dkt 2-5 at ¶ 26. The Ninth Circuit adopted them in 2019. *Edmo v. Corizon, Inc.*, 935 F.3d at 767. And Judge Winmill followed those standards in 2023. (*Poe v. Labrador*, 2023 WL 8935065, at *4 (D. Idaho Dec. 26, 2023)). Defendants' attacks on the legitimacy of WPATH and the Standards of Care are overshadowed by the testimony of Defendants' own experts, as stated above, who both testified that hormone treatment for gender dysphoria is appropriate for some transgender adults. Further, Dr. Cantor's testimony appears to rely on an incomplete document production from another case and contains fragments of a very large production from which he draws conclusions about a process he appears to have had no involvement in. *See generally* Cantor Decl., Dkt. 24-1 at ¶¶ 142-175.

Defendants also claim that plaintiffs must be evaluated by a medical doctor. However, the plaintiffs "do not dictate what medical care they receive; only DOC medical personnel can determine what treatments are medically necessary and appropriate." *Fields v. Smith*, 712 F. Supp. 2d 830, 864–65 (E.D. Wis. 2010), *supplemented* (July 9, 2010), *aff'd*, 653 F.3d 550 (7th Cir. 2011). The passage of HB 668 only "den[ies] DOC medical personnel the discretion they had before to prescribe hormones or surgery, when, in their own judgment, they were medically necessary." *Id.* And, IDOC has already determined this medical necessity. Each plaintiff has been evaluated for gender dysphoria by an IDOC psychologist, who confirmed that diagnosis with two internal committees[2] (Roe Decl., Dkt. 2-2 at ¶ 13-14; Doe Decl., Dkt. 2-3 at ¶ 13-14; Poe Decl., Dkt. 2-4 at ¶ 9), has been prescribed hormone therapy by a licensed endocrinologist (Roe Decl. ¶ 16; Doe Decl. ¶ 15; Poe Decl. ¶ 10), and receives regular monitoring (Roe Decl. ¶ 16; Poe Decl. ¶ 10). *See also Fields v. Smith*, 653 F.3d at 557 (noting that the proper focus of a facial inquiry is those individuals to whom the law is a restriction and holding that, because DOC only prescribes hormone therapy in the case of medical necessity, "any application of [the ban on hormone therapy] would necessarily violate the Eighth Amendment"); *see also Moore v. Valley*, 2023 WL 8653860, at *7 (D. Idaho Dec. 14, 2023) ("The Eighth Amendment requires that prison medical providers exercise informed medical judgment. Thus, if a medical treatment is denied because of a blanket policy—rather than an individualized determination of the appropriate treatment for the particular inmate—a factfinder may infer deliberate indifference.").

Defendants contend that *Pickup v. Brown*, 740 F. 3d 1208 (9th Cir. 2014) and *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022), stand for the proposition that "[o]nce Idaho enacted this

---

[2] *See also* Ex. A at 4-5, IDOC Policy (detailing review of gender dysphoria diagnosis and treatment plan by Management and Treatment Committee and Administrative Review Committee).

statute, as to cross-sex hormones and cross-sex surgery, we are no longer in a situation where the Court evaluates competing testimony about what the standard of care should be." Defs. Opp., Dkt. 24 at 5. To begin, both cases involve a free speech challenge about mental healthcare for *minors*. Moreover, State Defendants ignore *Pickup*'s limitation on a state's police power as one in which medical care is *reasonably* regulated by the state. *See Pickup*, 740 F.3d at 1236 (noting "medical or mental health treatment that the state has *reasonably* deemed harmful.") (emphasis added); *see also Tingley*, 47 F.4th at 1078-79 ("Washington reasonably relied on scientific evidence and the *consensus of every major medical organization* to prohibit the [conversion therapy].") (emphasis added). Without a reasonableness requirement, Idaho could impose a blanket ban on insulin treatment for diabetics, dialysis, or HIV treatment for adults in prisons, and this Court would not be able to evaluate whether such bans were reasonable or constitutional. *See also Fields v. Smith*, 653 F.3d at 556–57 ("Just as the legislature cannot outlaw all effective cancer treatments for prison inmates, it cannot outlaw the only effective treatment for a serious condition like [gender dysphoria].").

Defendants now claim that class members will not be harmed because their medication will be tapered, rather than abruptly cut off. However, the result is the same—the withdrawal of necessary medical care for non-medical reasons. Plaintiffs' filings speak to the irreparable harm and intolerable risks of denying gender-affirming care at the medically necessary levels to individuals with gender dysphoria. Pls. Mot. for PI, Dkt. 2-1, at 9-12, 14-15; Ettner Decl. at ¶¶ 42, 55-60, 62.

