RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

JAMES J. SIMERI, ISB #12332
GREGORY E. WOODARD, ISB #11329
MATTHEW L. MAURER, ISB #12575
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
james.simeria@ag.idaho.gov
greg.woodard@ag.idaho.gov
matthew.maurer@ag.idaho.gov

*Attorneys for Defendants Raúl Labrador,
in his official capacity as Attorney General
of the State of Idaho; Brad Little, in his official
capacity as Governor of the State of Idaho,
Josh Tewalt, in his official capacity as the
Director of the Idaho Department of Corrections;
and Bree Derrick, in her official capacity as
the Deputy Director of IDOC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE ROE, *et al.*,<br><br>                    *Plaintiffs,*<br><br>           *v.*<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; *et al.*,<br>                    *Defendants.* | Case No. 1:24-cv-00306-DCN<br><br>**STATE DEFENDANTS' RESPONSE TO PLAINTIFFS JANE POE AND JANE DOE'S MOTION TO PROCEED IN PSEUDONYM [Dkt. 22-1]** |

Open and public trials are the bedrock of America's justice system. In the present era of "anonymous internet trolls," our nation's courts are havens of transparency. Those seeking to use the courts do so with a shared understanding about the importance of transparency. Each party identifies himself knowing that justice is best served when each party is publicly accountable for his claims and defenses. Unlike the internet, our courts do not allow people to hide behind anonymity, except in rare circumstances. Open and transparent courts are good for litigants, and they are also good for the public. This public good is the basis for the common-law right of the public's access to court proceedings.

Allowing parties to proceed anonymously, using pseudonyms instead of their true identities, impairs this common-law right of public access. It also runs counter to the Federal Rules of Civil Procedure, which mandate that all pleadings contain the name of the parties (Rule 10(a)) and require actions to be "prosecuted in the name of the real party in interest" (Rule 17(a)). Thus, courts have allowed lawsuits to proceed anonymously only in exceptional circumstances, where there is a reasonable danger of real and severe harm if a plaintiff's identity were revealed. The risk that a plaintiff may suffer embarrassment is not enough. Remote or speculative fears are not enough. Even fear of harm based on actual threats of physical violence is not enough to justify abridging the right to open courts, when that fear is not reasonable.

Plaintiffs Poe and Doe[1] have proceeded anonymously thus far in this case and have now requested the Court's permission to continue using these pseudonyms. Plaintiffs Poe and Doe cite a fear of retaliation and harassment from IDOC staff, claiming they will make themselves targets if Plaintiffs are required to use their true identities in this suit. Plaintiffs have also cited a generalized fear for their "safety" and have provided this Court with surveys from convicts around the country, which purportedly support their claimed fears. But generalized fears about "safety" and "harassment" are not enough. Plaintiffs Poe and Doe have defined "safety" concerns to include "misgendering" (referring to Plaintiffs by their non-preferred pronouns). Though one can have sympathy for the distress this may cause Plaintiffs, this fear of being "misgendered," even if it were justified, does not overcome the public's right to transparency, especially where Plaintiffs are attacking the constitutionality of popularly enacted legislation.

## ARGUMENT

There are few tenets of the American justice system as paramount as the transparency and openness of the nation's court proceedings. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1038 (9th Cir. 2010). "Plaintiffs' use of fictitious identities runs afoul of the public's common-law right of access to judicial proceedings." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th

---

[1] Plaintiff Cole Robinson, formerly identified as Plaintiff Roe, is proceeding under his legal name. Plaintiffs' counsel has proposed using Plaintiff Cole Robison's name on the title of the complaint, and State Defendants hereby formally agree to such an amendment/correction to the case caption and request the Court change the short caption to Robinson, *et al.* v. Labrador, *et al.*

