Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org

*Pro hac vice pending*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **JANE ROE, JANE POE, JANE DOE,** | |
| *Plaintiffs,* | Case No. 1:24-cv-00306-DCN |
| v. | **ADDITIONAL BRIEF ISO** |
| **RAÚL LABRADOR**, et al., | **MOTION FOR TRO/PI AND** |
| *Defendants.* | **CLASS CERTIFICATION** |

**Uncontested Facts Support Plaintiffs' Motion for Class Certification**

The limited discovery the parties engaged in prior to Plaintiffs' current submission to the Court identified the following uncontested facts.

*First*, more than 40 individuals currently incarcerated at IDOC facilities have been diagnosed with gender dysphoria. Southwick Decl., Ex. A (Defendant Tewalt's Answers to Plaintiffs' First Set of Requests for Admission), p. 2 (Response to RFA 1). Centurion has determined that between 60-70 individuals currently incarcerated at IDOC facilities have been diagnosed with gender dysphoria. May Decl., Dkt. 36 ¶ 3.

*Second*, the named Plaintiffs, whose identities have been disclosed to Defense Counsel, have been diagnosed with gender dysphoria by a medical provider contracted by Centurion or by an IDOC medical provider. Southwick Decl., Ex. A, p. 2 (Response to RFA 2); *see also* Dkt. 36 (May Decl.) ¶¶ 3-5; Southwick Decl. Ex. C (Medical Records of Katie Heredia), p. 2; Ex. D (Medical Records of Jane Poe), p. 2, 3; Ex. E (Medical Records of Jane Doe), p. 2, 3.

*Third*, State Defendants admit that more than 40 individuals incarcerated at IDOC facilities who have been diagnosed with gender dysphoria had been receiving hormone replacement therapy as a treatment for their gender dysphoria prior to any tapering that occurred on or around July 1, 2024. Southwick Decl., Ex A, p. 2 (Response to RFA 3). Centurion has confirmed that 54 individuals in IDOC custody have been receiving hormone replacement therapy as a treatment for their diagnosed gender dysphoria before July 1, 2024. Dkt. 36 (May Decl.), ¶ 4.

*Fourth*, the named Plaintiffs had been receiving hormone replacement therapy as a treatment for their gender dysphoria prior to July 1, 2024. Southwick Decl., Ex. A, p. 2 (Response to RFA 4); Dkt. 36 (May Decl.), ¶ 5; Southwick Decl. Ex. C (Medical Records of Katie Heredia), p. 5; Ex. D (Medical Records of Jane Poe), p. 8; Ex. E (Medical Records of Jane Doe), p. 8. The

named Plaintiffs had their hormone replacement therapy restored because of the Court order. Dkt. 36 (Declaration of John May), ¶ 6; Centurion Response, Dkt. 23, p. 4.

*Fifth*, prior to July 1, 2024, IDOC Policy would have permitted Centurion's contracted medical providers to prescribe hormone replacement therapy to treat gender dysphoria, where medically indicated, but for the enactment of Section 18-8901. Southwick Decl., Ex. A, pp. 2-3 (Response to RFAs 5 and 7). For purposes of the Requests for Admission, "IDOC Policy" was defined as "Gender Dysphoria: Healthcare for Inmates with," No. 401.06.03.501. Plaintiffs attached the IDOC Policy as an exhibit to their Reply Brief (Dkt. 25-2) and attach it again here to the Southwick Declaration for ease of reference. Southwick Decl., Ex. B.

**Hormone Treatment Is Medically Indicated and Medically Necessary for Some Transgender Individuals, Including Plaintiffs**

The purpose of the IDOC Policy "is to establish guidelines for the diagnosis, treatment, management, and placement of inmates diagnosed with Gender Dysphoria (GD) to ensure inmate safety and access to *appropriate and necessary* medical and mental health treatment." Southwick Decl., Ex. B, p. 2 (emphasis added). For all individuals in the custody of IDOC, "Hormone replacement therapy will be provided as needed, but only when medically indicated and consistent with the inmate's treatment plan." Southwick Decl., Ex. B, p. 2.

IDOC Policy further states that "An inmate who is initially diagnosed with GD while incarcerated at the IDOC will be eligible to receive hormone replacement therapy *if medically necessary* and as identified in their treatment plan." Southwick Decl., Ex. B, p. 5, ¶ 9 (emphasis added).

