RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

JAMES J. SIMERI, ISB #12332
GREGORY E. WOODARD, ISB #11329
MATTHEW L. MAURER, ISB #12575
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
james.craig@ag.idaho.gov
james.simeri@ag.idaho.gov
greg.woodard@ag.idaho.gov
matthew.maurer@ag.idaho.gov

*Attorneys for Defendants Raúl Labrador, in his official capacity as Attorney General of the State of Idaho; Brad Little, in his official capacity as Governor of the State of Idaho, Josh Tewalt, in his official capacity as the Director of the Idaho Department of Corrections; and Bree Derrick, in her official capacity as the Deputy Director of IDOC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROBINSON, *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; *et al.*,<br><br>*Defendants.* | Case No. 1:24-cv-00306-DCN<br><br>**REPLY IN SUPPORT OF MOTION TO RECONSIDER SUPPLEMENTAL MEMORANDUM DECISION AND ORDER ON TEMPORARY RESTRAINING ORDER [Dkt. 53]** |

On August 2, 2024, this Court significantly expanded the scope of its injunctive relief. The Court's August 2 "Supplemental Memorandum Decision and Order on the Temporary Restraining Order" extended, for the second time, the Court's original "provisional pause on enforcement of I.C. 18-8901." Dkt. 51 at 1. The Court not only extended the TRO, the Court also expanded it beyond the parties to the litigation. In addition to the named Plaintiffs, the Court applied the TRO to members of the "proposed class for which the named-plaintiffs seek class certification," *id.* at 2, even though the Court had not, and still has not, ruled on class certification.

This order came after a hearing regarding Plaintiffs' request for class certification, wherein the parties argued exclusively about class certification, *not* the expansion of the Court's TRO. Nonetheless, the Court proceeded, in its August 2 order, to expand its TRO to nonparties, finding that "Plaintiffs have raised serious questions going to the merits of this case and in light of the extreme time constraints." *Id.* This expansion was significant and unwarranted for two reasons: (1) it extended *preliminary* injunctive relief to non-parties, running afoul of Supreme Court guidance in *Labrador v. Poe*, 144 S. Ct. 921 (2024); and (2) it *altered*, rather than preserved, the status quo.

**ARGUMENT**

**I.     The TRO Goes Beyond the Permissible Twenty-Eight Days.**

Since State Defendants filed this motion for reconsideration, a problem has emerged that was not present with the State Defendants filed this motion. The TRO has been in effect for longer than the permissible 28 days.

Under Rule 65, a TRO may be continued for a maximum of twenty-eight days. Fed. R. Civ. P. 65(b)(2). When a TRO is continued in effect beyond the maximum twenty-eight days permissible under Rule 65(b)(2), most courts treat it as a preliminary injunction and thus appealable under 28 U.S.C. § 1292(a)(1). Rutter Practice Guide—Federal Civil Procedure Before Trial (Calif. and 9th Cir. Edition, Ch. 13-D § 13-138 (April 2024 update) (citing *Sampson v. Murray* 415 US 61, 86-88, 94 S.Ct. 937, 951 (1974).

The Court has now extended the TRO in this case twice. The Court first extended the TRO at the July 15 hearing. Shortly after the July 15 hearing, the parties were advised that "[t]he Court feels it has enough information to rule on the Motion for TRO/PI, and it will issue an order thereon shortly (probably before the August 2 hearing)." *See* Exhibit A. August 2 has come and gone, and the TRO has again been extended and has been in place since July 1, 2024 (59 days). State Defendants therefore request that the TRO be dissolved.