## II.        PROVISIONAL CLASS CERTIFICATION IS WARRANTED

Courts in the Ninth Circuit "routinely grant provisional class certification for purposes of entering injunctive relief." *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012), *aff'd*, 501 F. App'x 713 (9th Cir. 2012); *see also Al Otro Lado*, 952 F3d 999, 1005,

n.4 ("We have approved provisional class certification for purposes of preliminary injunction proceedings."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-43 (9th Cir. 2012) ("We conclude the district court . . . did not abuse its discretion by granting provisional class certification.").

Provisional class certification depends on and is in service of the associated preliminary relief. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021). The provisional class is tailored to the relief sought and its certification expires alongside the associated preliminary relief. *Id.*; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time.").

In *Labrador v. Poe*, the Supreme Court established limitations on preliminary relief which are inapplicable here. *First*, that case was brought on behalf of two plaintiffs, not a putative class. While relief must be tailored to the parties that brought the case, in a class action, the party is the class. Both Justice Gorsuch and Justice Kavanaugh acknowledged the role of class actions in issuing preliminary relief to all affected parties. *Labrador v. Poe*, 601 U.S. ___, 144 S.Ct. 921 at 927 (2024) (J. Gorsuch, concurring) ("If they seek relief for a larger group of persons, they must join those individuals to the suit or win class certification."); at 932 (J. Kavanaugh, concurring) (noting an injunction can have more widespread effect if the plaintiffs "file a class action for classwide injunctive relief under Rule 23(b)[]").

*Second*, the emergency relief sought here is tailored to the specifics of the challenged law. Plaintiffs seek protection only as to the hormone therapy they would otherwise receive under the direction of IDOC's medical contractors, and all named plaintiffs currently receive hormone therapy. Plaintiffs are not seeking a TRO or preliminary injunction for surgery.

Moreover, provisional certification has been used by <u>prisoners</u> seeking TROs and

preliminary injunctions; *See, e.g., Maney v. Brown*, 516 F.Supp.3d 1161, 1171-73 (D. Or. Feb. 2, 2021) (granting provisional class certification to a class of prisoners bringing Eight Amendment claim and granting related TRO); *Chatman v. Otani*, 2021 WL 2941990, at *12 (D. Haw. July 13, 2021) (same); *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 687 (C.D. Cal. 2020) (same); as well as civil detainees; See, e.g., *Hernandez Roman v. Wolf*, 829 F. App'x 165, 173 (9th Cir. 2020) (affirming certification of provisional class of detainees); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1233 (9th Cir. 1999), supplemented, 236 F.3d 1115 (9th Cir. 2001) (affirming preliminary injunction issued as to provisionally certified class); *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 39 (N.D. Cal. 2020) (provisionally certifying class of detainees for purposes of seeking a TRO);

***The Class Meets the Requirements of Rule 23.*** With respect to numerosity, Plaintiffs have testified under oath that they are aware of 24 people who will be affected by HB 668 in ISCI and ISCC, two of nine IDOC facilities. Roe Decl. ¶ 25; Doe Decl. ¶ 22; Poe Decl. ¶ 16. A class of 24 current individuals satisfies numerosity, particularly considering that the class will increase over time as individuals needing hormone therapy become incarcerated. *See Rannis v. Recchia*, 380 Fed. Appx. 646 (9th Cir.2010) (class of 20 satisfies the numerosity requirement).

The plaintiff class easily meets commonality and typicality requirements. The defendants appear to adopt the argument, thoroughly rejected by the Ninth Circuit in *Parsons v. Ryan*, that "'a systemic constitutional violation [of the sort alleged here] is a collection of individual constitutional violations,' each of which hinges on 'the particular facts and circumstances of each case.'" *Parsons v. Ryan*, 754 F.3d 657, 675-685 (9th Cir. 2014). In *Parsons,* the Ninth Circuit examined this allegation in depth and rejected it, concluding that "defendants' view rests, however, on a fundamental misunderstanding of *Wal–Mart*, Eighth Amendment doctrine, and the plaintiffs' constitutional claims." *Parsons v. Ryan*, 754 F.3d 657, 675–76 (9th Cir. 2014). Here, Plaintiffs

satisfy the tests of commonality and typicality because they challenge a blanket ban on hormone treatment that applies to all members of the class, and they seek the same injunctive relief.