Cir. 2000). The Federal Rules of Civil Procedure protect this common-law right of public access by requiring parties to use their real identities in litigation. *See Kamehameha,* 596 F.3d at 1042 (citing Fed.R.Civ.P. 10(a)). In the Ninth Circuit, this right is "not taken lightly," and when deciding whether to make an exception to the rule requiring parties to use their real identities, courts in the circuit must balance five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, ... (3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the opposing party, and (5) the public interest. *Id.* (citing *Advanced Textile Corp.*, 214 F.3d at 1068) (internal citations omitted). The first two factors—severity of the harm and reasonableness of the fear—are the most important factors. *Id.* at 1043. Other circuits have adopted a similar approach, requiring a party to show a reasonable fear of severe harm before proceeding anonymously. *See Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) ("That a plaintiff may suffer embarrassment or economic harm is not enough. Instead, a plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable') (quoting *Kamehameha,* 596 F.3d at 1043) (internal citations omitted); *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) ("The risk that a plaintiff may suffer some embarrassment is not enough") (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir.1992)).

I.      **Plaintiffs' Asserted Harm Is Not Severe.**

*Examples from other cases show Plaintiffs' asserted harm is not severe.*

Plaintiffs have not met the high burden to demonstrate the required harm to allow them to proceed with pseudonyms. For example, courts have found severe harm where there were: actual threats of physical harm directed at child plaintiffs in retaliation for their lawsuit, *Kamehameha*, 596 F.3d at 1043; threats faced by Chinese nationals of deportation, arrest and imprisonment by the Chinese government, *Advanced Textile Corp.*, 214 F.3d at 1071; fears that a Government informant who was serving a lengthy prison sentence risked serious bodily harm if his role helping the Government were disclosed to other inmates, *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1980); and concerns about the privacy of highly sensitive and personal information in a case where a former inmate alleged she had been raped by a correctional officer in prison, *Jane Doe #2 v. California*, 2023 WL 3956475 (E.D. Cal 2023).

As the cases above demonstrate, a plaintiff's fear of retaliatory harm must usually be tied to a physical harm to qualify as "severe harm." In other words, a plaintiff must show a threat of physical violence or something similarly serious before he is permitted to proceed anonymously. Plaintiffs Poe and Doe have not cited *any* threats of physical harm. Plaintiffs' vague references to "harassment and safety" do not amount to a fear of severe harm. Because the feared harm Plaintiffs assert is not severe harm (under Ninth Circuit case law), Plaintiffs Poe and Doe have failed to meet their burden to show why they should be permitted to proceed anonymously.

***"Safety" concerns raised by Plaintiffs are ambiguous and include "misgendering."*** Plaintiffs Poe and Doe cite concerns about harassment, retaliation, and "safety" as justification for their request to proceed anonymously. Poe Decl. ¶ 3 (Dkt. 22-3); Poe TRO Decl. ¶ 3 (Dkt. 2-4); Doe Decl. ¶ 3 (Dkt. 22-2); Doe TRO Decl. ¶3 (Dkt. 2-3). Plaintiffs Poe and Doe claim they would make themselves targets of harassment by IDOC staff it Plaintiffs were to proceed using their true identities in this litigation. However, Plaintiffs offer only vague and ambiguous statements about how they "fear for [their] safety," reporting that some correctional officers within the facility are not friendly toward the transgender population. Poe Decl. ¶ 4; Doe Decl. ¶ 4. As evidence of this unfriendliness, Plaintiff Poe reports to have been frequently "misgendered" by certain officers. Poe Decl. ¶ 5.

In their filings, Plaintiffs also cite surveys which lay out various risks to incarcerated transgender individuals nationwide and globally. *See* Plaintiffs' Memo ISO Motion to Proceed in Pseudonym (Dkt. 22-1 at 4-5). But the surveys have no specific connection to Idaho's prisons, nor do they speak of inmates being retaliated against for taking legal action. These surveys are, instead, reports from transgender convicts about safety issues they have purportedly faced while incarcerated. In the surveys, respondents report, among other things, being "misgendered" while in prison, and this "misgendering" is categorized as a "safety" issue. In other words, Plaintiffs' definition of "safety" concerns seems to include the fear of being "misgendered." And the only specific "safety" concern either Plaintiff has clearly articulated is the fear of being "misgendered."