Two of the named Plaintiffs were initially diagnosed with gender dysphoria while at IDOC. *See* Dkt. 2-2 (Roe Decl.), ¶¶ 13-14; Southwick Decl., Ex. D (Medical Records of Jane Poe), p. 3-

4. They were then prescribed hormone treatment pursuant to IDOC policy referenced above, which requires medical necessity and a treatment plan. *See* Dkt. 2-2 (Roe Decl.), ¶¶ 14, 16; Southwick Decl., Ex. D (Medical Records of Jane Poe), p. 5-8. The third Plaintiff was re-diagnosed with gender dysphoria at IDOC and prescribed medically necessary hormone treatment as part of her IDOC approved treatment plan. *See* Southwick Decl., Ex. E (Medical Records of Jane Doe), p. 3.

Within the putative class, there will be individuals who, at the time of entering IDOC custody, had already been diagnosed with gender dysphoria and were receiving hormone replacement therapy. For this segment of the class, IDOC policy provides that "the prior treatment will be continued and incorporated into the inmate's individualized medical treatment plan, unless hormone replacement therapy is subsequently contraindicated based on the assessment and findings by the inmate's treating physician." Southwick Decl., Ex. B, pp. 3-4, ¶ 4.

Plaintiffs previously cited to evidence that the consensus of the medical community is that hormone replacement therapy is both medically indicated and medically necessary for some transgender individuals with gender dysphoria. *See generally* Dkt. 2-1, p. 6-10; *see also* Dkt. 25, p. 3-4 (sworn testimony from Defendants' own experts in other proceedings).

In addition, Dr. Marvin-Anthony Carson Alviso, MD, recently provided sworn testimony in the lawsuit challenging HB 668 in the Medicaid context currently in front of Judge Patricco, that is relevant to Plaintiffs' claims here. *See M.H. v. Adams*, Case No. 1:22-CV-409 (D. Id.) (Patricco, J.). Dr. Alviso is the primary clinician prescribing hormone treatment to the named Plaintiffs and monitoring their treatment plans. *See* Southwick Decl. Ex. C (Medical Records of Katie Heredia), p. 3-7; Ex. D (Medical Records of Jane Poe), p. 5-12; Ex. E (Medical Records of Jane Doe), p. 7-11. In *M.H.*, Dr. Alviso testified that: "Gender affirming care and treatment is highly individualized from one patient to another. Medical treatment generally involves the body's

masculinization or the feminization through pharmaceuticals (hormone treatment) or surgery. There is no one set of procedures that will alleviate gender dysphoria for everyone." Southwick Decl., Ex. F (Dr. Alviso Decl), ¶ 8. Dr. Alviso further states that "Gender affirming care includes medical, surgical, mental health, and non-medical services for people who are transgender." *Id*. at ¶ 9. He goes on to state that "Gender dysphoria and its related distress is alleviated when individuals are able to bring their physical appearance in line with their gender identity. Gender-affirming care is safe, effective, and medically necessary treatment for transgender individuals with gender dysphoria. Gender dysphoria is often heightened 'when physical interventions by means of hormones and/or surgery are not available.' DSM-5 at 451." *Id*. at ¶¶ 13-14.

Dr. Alviso concludes by stating that "Forcing transgender individuals to discontinue these medically necessary treatments will cause significant harm to my patients and all transgender individuals." *Id*. at ¶ 42.

**Plaintiffs and their Counsel Have No Conflicts with Class Members**

The named Plaintiffs seek the same injunctive and declaratory relief as the putative class, and do not bring damages claims. Pursuant to their retainer agreements with counsel, Plaintiffs ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████ Southwick Decl., Ex. G, p. 2 ¶ V, p. 12 ¶ V, p. 22 ¶ V. The retainer agreements do not provide for incentive awards or other monetary awards for the named Plaintiffs. Consequently, the named Plaintiffs have no incentive to advocate for a resolution that would specifically benefit them in opposition to the interests of the class.

The retainer agreements further provide that if a class is certified, the duties of the counsel for the named Plaintiffs flow to the class as a whole.



*Id.* at p. 7 ¶ XXIV, p. 17 ¶ XXIV, p. 27 ¶ XXIV. The retainer agreements further provide that if a class is certified, and the named Plaintiffs are selected as class representatives,

*Id.* at p. 7 ¶ XXV, p. 17 ¶ XXV, p. 27 ¶ XXV.