## II. The Court's August 2 Order Significantly Expanded its TRO

A TRO is an exceptional remedy that should only be granted to preserve the status quo and prevent irreparable harm. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 439 (1974). "A federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 923, 218 L. Ed. 2d 400 (2024) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

***Granting Preliminary Injunctive Relief to Nonparties Violates Labrador v. Poe.*** State Defendants have previously argued, and will continue to argue, that the Supreme Court, with its decision in *Labrador v. Poe,* has disavowed the practice of granting widespread injunctive relief at the outset of litigation. *See* Dkt. 24 at 14; Dkt. 46 at 2-5; and Dkt. 53-1 at 3-4. But this does not mean that State Defendants are trying to "re-litigate issues that were fully before the Court," as Plaintiffs claim. Dkt 54 at 2. Because using a TRO to extend injunctive relief to nonparties has never been before the Court. As noted above, the issue of expanding the TRO to benefit nonparties without a decision on class certification has never been litigated. Indeed, Plaintiffs have never even requested such relief. The only request Plaintiffs have ever made to expand injunctive relief beyond the named Plaintiffs themselves has been tied to class certification or "provisional class certification." *See* Compl. at 4, 20; Dkt. 2-1 at 15-19; Dkt. 40-2 at 20. In Plaintiffs' view, after *Labrador v. Poe*, the only way to obtain widespread preliminary injunctive relief is through class certification. *See* Dkt. 40-2 at 20—21.

In other words, Plaintiffs, faced with the Supreme Court's admonition in *Labrador v. Poe*, have conceded throughout this litigation, both implicitly and explicitly, that a court's ability to expand preliminary injunctive relief to nonparties has been sharply curtailed. Plaintiffs' solution is class certification. In their Additional Brief in Support of their Motion for TRO/PI and Class Certification, they write:

> Further, the *Poe* decision does not counsel against certifying a class and preliminarily enjoining Idaho Code

> Section 18-8901 as to that class. As an initial matter, *Poe* was not brought as a class action. The only times that members of the Court (there was no majority opinion) address class certification directly is to note that relief may extend to a properly certified class.

Dkt. 40-2 at 20. Thus, Plaintiffs argue that the only way to avoid the reach of *Labrador v. Poe* is through class certification.

State Defendants dispute this idea that the *Labrador v. Poe* issue can be solved by gaining class certification and rebranding a "universal injunction" as a "class-wide injunction." But the parties at least agree on this: what the Court did in its August 2 order, when it expanded preliminary injunctive relief to include nonparties *without* even certifying a class, is prohibited by *Labrador v. Poe*.

***The Court's Expansion of its TRO Was Inappropriate.*** In its August 2 order, the Court characterized its expansion of the TRO in this case as "limited in nature under the United States Supreme Court's guidance in *Labrador v. Poe*." Dkt. 51 at 2. The Court went on to distinguish the universal injunction disfavored in *Labrador v. Poe*, from the class-wide injunction imposed by the Court's August 2 order. Plaintiffs, in their opposition brief, pick up on this same thread: "To be clear, the August 2 Order is far from the type of universal injunction at issue in *Poe*, which the concurrence described as an injunction that purported to bar the enforcement of any provision of the law against anyone." Dkt. 54 at 4 (quotations omitted) (cleaned up). This argument misses the key insight of *Labrador v. Poe*: enjoining a law *preliminarily* with respect to nonparties creates a "fast and furious" situation where "the affected government (state or federal) will often understandably feel bound to

seek immediate relief from one court and then the next." *Labrador v. Poe*, 144 S. Ct. at 927. Thus, in principle there is little difference between the universal injunction in *Labrador v. Poe* and the Court's August 2 order.

As a matter of fact, in practice as well as principle, the universal injunction in *Labrador v. Poe* operated much the same way the Court's expanded TRO operates here. In *Poe,* the universal injunction made available cross-sex hormones and sex-change surgery to the relatively small number of people who sought them in Idaho, notwithstanding Idaho's "Vulnerable Child Protection Act." I.C. § 18-1506C. Similarly, here the August 2 order makes available taxpayer-funded cross-sex hormones to the relatively small number of prisoners who seek them, notwithstanding Idaho's "No Public Funds for Gender Transition Act." I.C. § 18-8901.