While Plaintiffs did not specifically argue adequacy in their Motion, they alleged the adequacy of the Plaintiffs in their Complaint (Dkt. 1 at ¶ 22), and included argument with respect to the other class certification factors that sufficiently demonstrates adequacy. In the Ninth Circuit, "The adequacy inquiry is addressed by answering two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (internal citation omitted). Here, the named plaintiffs have no conflicts with other members of the class because, as noted above, they suffer the same injury and seek the same relief. The named plaintiffs also have the same weighty interest in pursuing an order protecting their care. *See* Pls.' Mem. ISO Mot., Dkt. 2-1 at 19 ("The named Plaintiffs have a substantial stake in these proceedings and seek an injunction that will benefit all members of the classes."). This "nexus with the class" ensures that the named plaintiffs will vigorously represent the interests of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

Similarly, class counsel do not have conflict with absent class members, as the claims they are pursuing on behalf of the named plaintiffs are the same claims they are pursing on behalf of the class, and they are presumed to be competent, fair and adequate. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D.Cal.1987) ("It is presumed plaintiffs' counsel is competent to litigate this case and will fairly and adequately represent the interests of the class members"). Moreover, counsel for the named Plaintiffs addressed their experience with claims like those before the Court in their initial briefing on this Motion. Dkt. 2-1 at 21 ("The attorneys of the American Civil

Liberties Union Foundation and ACLU of Idaho Foundation possess substantial expertise litigating constitutional and civil-rights challenges to governmental action, including specific experience representing transgender plaintiffs in civil rights and prisoner's rights litigation.").

Plaintiffs' counsel also satisfies the requirements of Fed. R. Civ. P. 23(g)(1)(A)(i-iv). It is self-evident from the Complaint and this Motion that counsel has done extensive work in identifying and investigating the claims in this action. Fed. R. Civ. P. 23(g)(1)(A)(i). Additionally, the Plaintiffs' Motion for Preliminary Injunction details their experience with these claims and knowledge of the applicable law. Dkt. 2-1 at 21; *see* Fed. R. Civ. P. 23(g)(1)(A)(ii-iii). Finally, counsel for plaintiffs includes four attorneys and two law firms—sufficient resources to represent the class. Fed. R. Civ. P. 23(g)(1)(A)(iv). Consequently, the named Plaintiffs selection of class counsel should not be disturbed.

*Absent class members are not required to exhaust their administrative remedies.*[3] *See Farley v. Tewalt*, 2024 WL 2116212, at *24 (D. Idaho Mar. 4, 2024), *report and recommendation adopted*, 2024 WL 1550645 (D. Idaho Apr. 10, 2024) ("[A] class action requires only that the named class representatives exhaust their administrative remedies."); *Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004) (noting that exhaustion of remedies requirement is satisfied for class action if named plaintiff representing class exhausted remedies); *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004); *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

This is for two reasons. *First*, exhaustion as to only the named plaintiffs "advances the purpose of administrative exhaustion, which . . . 'is to put the [administrative authority] on notice

---

[3] Defendants did not raise a failure to exhaust remedies as to the named plaintiffs. Therefore, plaintiffs bear no burden of establishing exhaustion at this time. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("[A] defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy. . . The ultimate burden of proof, however, remains with the defendants.").

of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'" *Chandler v. Crosby*, 379 F.3d at 1287. *Second*, a rule that absent class members must exhaust "'could impose an intolerable burden upon the inmate complaint review system.' . . . Moreover, in cases like this one, where the composition of the class is subject to constant change beyond the class members' control, it could be extraordinarily difficult for all class members to exhaust administrative remedies before filing suit." *Id.* Requiring absent class members to exhaust their remedies would presumably necessitate proof from in this case, dozens or more, but in other cases thousands (see, e.g., *Parsons v. Ryan*, 289 F.R.D. 513, 516 (D. Ariz. 2013), *aff'd*, 754 F.3d 657 (9th Cir. 2014) (class action of 33,000 class members)), of absent individuals. This would waste resources without serving the purposes of PLRA exhaustion; thus, exhaustion is not required as to absent class members.

### III.      CONCLUSION

For the foregoing reasons, and those argued in Plaintiffs' initial brief on this Motion, the Court should grant Plaintiffs' request for a TRO and Provisional Class Certification, and defer ruling on Plaintiffs' request for Preliminary Injunction.

Date:      July 9, 2024                                    Respectfully submitted,

                                                                    /s/ *Paul C. Southwick*
                                                                    Paul C. Southwick