At bottom, the fears Plaintiffs Poe and Doe assert are highly ambiguous. They leave this Court with very little to go on. They claim to fear retaliation if they are required to use their true identities in this case. They claim to "fear for [their] safety." But they have not said how. Do they fear for their physical safety? Do they fear for their psychological safety? Do they fear offensive speech? Plaintiffs hardly even attempt to answer any of these questions. And citing to surveys that show generally the dangers transgender people face in prison does not help matters any. For example, there is no indication that these Plaintiffs, in this case, have experienced, are experiencing, or fear they will experience any of these dangers. Again, the only specific "safety concern" either Plaintiff has articulated is a fear of "misgendering." Though one may have sympathy for the potential distress caused by "misgendering," it does not amount to severe harm.

## II.     Plaintiffs' Asserted Fear Is Not Reasonable.

***Plaintiffs are already presenting as women in confinement.*** Both Plaintiffs Poe and Doe each present as women in the men's confinement facility where they are incarcerated. Poe TRO Decl. ¶ 12 (Dkt. 2-4); Doe TRO Decl. ¶ 7, 16. In other words, each plaintiff is open and public about being transgender. This is not a case where Plaintiffs fear they will be "outed" as transgender if they were required to publicly identify themselves in this litigation. It's not as though Plaintiffs will suddenly be identified as transgender to fellow inmates and prison staff. Plaintiffs are currently living in a *men's* prison while presenting as women. Their status as

transgender is not some closely guarded secret. They aren't living as men within the prison but are in secret transgender. They aren't living as women within broader society but are in secret biological males. They are presenting as women in a *men's* prison.

It is worth reiterating this point for two reasons: First, Plaintiffs have directed this Court to a case from another circuit where the judge permitted a "non-binary" individual to proceed in pseudonym. *See Doe v. Pennsylvania Dep't of Corr.*, 585 F. Supp. 3d 797 (W.D. Pa. 2022). Plaintiffs claim this case supports their position. In fact, the case cuts against Plaintiffs' position. In *Penn DOC*, the plaintiff, who was a biological female housed in a women's prison, kept her gender identity secret, and she feared using her true name in litigation because it would effectively "out" her as transgender. *Id.* at 802. In ruling for the plaintiff, the court relied on the fact that she had only revealed her gender identity to a limited number of people at the confinement facility, which, the court found, warranted preserving her anonymity. *Id.*

In contrast, proceeding in pseudonym is not warranted here because Plaintiffs Poe and Doe have not "kept [their] transgender status a closely guarded secret, disclosing it only as necessary to comply with legal requirements." *See Doe v. Pennsylvania Dep't of Corr.*, 2019 WL 5683437, at *3 (M.D. Pa. Nov. 1, 2019). Instead, each presents openly and publicly as a woman in the prison.

Second, Plaintiffs extensively cite two surveys (mentioned above) to support their claimed fears for their safety. As noted above, these surveys do not address

instances of retaliation against litigants, they speak only generally to the purported dangers transgender individuals face in confinement. That is, the surveys speak to the dangers Plaintiffs have *already* subjected themselves to by presenting as women in a men's prison. In other words, Plaintiffs were aware, at least on some level, of the dangers associated with being identified as a transgender person in prison.

Nevertheless, Plaintiffs have made the decision, consciously or not, that it is safe for them to live publicly and openly as transgender persons in prison. And they have done so to this day without experiencing the kind of violence or abuse highlighted in the surveys. What this means is that the dangers higlighted in the surveys simply do not apply to this case. Plaintiffs Poe and Doe, who are already living openly and publicly as transgender individuals in confinement, have not experienced violence or abuse, and they've offered no evidence to show whether, how, or why that would change if they were required to use their true identities in this litigation.