**Urgency of Need for Resolution of Plaintiffs' Motion for Class Certification**

Plaintiffs and the putative class urgently need the Court's intervention. Centurion expects all individuals currently receiving hormone treatment, other than the named Plaintiffs, will be fully tapered off such treatment within the next several weeks Dkt. 36 (Declaration of John May), ¶ 8.

**ARGUMENT**

Standards of Review and Proof

The decision to certify a class is reviewed under an abuse of discretion standard, with "noticeably more deference" accorded to a grant of certification than a denial. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013). Plaintiffs must affirmatively demonstrate compliance with Rule 23, and the court must conduct a "rigorous analysis" to determine whether the prerequisites have been met. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018).

However, because Rule 23(c)(1)(A) instructs courts to determine certification at "an early practicable time," this rigorous analysis is still considered "preliminary" and not subject to the "formal strictures of trial," including tests of admissibility. *Id.* The Ninth Circuit noted that this was particularly true as, "the evidence needed to prove a class's case often lies in a defendant's possession and may be obtained only through discovery." *Id.* The court warned that "transforming a preliminary stage into an evidentiary shooting match inhibits an early determination of the best manner to conduct the action," in violation of Rule 23. *Id.* at 1004. In evaluating the current motion for class certification, the court "need only consider 'material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement.'" *Id.* at 1005 (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (alteration in original); *see also Abdullah*, 731 F.3d at 956 (findings of fact will be reversed only if "(1) illogical, (2) implausible, or (3) without 'support in inferences that may be drawn from the record.'"). The uncontested offers of proof from the discovery provided by Defendants, bolstered by the previous expert and personal testimony from the prior briefing on this Motion, provide that basis for "a reasonable judgement."

Numerosity and Impracticability of Joinder. Rule 23(a)(1) requires that the class be "so numerous that *joinder of all members is impracticable*." Fed. R. Civ. P. 23(a)(1) (emphasis added). The court must consider "the absolute number of class members." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

Defendants admit that more than 40 individuals currently incarcerated at IDOC facilities have been diagnosed with gender dysphoria. Southwick Decl., Ex. A, p. 2 (Response to RFA 1). Furthermore, Centurion has determined that between 60-70 individuals currently incarcerated at

IDOC facilities have been diagnosed with gender dysphoria. Dkt. 36 (Declaration of John May), ¶ 3.

State Defendants further admit that more than 40 individuals incarcerated at IDOC facilities who have been diagnosed with gender dysphoria had been receiving hormone replacement therapy as a treatment for their gender dysphoria prior to any tapering that occurred on or around July 1, 2024. Southwick Decl., Ex A, p. 2 (Response to RFA 3). Centurion has confirmed that 54 individuals in IDOC custody have been receiving hormone replacement therapy as a treatment for their diagnosed gender dysphoria before July 1, 2024. Dkt. 36 (Declaration of John May), ¶ 4. The proposed class is sufficiently numerous.

Additionally, when, as in this case, the "class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable." *A.B. v. Hawaii*, 30 F.4th at 838. Here, the IDOC populations continually changes and new incarcerated individuals with gender dysphoria are certain to become part of the class.

Commonality. This litigation involves questions of law and fact common to the class. Fed. R. Civ. P. 23(a)(2). Commonality requires that proceeding as a class has the capacity to generate common answers apt to drive the resolution of the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs need not show that "every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is 'even a single common question' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 359). In the present context, the Ninth Circuit has stated unequivocally that, "[a] clear line of precedent, stretching back long before *Wal-Mart* and unquestionably continuing past it, firmly establishes that when inmates provide sufficient evidence of systemic and centralized policies or practices in a

prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm, Rule 23(a)(2) is satisfied." *Parsons*, 754 F.3d at 684. There is no question that Idaho Code Section 18-8901 establishes such a policy.

"To assess whether the putative class members share a common question, the answer to which 'will resolve an issue that is central to the validity of each one of the [class members's] claims,' we must identify the elements of the class members's case-in-chief." [sic] *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350). State officials violate the Eighth Amendment where a policy applicable to incarcerated individuals creates a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Court has been clear that plaintiffs need not wait for harm to materialize or prove the extent of their injury to establish an Eighth Amendment violation. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition."); *see also Thomas v. Ponder*, 611 F.3d 1144, 1151 n.5 (9th Cir. 2010). In that context, the question in this case is <u>whether Defendants' policy of denying individualized determinations of the medical necessity of gender affirming medical care for gender dysphoric prisoners creates a substantial risk of serious harm.</u> That question is common to the whole class and apt to drive forward the resolution of the litigation.