The point is not to diminish the significance of *Labrador v. Poe*, or to suggest that §§ 18-8901 and 18-1506C are inconsequential. Quite the opposite. The point is that both injunctions (universal and class-wide) extend *preliminary* relief to *nonparties*. In both cases, the courts have invoked the extraordinary and weighty authority to enjoin a duly enacted law at the outset of a lawsuit, before the merits can be fully considered. And in both cases, the courts have applied this *preliminary* injunctive relief to people who aren't even parties to the case.

***State Defendants Are Not Attempting to "Re-litigate."*** It is true that some of the above arguments have been made in previous filings, but they were never addressed to an expanding, indefinite TRO. All arguments and briefings were predicated on the assumption that there would be rulings on the requests for

preliminary injunction and class certification. Without these rulings, State Defendants are stuck in a holding pattern, unable to seek recourse.

The distinction State Defendants draw between a TRO that applies to a "proposed class" and a PI that applies to a certified class is not academic. A TRO is not normally appealable, whereas a PI is. Furthermore, the Court's orders on July 1 and August 2 regarding its "provisional pause" on enforcement of § 18-8901 contain virtually no analysis regarding irreparable harm. A full PI ruling would undoubtedly include irreparable harm analysis, which is still required under the "sliding-scale" or "serious questions" test relied upon by the Court. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) ("In other words, "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, *assuming the other two elements* of the *Winter* test are also met") (emphasis added).

***There Has Been No Showing of Irreparable Injury for Proposed Class.*** Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 22 (2008). In addition to showing a likelihood of irreparable injury, a plaintiff must show a "sufficient causal connection" between the alleged injury and the conduct sought to be enjoined. *Perfect 10, Inc. v. Google, Inc.* (9th Cir. 2011) 653 F3d 976, 982.

As noted above, the Court's August 2 order expanded the TRO in this case to include Plaintiffs' proposed class (roughly 50 inmates who were tapering off cross-sex

hormones). In explaining this expansion, the Court stated: "it finds that Plaintiffs have raised serious questions going to the merits of this case and in light of the extreme time constraints." Dkt. 51 at 2. The Court did not explain why reversing course for the roughly 50 inmates who were tapered off cross-sex hormones was necessary to prevent irreparable injury. Indeed Plaintiffs, in their Additional Brief ISO Motion for TRO/PI and Class Certification, presented no new information regarding irreparable harm, except for a generalized declaration from Dr. Marvin-Anthony Carson Alviso. Dkt. 40-2 at 5-6.[1]

## ARGUMENT

For the foregoing reasons, State Defendants request that the Court grant its motion for reconsideration, and provide all other relief that is just.

DATED: August 29, 2024

                          STATE OF IDAHO
                          OFFICE OF THE ATTORNEY GENERAL

                          By:  /s/ James J. Simeri
                              JAMES J. SIMERI
                              Deputy Attorney General

---

[1] Dr. Alviso serves as an expert witness in a companion case also challenging § 18-8901. *See M.H. v. Adams*, Case No. 1:22-CV-409 (D. Id.) (Patricco, J.). Notably, in that case plaintiffs' counsel (and presumably their team of experts, which would include Dr. Alviso) have agreed that tapering gender-dysphoric individuals off cross-sex hormones, as opposed to an abrupt cessation, alleviates any concerns about irreparable injury. Thus, the plaintiffs in *M.H.* have decided not to seek a preliminary injunction. *See M.H. v. Adams,* Case No. 1:22-CV-409, Dkt. 117 at 16 ("slowly tapering a patient off hormone therapy removes the need to prevent irreparable harm").

## **CERTIFICATE OF SERVICE**

      I certify that on August 29, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Paul Carlos Southwick
psouthwick@acluidaho.org

Emily Myrei Croston
ecroston@acluidaho.org

Malita Picasso
mpicasso@aclu.org

Chase B. Strangio
cstrangio@aclu.org

*Attorneys for Plaintiff*

Christina M. Hesse
cmh@dukeevett.com

Michael J. Bentley
mbentley@bentley.com

*Attorney for Defendants Centurion of Idaho, LLC and Centurion Health*

    /s/ James J. Simeri
    JAMES J. SIMERI