***Plaintiffs' claims about retaliation do not make sense.*** Plaintiffs allege that they would be subjected to harassment and retaliation if they were to use their true identities in this lawsuit. Poe Decl. ¶ 3; Doe Decl. ¶ 3. But they've offered no rationale for this assertion. In their memo in support of this motion, Plaintiffs argue that IDOC staff would target them for harassment if Plaintiffs' identities as litigants in this suit were made known. Plaintiffs' Memo ISO Motion to Proceed in Pseudonym (Dkt. 22-1 at 1). But again, they offer no explanation why. Plaintiffs seem to assume that IDOC staff would take an unfavorable view of Plaintiffs' challenge to § 18-8901.

But this is by no means clear. IDOC staff did not pass the law. They have no stake in defending it. One would assume they are either uninterested or have widely differing opinions on the subject. It certainly would not be valid to assume IDOC staff are uniformly in favor of the law, especially in light of the fact that up until a few weeks ago when § 18-8901 became the law, IDOC staff and their medical contractors had been providing inmates with the cross-sex hormones Plaintiffs are now suing for. Put differently, it is not the actions of IDOC staff members Plaintiffs are challenging. They are challenging a law passed by the legislature, a law that effectively forced IDOC staff to stop providing cross-sex hormones. Plaintiffs are challenging the actions of Idaho's legislature, not IDOC staff. It makes no sense for IDOC staff to retaliate against Plaintiffs.

## III.    Plaintiffs Proceeding Anonymously Is Inappropriate.

In addition to considering the severity of the asserted harm and the reasonableness of a plaintiff's fears, other factors courts in the Ninth Circuit must consider when deciding whether to permit a plaintiff to proceed in pseudonym include prejudice to the defendant(s) as well as various public interest factors. *Kamehameha*, 596 F.3d at 1043. Regarding the public interest factors, *Penn DOC*, *supra*, cited by Plaintiffs, offers some guidance:

> The conditions of confinement in state correctional institutions, the extent and adequacy of healthcare provided there and the policies governing such matters, and the expenditure of tax dollars on medical care are matters likely to be of significant interest to the public. And while it is [the plaintiff's] identity that is the focus of their motion [to proceed in pseudonym], the public interest in disclosure is nevertheless

"heightened because Defendants are public officials and government bodies."

*Penn DOC,* 585 F. Supp.3d at 808 (quoting *Megless*, 654 F.3d at 411).

Other relevant factors include whether the party seeking to sue "pseudonymously" has illegitimate ulterior motives, *Id.* at 802; and the likelihood that the case would go forward even if pseudonyms were not permitted, *Kamehameha*, 596 F.3d at 1043. Finally, in deciding whether to allow a plaintiff to proceed in pseudonym, the Tenth Circuit noted that the "public has an important interest in access to legal proceedings, particularly those attacking the constitutionality of popularly enacted legislation." *Femedeer* 227 F.3d at 1246.

**Anonymity is not warranted or needed to protect Plaintiffs' medical information.** Plaintiffs argue that the highly sensitive nature of their medical treatments and diagnoses in this case favors anonymity. There is no question that when dealing with medical records in litigation, some level of protection is required, particularly for medical records turned over in discovery that are not ultimately used as evidence in court proceedings. But the normal method of handling these types of privacy issues is by way of a protective order, not applying blanket anonymity to the litigants. Plaintiffs have not provided any rationale as to why a protective order would be inadequate to deal with their concerns about protecting sensitive medical information. They have shown no reason why it would be necessary for them

to proceed anonymously rather than use the default method of a protective order.

Furthermore, Plaintiffs Poe and Doe are presenting openly and publicly as women in a men's prison. They are suing to compel taxpayers to fund medical treatments that would change their appearance to look more like women. As noted above, none of this is a secret. It is commonly understood that if a person is a biological male who is now presenting as a woman in a men's prison, there are mental and medical health issues at play with that transition. For someone living openly and publicly as transgender, hormone and other transition treatments would not be particularly secretive, they would be evident from the person's outward appearance, which is the whole point of the treatments. There is no need to protect private medical information that is not actually private. In other words, there is no need for anonymity.