Pursuant to IDOC Policy in effect prior to the enactment of Idaho Code Section 18-8901, all putative class members could have been prescribed hormone replacement therapy as a medically necessary treatment based on an individualized assessment. The purpose of the IDOC Policy "is to establish guidelines for the diagnosis, treatment, management, and placement of inmates diagnosed with Gender Dysphoria (GD) to ensure inmate safety and access to *appropriate and necessary* medical and mental health treatment." Southwick Decl., Ex. B, p. 2 (emphasis

added). For all individuals in the custody of IDOC, "Hormone replacement therapy will be provided as needed, but only when medically indicated and consistent with the inmate's treatment plan." Southwick Decl., Ex. B, p. 2. IDOC Policy further states that "An inmate who is initially diagnosed with GD while incarcerated at the IDOC will be eligible to receive hormone replacement therapy *if medically necessary* and as identified in their treatment plan." Southwick Decl., Ex. C, p. 5, ¶ 9 (emphasis added).

Defendants have admitted that the named Plaintiffs, whose identities have been disclosed to Defense Counsel, have been diagnosed with gender dysphoria by a medical provider contracted by Centurion or by an IDOC medical provider. Southwick Decl., Ex. A, p. 2 (Response to RFA 2); see also Dkt. 36 (May Decl.), ¶¶ 3-5; Southwick Decl. Ex. C (Medical Records of Katie Heredia), p. 2; Ex. D (Medical Records of Jane Poe), p. 2, 3; Ex. E (Medical Records of Jane Doe), p. 2, 3.

Defendants have also admitted that the named Plaintiffs had been receiving hormone replacement therapy as a treatment for their gender dysphoria prior to July 1, 2024. Southwick Decl., Ex. A, p. 2 (Response to RFA 4); Dkt. 36 (May Decl.), ¶ 5. The named Plaintiffs, like all other putative class members, would have had their hormone replacement therapy tapered, and ultimately discontinued, because of Idaho Code Section 18-8901. Southwick Decl., Ex. A, p. 2 (Response to RFA 4); Dkt. 36 (May Decl.), ¶ 7. The named Plaintiffs hormone replacement therapy was only restored because of the Court's order on Plaintiffs' Motion for Temporary Restraining Order. Dkt. 36 (May Decl.), ¶ 6; Centurion Response, Dkt. 23, p. 4.  The purpose of this class certification motion is to restore the same treatment, or at least its availability after an individualized assessment, to the putative class that the named Plaintiffs have had restored by the Court.

In addition, Dr. Marvin-Anthony Carson Alviso, MD, recently provided sworn testimony in the lawsuit challenging Idaho Code Section 18-8901 in the Medicaid context currently in front of Judge Patricco, that is relevant to the issues of commonality and typicality. *See M.H. v. Adams*, Case No. 1:22-CV-409 (D. Id.) (Patricco, J.). Dr. Alviso is the primary clinician prescribing hormone treatment to the named Plaintiffs and monitoring their treatment plans.  *See* Southwick Decl. Ex. C (Medical Records of Katie Heredia), p. 3-7; Ex. D (Medical Records of Jane Poe), p. 5-12; Ex. E (Medical Records of Jane Doe), p. 7-11. Dr. Alviso has testified that hormone therapy as treatment for gender dysphoria is part of an individualized assessment, and that for those for whom it is medically necessary, discontinuing the treatment causes immense harm. Southwick Decl., Ex. F (Dr. Alviso Decl), ¶¶ 8, 9, 13-14.

Dr. Alviso states that "Forcing transgender individuals to discontinue these medically necessary treatments will cause significant harm to my patients and all transgender individuals." *Id*. at ¶ 42. Consequently, for the named Plaintiffs, as for all members of the putative class, an individualized assessment of treatment options is necessary, the result of that individualized assessment for some individuals is that hormone treatment is medically necessary, and discontinuing such treatment for individuals for whom it is medically necessary causes significant harm. Plaintiffs are such individuals, and their claims of deliberate indifference to a substantial risk of serious harm are common to the class and typical of the class.