**_This case would proceed even if Plaintiffs Poe and Doe were dismissed._** Plaintiffs Poe and Doe request to proceed under pseudonym, while Plaintiff Cole Robinson has agreed to proceed under Robinson's legal name in this litigation. Plaintiffs Poe and Doe argue that this does not undermine their request to remain anonymous. They assert that "whether to proceed in pseudonym is a highly personal decision that involves weighing risks." Plaintiffs' Memo ISO Motion to Proceed in Pseudonym (Dkt. 22-1 at 6). But the importance of Plaintiff Robinson proceeding under Robinson's true name (rather than in pseudonym) is not whether this decision affects the "highly personal" decisions of Poe and Doe to proceed anonymously. The

key point is that the lawsuit will go forward regardless of whether Plaintiffs Poe and Doe are dismissed from the case. The fate of the lawsuit is not contingent on whether anonymity is allowed. If Plaintiffs Poe and Doe are not permitted to proceed anonymously, and they are dismissed from the lawsuit, it can still proceed with Plaintiff Robinson as the sole named plaintiff. Thus, the use of Plaintiff Robinson's true identity does, in fact, undermine Poe and Doe's request to remain anonymous. It alleviates any concerns that the case would be dismissed entirely for the failure to use Plaintiffs' real names. *See Kamehameha*, 596 F.3d at 1043 (case dismissed for failure to include plaintiffs' names in the complaint).

> ***The public has a right to know who is challenging state laws.*** Plaintiffs Poe and Doe argue that permitting them to proceed in pseudonym would not prejudice the Defendants because they "have already disclosed their true identities to counsel for Defendants and will continue to do so as necessary for discovery and other purposes." Plaintiffs' Memo ISO Motion to Proceed in Pseudonym (Dkt. 22-1 at 7). First, Plaintiffs disclosed their identities to Defendants' counsel in their own self-interest. And they did so only after attempting to use their anonymity to force Defendants to continue providing cross-sex hormones to all inmates, not just the named Plaintiffs, in contravention of state law and this Court's order. *See* Exhibit A, Motion to Compel Disclosure of Plaintiffs' Identities (Dkt. 16-1). This attempt to use their anonymity as a sword rather than a shield occurred even before Plaintiffs filed their motion requesting to proceed in pseudonym.

Second, and most importantly, § 18-8901 concerns issues that are of great interest to the public. *See Penn DOC* 585 F. Supp.3d at 808 ("The conditions of confinement in state correctional institutions, the extent and adequacy of healthcare provided there and the policies governing such matters, and the expenditure of tax dollars on medical care are matters likely to be of significant interest to the public"). This heightened public interest weighs against anonymity. Furthermore, any time a plaintiff challenges the constitutionality of popularly enacted legislation, the public has an important interest in access to legal proceedings. *See Femederr* 227 F.3d at 1246. Again, this weighs against anonymity. The people of Idaho have a right to know how their taxes are spent, how their laws are being enforced, and who is challenging the enforcement of those laws. These are significant public interests. They are fundamental American principles. And they point toward requiring transparency in this case.

## CONCLUSION

For the foregoing reasons, State Defendants request that the Court deny Plaintiffs' Motion to Proceed in Pseudonym. State Defendants further request that the Court provide all other relief that is just.

DATED:  July 24, 2024_____.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By:   /s/ James J. Simeri_____
JAMES J. SIMERI
Deputy Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on <u> July 24, 2024      </u>, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Paul Carlos Southwick
psouthwick@acluidaho.org

Emily Myrei Croston
ecroston@acluidaho.org

Malita Picasso
mpicasso@aclu.org

Chase B. Strangio*
cstrangio@aclu.org

Christina M. Hesse
cmh@dukeevett.com

Michael J. Bentley
mbentley@bradley.com

*Attorney for Defendants Centurion of Idaho, LLC and Centurion Health*

*Attorneys for Plaintiff*
*\*motion for pro hac vice pending*

<u>/s/ James J. Simeri       </u>
JAMES J. SIMERI