Indeed, the named Plaintiffs and the putative class members all experience the "same injury" under the Eighth Amendment—the substantial risk of serious harm that stems from denying individualized evaluations for a medication that, for some individuals may be medically necessary, and is endorsed by every major medical organization and available to every other adult in Idaho. *See Parsons*, 754 F.3d at 679 ("[C]lass members are as one in their exposure to a particular and

sufficiently well-defined set of allegedly illegal policies and practices, rather than only in their advancement of a general Eighth Amendment legal theory."). This is true for those individuals who have lost their hormone therapy as well as those who will not have the opportunity to be prescribed hormone therapy as a result of Idaho Code Section 18-8901. The Supreme Court recognized in *Brown v. Plata*, that "all prisoners in California are at risk so long as the State continues to provide inadequate care. Prisoners in the general population will become sick, and will become members of the plaintiff classes, with routine frequency . . . [I]n no sense are [future class members] remote bystanders in California's medical care system. They are that system's next potential victims." *Brown v. Plata*, 563 U.S. 493, 531–32 (2011). Those who have not yet begun hormone therapy, still experience a substantial risk of serious harm and are the policy's "next potential victims." *Id.*

The court need not make its own determination of whether hormone therapy was or remains medically necessary for the named Plaintiffs, or any specific members of the class. It is the centralized policy established by Idaho Code Section 18-8901, which denies an individualized assessment of medically necessary treatment for individuals diagnosed with gender dysphoria, that "expose[s] all inmates in that system to a substantial risk of serious future harm," and thus "Rule 23(a)(2) is satisfied." *Parsons*, 754 F.3d at 684 (emphasis added).

Contrary to defendants' arguments that proof of medical necessity as to each class member will be necessary to determine whether class members suffer the "same injury," this case is not based on "deficiencies in care provided on any one occasion." *See Brown v. Plata*, 563 U.S. 493, 506 n.3 (2011). Therefore, the "Court has no occasion to consider whether . . . any [] particular deficiency in medical care complained of by the plaintiffs—would violate the Constitution . . . if considered in isolation." *Id.* Instead the court must evaluate whether the systemwide policy of denying individualized evaluations for hormone therapy subjects prisoners to a "substantial risk of

serious harm." *See Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Parsons*, 754 F.3d at 678 ("[A]lthough a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm."); *Parsons*, 754 F.3d at 680 (noting that while individual variations "affect how particular inmates experience" allegedly unconstitutional policies, "they do not defeat commonality." "Some inmates may not actually be harmed, but they are all allegedly exposed to a risk of harm that is, in its own right, a constitutional injury amenable to resolution in a class action."). The question of whether Idaho Code Section 18-8901 creates such a risk is common to all class members.

"The putative class and subclass members thus all set forth numerous common contentions whose truth or falsity can be determined in one stroke: whether the specified statewide policies and practices to which they are all subjected by [IDOC] expose them to a substantial risk of harm." *Parsons*, 754 F.3d at 678 (citing *Wal-Mart*, 564 U.S. at 350). Idaho Code Section 18-8901 is "the 'glue' that holds together the putative class." *Id.* The risk created by Idaho Code Section 18-8901 is unlawful as to every person in IDOC who is diagnosed with gender dysphoria and who has been, or could be, prescribed medically necessary hormone treatment, or it is not. *See id.* "That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination." *Id.*

Typicality. Commonality and typicality tend to merge, *see id.* at 685, and here, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially

identical." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338). "A named plaintiff is not typical if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). At the outset, the named Plaintiffs do not request individualized damages. They do not challenge IDOC's physician diagnoses and prescriptions or present any other claims unique to them. They only request injunctive relief ensuring that the whole class may receive hormone therapy if prescribed by an IDOC physician.

The named plaintiffs are all individuals within IDOC, who have been prescribed hormone therapy by an IDOC physician, to treat their gender dysphoria. "Each declares that . . . she is being exposed, like all other members of the putative class, to a substantial risk of serious harm by [Idaho Code Section 18-8901]." *Parsons*, 754 F.3d at 685. They allege "the same or similar injury" to the rest of the putative class—a substantial risk of serious harm created by Idaho Code Section 18-8901. *Id.* "It does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Id.* at 686; s*ee Ellis*, 657 F.3d at 985 n.9 ("Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality."). The named Plaintiffs' claims are typical of the class.

Adequacy.  Finally, class representatives will fairly and adequately represent the interests of the entire class. Fed. R. Civ P. 23(a)(4). The adequacy inquiry asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Kim v. Allison*,

87 F.4th 994, 1000 (9th Cir. 2023) (internal citation omitted). Here, the named plaintiffs have no

conflicts with other members of the class because they suffer the same injury—loss of their

hormone therapy—and seek the same relief—an injunction—as the absent class members.

Moreover, pursuant to their retainer agreements with counsel, Plaintiffs ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ Southwick Decl., Ex. G, p. 2 ¶ V, p. 12 ¶ V, p. 22 ¶ V. The retainer agreements do

not provide for incentive awards or other monetary awards for the named Plaintiffs. *See Rodriguez*

*v. W. Publ'g Corp.*, 563 F.3d 948, 955, 958-60 (9th Cir. 2009) (holding that ex ante incentive

agreements create conflicts of interest). Consequently, the named Plaintiffs have no incentive to

advocate for a resolution that would specifically benefit them in opposition to the interests of the

class.

The retainer agreements further provide that if a class is certified, the duties of the counsel

for the named Plaintiffs flow to the class. *Id.* at p. 7 ¶ XXIV, p. 17 ¶ XXIV, p. 27 ¶ XXIV. The

retainer agreements further provide that if a class is certified, and the named Plaintiffs are selected

as class representatives, ███████████████████████████████████

███████████████ *Id.* at p. 7 ¶ XXV, p. 17 ¶ XXV, p. 27 ¶ XXV. The named plaintiffs also have

the same weighty interest in pursuing an order protecting hormone replacement therapy on behalf

of the class because hormone replacement therapy is their care as well. This "nexus with the class"

ensures that the named plaintiffs will vigorously represent the interests of the class. *In re Online*

*DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

Adequacy also requires that class counsel be competent and without conflicts. *Wal-Mart*, 564 U.S. 350. "Absent a basis for questioning the competence of counsel, the named plaintiffs' choice of counsel will not be disturbed, and plaintiffs' bear no affirmative burden to allege facts establishing the competence of counsel in the complaint." *Mateo v. M/S Kiso*, 805 F.Supp. 761, 771 (N.D. Cal. Aug. 13, 1991); see also *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D.Cal.1987) ("It is presumed plaintiffs' counsel is competent to litigate this case and will fairly and adequately represent the interests of the class members."). State Defendants have not alleged that there are conflicts between class counsel and members of the class or that class counsel is not capable of vigorously pursuing claims on behalf of class members. Moreover, as stated in the retainer agreements, the duties of counsel for the named Plaintiffs flow to the interests of the class as a whole. Additionally, class counsel includes attorneys with extensive experience in civil rights litigation generally, transgender rights litigation, and class action litigation.

*Chase Strangio* is Deputy Director for Transgender Justice with the ACLU's LGBT & HIV Project and he has been counsel in numerous cases involving the issues in this case. *See, e.g.*, *Hecox v. Little*, No. 20-35813 (9th Cir.), No. 1:20-cv-00184-DCN (D. Id.) (challenge to ban on transgender women's participation in women's sports); *R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC*, No. 18-107 (U.S.) (claim for discrimination on the basis of transgender status); *Carcano v. McCrory*, 203 F. Supp. 3d 615 (M.D.N.C. 2016) (challenge to bill denying transgender individuals access to bathroom aligned with gender identity); *Grimm v. Gloucester Cnty. Sch. Bd.*, No. 20-1163 (U.S.) (same); *Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022) (challenge to ban on gender affirming medical care for minors); *Poe v. Drummond*, 697 F. Supp. 3d 1238 (N.D. Okla. 2023) (same); *United States v. Skrmetti*, No. 23-477, 2024 WL 3089532, at *1 (U.S. June 24, 2024) (same); *Poe v. Labrador*, No. 24-142 (9th Cir. 2024) (same); *Moe v. Yost*, No. 24CVH03-2481,

2024 WL 1657858 (Ohio Com.Pl. Apr. 16, 2024) (same); *K.C. v. Individual Members of Med. Licensing Bd.*, No. 23-2366, 2024 WL 1212700, at *1 (7th Cir. Mar. 21, 2024) (same and brought as class action); *Stone v. Trump*, 280 F. Supp. 3d 747 (D. Md. 2017) (challenge to ban on transgender individuals serving in the military); *PFLAG, Inc. v. Abbott*, No. D-1-GN-22-002569, 2022 WL 3040297, at *1 (Tex.Dist. June 10, 2022) (challenge to policy change requiring investigations into child abuse solely on allegation that child is transgender); *Oakleaf v. Martinez*, 297 F. Supp. 3d 1221, 1227 (D.N.M. 2018) (Eighth Amendment claim based on deliberate indifference to plaintiff's gender dysphoria).

*Paul Southwick* is the Legal Director of the ACLU of Idaho and he has been counsel in, among others, the following cases: *Poe v. Labrador*, No. 1:23-cv-00269-BLW (D. Id. 2023), No. 24-142 (9th Cir. 2024) (challenge to ban on gender affirming medical care for minors); *Hecox v. Little*, No. 20-35813, No. 20-35825 (9th Cir. 2023) (challenge to ban on transgender women's participation in women's sports); *KW v. Armstrong*, No. 1:12-cv-00022-BLW, 3:12-cv-58-BLW (D. Id. 2014) (class action case); *Tucker v. Idaho*, No. 46882 (Id. S.C. 2023) (civil rights class action); *Wyatt B. v. Kotek*, Case 6:19-cv-00556-AA (D. Or. 2019) (class action on behalf of youth in state's child welfare system, including subclass of transgender youth); *Hunter v. U.S. Department of Education*, Case No. 6:21-cv-00474-AA (D. Or. 2021) (putative class action on behalf of LGBTQ+ students).

*Malita Picasso* is a staff attorney for the American Civil Liberties Union Foundation ("ACLU") with substantial experience in litigating the interests of ACLU clients in a broad range of constitutional settings. She has previously represented and continues to vigorously represent transgender clients in state and federal courts across the nation, including transgender individuals challenging the carceral conditions in which they are being confined. *Monroe v. Meeks*, No. 3:18-

CV-00156-NJR (S.D. Ill) (representing a class of transgender people in the custody of the Illinois Department of Corrections challenging the constitutionality of the conditions in which they are confined); *Hersom v. Crouch*, Civ. No. 2:21-cv-00450, 2022 WL 908503 (S.D.W. Va. March 28, 2022)(challenging a West Virginia policy preventing transgender people from being able to amend their birth certificates); *Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020) (challenging an Ohio policy preventing transgender people from being able to amend their birth certificates); *Doe v. Bethel Local School District*, No. 3:22-cv-00337 (S.D. Ohio) (protecting the right of a transgender high school student in Ohio to use the restrooms consistent with her gender identity); *Washington Human Rights Commission v. Alaska Airlines, Inc.*, No. 12-2022-HRC-00009 (Washington Office of Administrative Hearings) (challenging an employer's uniform policy on behalf of a nonbinary employee); *Bongo v. Lawrence*, No. 3:21-cv-00490 (M.D. Tenn.) (challenging a Tennessee law compelling business owners to display signs relating to transgender people and their use of public restrooms); *Van Garderen v. State of Montana*, (challenging a Montana law the prohibits transgender minors from accessing gender affirming medical care); *Marquez v. State of Montana* (challenging a Montana law the imposed a surgical requirement on transgender people seeking to amend their Montana birth certificate); *Kalarchik v. State of Montana*, (challenging Montana policies that prevent transgender people from being able to amend their identity documents). In addition to her work on behalf of transgender individuals, Ms. Picasso also has additional litigation experience involving non-transgender individuals challenging the constitutionality of the conditions in which they are confined by the United States. *Herrera-Herrera v. Downey*, No. 2:20-cv-02120 (C.D. Ill.); and *Dembele v. Gaurdian*, No. 1:20-cv-02401 (N.D. Ill.).

*Emily Croston* is a staff attorney for the ACLU of Idaho and has been counsel in cases involving the rights of transgender individuals, *Poe v. Labrador*, No. 1:23-cv-00269-BLW (D. Id. 2023), No. 24-142 (9th Cir. 2024) (challenge to ban on gender affirming medical care for minors); *Hecox v. Little*, No. 20-35813, No. 20-35825 (9th Cir. 2023) (challenge to ban on transgender women's participation in women's sports), as well as counsel in class action litigation, *KW v. Armstrong*, No. 1:12-cv-00022-BLW, 3:12-cv-58-BLW (D. Id. 2014) (class action case); *Tucker v. Idaho*, No. 46882 (Id. S.C. 2023) (civil rights class action). Prior to joining the Bar Association, she also worked on a prisoner rights class action case as a legal fellow, *Scott v. Clarke*, No. 19-1719 (4th Cir.), No. 3:12-cv-00036 (W.D. Va.).

As to the present case, counsel for Plaintiffs have spent hundreds of hours speaking with putative class members and investigating and presenting the claims in this case. Counsel are qualified, competent, and adequate for this litigation. For the reasons noted above, class counsel is also able to be appointed under Rule 23(g)(1)(A). Class counsel's work thus far on this case and their experience handling class actions, claims on behalf of transgender individuals, and Eighth Amendment claims show that they are able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Requirements of 23b2. Class certification is additionally appropriate as IDOC "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The instant civil rights class action is a "prime example" of this type of class certification. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("Rule 23(b)(2) was adopted in order to permit the prosecution of civil rights actions."); *see also Parsons* 687 (""[T]he remedy in this case would not lie in providing

specific care to specific inmates,' but rather . . . 'if successful, a proposed injunction addressing those [policies and] practices would . . . prescribe a standard of conduct applicable to all class members."). 687 This is exactly what Rule 23(b)(2) anticipates. For the reasons set forth above, class certification is warranted. The court retains the ability to decertify the class if later discovered evidence necessitates decertification.

Further, the *Poe* decision does not counsel against certifying a class and preliminarily enjoining Idaho Code Section 18-8901 as to that class. As an initial matter, *Poe* was not brought as a class action. The only times that members of the Court (there was no majority opinion) address class certification directly is to note that relief may extend to a properly certified class. *Labrador v. Poe*, 601 U.S. ___, 144 S.Ct. 921 at 927 (2024) (J. Gorsuch, concurring) ("If they seek relief for a larger group of persons, they must join those individuals to the suit or win class certification."). Justice Kavanaugh explicitly recognizes that injunctions would apply to a whole class: "Even if a district court enjoins a new federal statute or state law only as to the particular plaintiffs, that injunction could still have widespread effect. For example, . . . the plaintiffs might file a class action for classwide injunctive relief under Rule 23(b) of the Federal Rules of Civil Procedure." *Id.* at 932.

Justice Gorsuch notes that the opinion in *Poe* is driven by "the rules of equity known 'at the time of the separation of' this country from Great Britain." *Id.* at 923; *see also id.* at 924, 926, 927. Relief as to a certified class is in no way in opposition to this. "The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable." *Hansberry v. Lee*, 311 U.S. 32, 41 (1940). "Modern plaintiff class actions follow the same goals." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Justice Gorsuch emphasized that under the rules of equity an equitable remedy must not be "more burdensome to the defendant than necessary to [redress]" the plaintiff's injuries. *Labrador v. Poe*, 144 S. Ct. at 923. Gorsuch found that the district court's injunction in *Poe* barred enforcement of any provision of the law even though "the plaintiffs had failed to 'engage' with other provisions of Idaho's law that don't presently affect them." *Id.* Here, the named Plaintiffs seek relief only as to a well-defined class and only as to a specific treatment they received.

Moreover, the Court has sufficient evidence and argument to rule on class certification without the need to rule on provisional class certification. However, to the extent that the Court deems provisional class certification a more appropriate vehicle than class certification in the normal course, that alternative remains available even after the Supreme Court's decision in *Labrador v. Poe,* as evidenced by district court rulings after that decision. *See, e.g.*, *N.D. v. Reykdal*, 2024 WL 3358743, at *6 (W.D. Wash. July 10, 2024) ("Accordingly, and pursuant to the order from the Ninth Circuit, the Court certifies the following provisional class pursuant to Rule 23(b)(2)"); *Bryan C. v. Gagne-Holmes*, No. 1:21-CV-00005-NT, 2024 WL 3293411, at *1 (D. Me. July 3, 2024).

## CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' prior briefs relating to this Motion, the Court should issue a Preliminary Injunction and grant Plaintiffs' Motion for Class Certification.

Dated:  July 24, 2024                              Respectfully submitted,

                                                   /s/ *Paul Carlos Southwick*
                                                   Paul Carlos Southwick (ISB No. 12439)

                                                   ACLU of Idaho Foundation