UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLE ROBINSON and JANE POE<br><br>    Plaintiffs,<br><br>v.<br><br>RAUL LABRADOR; JOSH TEWALT; BRAD LITTLE; BREE DERRICK; CENTURION HEALTH, and CENTURION OF IDAHO, LLC,<br><br>    Defendants. | Case No. 1:24-cv-00306-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is a Motion for Temporary Restraining Order, Provisional Class Certification, and Preliminary Injunction filed by Plaintiffs Cole Robinson and Jane Poe. Dkt. 2. State Defendants[1] opposed the Motion (Dkt. 24), and Plaintiffs replied (Dkt. 25). The Court held an expedited oral argument on the Motion on July 15, 2024. On August 2, 2024, after discovery and briefing, the Court held a second hearing which focused solely on class certification. At the close of that hearing, the Court took the class-certification question under advisement.

---

[1] The Court will use the term "State Defendants" to refer to defendants Raul Labrador in his official capacity as Attorney General of the State of Idaho, Josh Tewalt in his official capacity as the Director of the Idaho Department of Corrections, Brad Little in his official capacity as Governor of the State of Idaho, and Bree Derrick in her official capacity as the Deputy Director of IDOC. Defendants Centurion Health and Centurion of Idaho, LLC (together, "Centurion") are private healthcare organizations that contract with the Idaho Department of Corrections to provide medical care for prisoners in state custody. Centurion did not oppose Plaintiffs' Motion.

Now, upon consideration, the Court GRANTS Plaintiffs' request for a preliminary injunction and GRANTS Plaintiffs' request for class certification.

## II. BACKGROUND

Idaho Code § 18-8901 (the "Act") took effect on July 1, 2024. The Act prohibits the use of public funds on medical interventions—surgical or otherwise—that "alter[] the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex[.]" *Id.* at § 18-8901(2).

The named Plaintiffs are two transgender women who are currently incarcerated in facilities administered by the Idaho Department of Corrections ("IDOC"). They bring this claim as a putative class action on behalf of "all incarcerated persons in the custody of IDOC who are, or will be diagnosed with gender dysphoria, and are receiving, or would receive, hormone therapy proscribed by [the Act]." Dkt. 1, at 4. Both named Plaintiffs have been diagnosed with Gender Dysphoria and have been prescribed regular hormone-altering medications as a form of treatment. *See, e.g.*, Dkt 2-2; Dkt. 2-4. They argue the Act denies them and other similarly situated inmates necessary medical treatment in violation of the Eighth Amendment and 42 U.S.C. § 1983. Dkt. 1, at 18–20.

With their Complaint, Plaintiffs filed the instant Motion, requesting a temporary restraining order (a "TRO") and a preliminary injunction against enforcement of the Act. Dkt. 2, at 2. They also requested that the Court grant provisional class certification and waive the bond requirement imposed by Fed. R. Civ. P. 65(c). *Id.* at 2, 15. Recognizing Plaintiffs' urgency, and finding that they had raised serious questions going to the merits of their case, the Court granted a provisional TRO against enforcement of the Act,

pending further briefing and oral argument. Dkt. 13. At that time, the Court declined to rule on Plaintiffs' request for provisional class certification. *Id.* at 7. It also declined to rule on Plaintiffs' request for bond waiver.

The parties subsequently briefed Plaintiffs' Motion and the Court heard oral argument on July 15, 2024. Dkt. 28. At the close of oral argument, the Court took under advisement Plaintiffs' request for a preliminary injunction and requested further briefing and argument on the question of class certification. The parties complied, and a second hearing was held on August 2, 2024. At the close of that hearing, the court took under advisement the class-certification issue. It now rules on the requests for preliminary injunction, class certification, and bond waiver.

## III. LEGAL STANDARDS

### A. Preliminary Injunction

To qualify for a preliminary injunction, a plaintiff must show "(1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22–23 (2008).

The Ninth Circuit has instructed district courts to evaluate these factors "on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. Of Educ.*, 82

F.4th 664, 684 (9th Cir. 2023) (cleaned up).[2] This approach permits the imposition of a preliminary injunction where a plaintiff shows only "serious questions going to the merits"—and not a likelihood of success on the merits—as long as the hardship balance "tips sharply" in the plaintiff's favor, and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 68 F.4th at 490–91. The serious-questions standard is satisfied where a plaintiff raises questions "that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Id.* at 497 (cleaned up); *see also Fellowship of Christian Athletes*, 82 F.4th at 684 (explaining a showing of "serious questions" is "a lesser showing than likelihood of success"). Additionally, when "the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Poretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

### B. Class Certification

Under the Federal Rules of Civil Procedure, a court may certify a class if the class meets the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a). Fed. R. Civ. P. 23(a); *see also Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). In addition to meeting the four requirements of Rule 23(a), class actions must fall within one of the three types specified in Rule 23(b).[3] The district court's Rule 23(a) and (b) analysis

---

[2] The Court notes a growing circuit split on the question of whether the sliding-scale approach is consistent with the Supreme Court's opinion in *Winter. See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 n.12 (9th Cir. 2024). However, because the Ninth Circuit has expressly answered that question in the affirmative, the Court adopts the sliding-scale approach.

[3] The three types are cases in which (1) individual actions would create inconsistencies between standards of conduct between an opposing party, or would otherwise interfere with individual class members' ability to protect their interests; (2) the opposing party's conduct applies to the whole class; or (3) the questions

must be "rigorous." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). The party requesting class certification bears the burden of proving certification is appropriate. *Dukes*, 564 U.S. at 350. It must "affirmatively demonstrate [its] compliance with [Rule 23]—that is, [it] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original).

## IV. ANALYSIS

The Court will first analyze Plaintiffs' request for a preliminary injunction. It will then turn to Plaintiffs' request for class certification. Then, it will briefly discuss the bond requirement imposed by Rule 65(c).

### A. Preliminary Injunction

The court will take up each factor of the preliminary injunction test in turn.

#### 1. Serious Questions Going to the Merits

In its prior order, the Court stated it could "readily conclude that Plaintiffs [had] raised serious questions going to the merits of their case" because "questions regarding the medical necessity of gender-affirming care are unlikely to be resolved at any preliminary hearing." Dkt. 13, at 4. Instead, the Court stated such questions "will almost certainly require deliberative investigation." *Id* at 5. Now that the issue has been fully briefed, the Court remains convinced that Plaintiffs raise serious questions going to the merits of their case.

The government has an "obligation to provide medical care for those whom it is

---

common to the class predominate over questions affecting individual members, making class action the superior method for just adjudication of the controversy. Fed. R. Civ. P. 23(b).

punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Consistent with this obligation, the Supreme Court has made clear that prison officials who exhibit "deliberate indifference to serious medical needs of prisoners" violate the Eighth Amendment rights of those prisoners. *Id.* at 104.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (cleaned up). A "difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (cleaned up).

Here, there is no dispute that Gender Dysphoria is a serious medical need. The parties' disagreement stems from whether the Act's prohibition on appearance-changing medical interventions requires prison officials to act in a way that is deliberately indifferent to that serious medical need. Stated another way, the parties disagree over whether the denial of hormone therapy for inmates with Gender Dysphoria is medically unacceptable and creates an excessive risk to the health of such inmates.[4]

---

[4] Plaintiffs and State Defendants frame their arguments under this first factor in terms of likelihood of success. *See* Dkt. 2-1, at 10–14; Dkt. 24, at 3–9. But, as already discussed, the "serious questions" standard is the appropriate inquiry here. *See Alliance for the Wild Rockies*, 68 F.4th at 490–91.

MEMORANDUM DECISION AND ORDER – 6

Plaintiffs contend that hormone therapy is a medically essential form of treatment for almost all individuals with Gender Dysphoria.[5] Dkt. 2-1, at 8–9. This conclusion is based on the Standards of Care promulgated by the World Professional Association for Transgender Health ("WPATH") and a declaration from Randi C. Ettner, a clinical and forensic psychologist and former secretary of WPATH. *Id.* at 7; Dkt. 2-5. Plaintiffs laud the WPATH standards as internationally recognized and authoritative. Dkt. 2-1, at 7. Indeed, both the Ninth Circuit and this Court have relied on the WPATH standards in the past. *See Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019); *Poe v. Labrador*, 2023 WL 8935065, at *4 (D. Idaho Dec. 26, 2023). However, the State Defendants introduced expert testimony suggesting that WPATH's standards may be more the result of social and political pressures than of sound scientific methodology. *See generally* Dkts. 24-1, 24-2.

State Defendants further counter, relying on *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) and *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), to contend that once a state sets a standard for medical care, that statutory standard is controlling. They argue that because the Act establishes the standard of acceptable care for individuals with Gender Dysphoria, "we are no longer in a situation where the Court evaluates competing testimony about what the standard of care should be." Dkt. 24, at 5.

In *Pickup*, a group of mental health counselors challenged a California law that prohibited mental health practitioners from engaging in "sexual orientation change efforts" with clients who are minors. 740 F.3d, at 1215. The counselors argued the law violated

---

[5] They note that denial of such treatment increases risk of poor mental health outcomes, self-harm, and suicide. *Id.*

their rights under the First Amendment. *Id.* Finding that the law's constitutional implications were only incidental, the Ninth Circuit applied rational basis scrutiny and ultimately upheld the law. *Id.* at 1229. It stated that the state of California "has authority to regulate licensed mental health providers' administration of therapies that the legislature has deemed harmful," but implicit in that declaration was an understanding that such authority must be exercised within constitutional limits. *Id.* Further, in upholding the law, the Ninth Circuit cited to the California legislature's reliance on credible medical testimony and its stated interest in "protecting the physical and psychological well-being of minors[.]" *Id.* at 1231–32.

In *Tingley*, the Ninth Circuit upheld a substantially similar law out of Washington. 47 F.4th at 1063–64. Again, the Ninth Circuit cited the law's incidental impact on constitutional rights, Washington's stated interest in enacting the law, and the medical evidence on which Washington relied in enacting the law. *Id.* at 1077–79.

Because both cases address First Amendment challenges, and not Eighth Amendment challenges, their applicability to the facts at hand is limited. However, from *Pickup* and *Tingley*, the Court can still glean a few principles. First, where a law regulating medical treatment has only an incidental impact on constitutional rights, a reviewing court should apply rational basis scrutiny. Second, rational basis scrutiny can be satisfied where a legislature makes clear its purpose in enacting a law and where it relies on credible medical testimony in enacting a law.

Here, the Idaho legislature has stated its purpose in enacting the Act—to protect citizens from the substantial risks and known harmful effects of the proscribed treatments.

MEMORANDUM DECISION AND ORDER – 8

Dkt. 24, at 4. But at this stage in the proceedings, the Court has little information about the medical testimony on which the legislature relied. And more importantly, the Court cannot say at this point that the Act has only an incidental impact on the Eighth Amendment rights of prisoners. It is entirely possible that the prohibition of a particular type of treatment for a particular medical condition constitutes deliberate indifference, in violation of the Eighth Amendment. For that reason more than any other, the Court finds *Tingley* and *Pickup* unhelpful, at least for now. If, down the line, State Defendants can show the Act has only an incidental impact on Plaintiffs' Eighth Amendment rights, then *Tingley* and *Pickup* would take on new significance. But until then, they do not compel the Court one way or another.

At this juncture, the key question is whether hormone therapy is medically necessary for individuals with Gender Dysphoria. The Court is not convinced that WPATH or the Idaho Legislature have answered that question conclusively. And this is not the type of question that can be answered without more deliberative investigation. Accordingly, the Court finds that Plaintiffs have raised a serious question going to the merits of this case. Thus, in the sliding scale analysis, this first factor weighs in favor of enjoining enforcement of the Act.

### 2. Irreparable Harm

Plaintiffs argue that, without continued hormone therapy, irreparable injury is inevitable and imminent. Dkt. 2-1. The Ninth Circuit has endorsed a finding of irreparable harm where a plaintiff is likely to experience "emotional stress, depression, and a reduced sense of well-being." *Chalk v. U.S. Dist. Court Cent. Dist. Of Cal.*, 840 F.2d 701, 709 (9th

Cir. 1988).

Here, each named Plaintiff has submitted a declaration, detailing the mental health benefits she has received since starting hormone therapy, and asserting that a cessation of the hormones will have a negative impact on her physical and emotional health and well-being. Dkt. 2-2, at 5 (describing the potential loss of access to hormone therapy as "emotionally and physically devastating"); Dkt. 2-4, at 4 (noting that when she stopped hormone therapy in the past, she experienced increased anxiety and depression). State Defendants counter that Plaintiffs are unqualified to state what kind of harm they are likely to face from a medically supervised cessation of hormone therapy. Dkt. 24, at 10–14.

This is something of a close question. Plaintiffs' assertion of likely irreparable harm would be on much firmer ground had they introduced testimony from a medical expert who had evaluated them individually. However, the Court finds the Plaintiffs' statements are sufficient to show at least a likely increase in emotional stress and a likely decrease in sense of well-being if they lose access to hormone therapy. *Chalk*, 840 F.2d at 709. Accordingly, this factor weighs in favor of granting a preliminary injunction.

### 3. Balance of Equities/Public Interest

"The 'balance of equities' concerns the burdens or hardships to [a plaintiff] compared with the burden on [the defendant] if an injunction is ordered. The 'public interest' mostly concerns the injunction's impact on nonparties rather than parties." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (cleaned up).

Here, as already discussed, Plaintiffs have shown they are likely to experience legitimate mental health and well-being issues if they lose access to hormone therapy. On

MEMORANDUM DECISION AND ORDER – 10

the other side of the scale, State Defendants made no argument regarding the potential burden of continuing to provide hormone therapy to the named plaintiffs. Further, as Plaintiffs note, IDOC's own medical care policy prior to enactment of the Act expressly recognized hormone therapy as a valid form of treatment for some individuals with Gender Dysphoria. Dkt. 25, at 3; Dkt. 25-2. Surely, continued compliance with that policy pending the outcome of this litigation would not impose any major burden on State Defendants. Thus, the hardships balance here "tips sharply" in favor of plaintiffs. *Alliance for the Wild Rockies*, 68 F.4th at 490–91.

As for the public interest, State Defendants again are silent. The public certainly has an interest in the enforcement of duly enacted laws. But it also has an interest in preventing constitutional violations. *Porretti*, 11 F.4th at 1050–51. While it is not yet clear that any such violation is present here, until the Court can make a more informed decision, the public is best served if the Court steers clear of potential constitutional impingement. Thus, this final inquiry supports the imposition of a preliminary injunction.

### 4. Conclusion

Plaintiffs have raised serious questions going to the merits of their claim, they have shown likely irreparable harm from enforcement of the Act, and the balance of equities and public interest weigh in the Plaintiffs' favor. Accordingly, the Court hereby GRANTS Plaintiffs' Motion for Preliminary Injunction.

### B. Class Certification

As an initial matter, State Defendants dispute whether Plaintiffs can request class certification this early in the proceedings. Dkt. 24, at 14–16. Rule 23 states that a district

court must determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative[.]" Fed. R. Civ. P. 23(c)(1)(A). Nothing in that language precludes class certification early in the proceedings, provided the plaintiff has met the other requirements of Rule 23. Further, the Ninth Circuit has expressly approved the granting of a class certification alongside a preliminary injunction. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (stating that a district court "did not abuse its discretion by granting provisional class certification" in an order wherein it also granted a preliminary injunction); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) ("We have approved provisional class certification for purposes of preliminary injunction proceedings."). Thus, at this stage, as at any other, the Court can certify a class upon a showing of numerosity, commonality, typicality, and adequacy. The Court will take up each of those factors below. It will also discuss named Plaintiffs' compliance with Rule 23(b), briefly turn to the impact of the Supreme Court's recent order in *Labrador v. Poe by & through Poe*, 144 S. Ct. 921 (2024) on Plaintiffs' Motion, then address Plaintiffs' request that counsel for the named Plaintiffs be appointed counsel for the class.

### 1. Numerosity

Regarding numerosity, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). And while Rule 23(a)(1) requires that the class be "numerous," there is no "strict numerical cut-off." *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 167 (S.D. Cal. 2019) (cleaned up). Citing cases in every federal circuit, a leading treatise on class actions opines that, "a class

of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 *Newberg on Class Actions*, § 3:12 (5th Ed. 2021).

"Plaintiffs need not state the exact number of potential members nor identify all the members of the class so long as the putative class is not amorphous." *Arnold v. United Artists Theater Cir., Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994), *as amended on denial of reconsideration* (Sept. 15, 1994). Further, the Ninth Circuit has held that where "a class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable." *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828 (9th Cir. 2022).

When asserting numerosity in their initial motion, named Plaintiffs presented only their own declarations, wherein they claimed to know of roughly thirty individuals in IDOC custody who were receiving hormone therapy for Gender Dysphoria. Dkts. 2-2–2-4.[6] They introduced no corroborating information and no additional details about these individuals. The Court had reservations about finding the numerosity requirement satisfied on such a scant record. It was primarily for this reason that the Court allowed for a brief period of discovery, and additional briefing and argument.

In additional briefing, Plaintiffs have introduced, among other things, admissions from State Defendants (Dkt. 39-2) (the "Admissions") and a declaration from John May, Chief Medical Officer for Centurion (Dkt. 36) (the "May Declaration"). In the Admissions, State Defendants admit that more than forty individuals in IDOC custody, including the

---

[6] Initially, there were three named Plaintiffs—Robinson, Doe, and Poe. However, Plaintiff Doe has since withdrawn as a class representative. Dkt. 48.

named Plaintiffs, have been diagnosed with Gender Dysphoria. Dkt. 39-2, at 2. They also admit that more than forty of those individuals, including the named Plaintiffs, had been receiving hormone therapy as treatment for their Gender Dysphoria prior to any tapering-off requirements imposed by § 18-8901. *Id.* In the May Declaration, Dr. May testifies that there are between sixty and seventy individuals in IDOC custody who have been diagnosed with Gender Dysphoria, and that fifty-four of those individuals—including the named Plaintiffs—were receiving hormone therapy as treatment for their diagnoses before § 18-8901 took effect. Dkt. 36, at 2.

Upon consideration of this new information, the Court's prior concerns have been alleviated. It can now readily conclude that joinder of all class members would be impracticable. State Defendants do not dispute that conclusion. Dkt. 46, at 7. Accordingly, the numerosity element is satisfied.

### 2. Commonality

Rule 23(a) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied when there is a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 359). Stated another

way, even "where the circumstances of each particular class member vary," if there exists a "common core of factual or legal issues" among the class, the commonality requirement is satisfied. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

"To assess whether the putative class members share a common question . . . [the Court] must identify the elements of the class members'[] case-in-chief." *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014).

Here, the class members' case-in-chief revolves around an alleged violation of their Eighth Amendment rights. As the Court stated above, prison officials who exhibit "deliberate indifference to serious medical needs of prisoners" violate the Eighth Amendment rights of those prisoners. *Estelle*, 429 U.S. at 104. "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." *Hamby*, 821 F.3d at 1092.

The Act imposes a blanket prohibition on hormone therapy, even for those to whom such therapy has been prescribed by a medical professional.[7] Whether this prohibition is medically unacceptable as to those who would otherwise be eligible and whether it requires prison medical personnel to consciously disregard excessive risks to the health of the proposed class members are questions common to the proposed class. If these questions are answered in the affirmative, the Act violates the Eighth Amendment rights of the class.

---

[7] The Court recognizes that the challenged statute prohibits the use of State funds for hormone therapy, not necessarily the therapy itself. However, for incarcerated individuals with no source of income, the ban on using State funds is the functional equivalent of a ban on therapy.

If answered in the negative, the class's claim will fail. While the individual medical circumstances of each inmate may vary, the settlement of these questions will resolve issues central to the validity of each of the class members' claims "in one stroke." *Dukes*, 564 U.S. at 350. These questions satisfy the common legal core required by *Parsons*. 754 F.3d at 675.

State Defendants invoke *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012) to counter that where the class's common question overlaps with the merits arguments of the prosed class, the Court must make individualized factual determinations. Dkt. 46, at 8. Accordingly, they claim that because the Court has not made such determinations here, the commonality requirement is not satisfied. *Id.*

As an initial matter, the Court notes that *Stukenberg* comes out of the Fifth Circuit, meaning it is, at best, only persuasive authority. But even if the Court were bound by *Stukenberg*, State Defendants have misread and misapplied it to the facts at hand.

In *Stukenberg*, the district court certified a class of 12,000 children who alleged "systemic deficiencies" in Texas's Permanent Managing Conservatorship ("PMC"). *Stuckenberg*, 675 F.3d at 835, 842. But on review, the circuit court held that the district court's findings related to commonality "lack[ed] the specificity required for [the circuit court] to determine whether the alleged common questions of law satisf[ied] the requirements of Rule 23(a)(2)." *Id.* It made this determination, in part, because the district court "conducted no analysis of the elements and defenses for establishing any of the proposed class's claims, nor did it adequately explain how those claims depend on a common legal contention" that would resolve the class's claims in a single stroke. *Id.*

MEMORANDUM DECISION AND ORDER – 16

(cleaned up). Further, the district court did not address the defendants' argument that the plaintiffs' claims required individualized inquiries and were therefore incapable of class-wide resolution. *Id.* at 843.

On this last point, the Fifth Circuit stated that, while the district court may have been correct to reject the defendants' arguments regarding the necessity of individualized inquiries, "on remand, it must do so, with reference to the elements and defenses and requisite proof for each of the proposed class claims in order to ensure that differences among the class members do not preclude commonality." *Id.* at 843–44. The Fifth Circuit did *not* announce a general rule that where a class's common question overlaps with the merits arguments of the proposed class, the Court must make individualized factual determinations. The closest it came to such a statement was its declaration that, where merits issues and common questions overlap, district courts must "specifically delineate how a class proceeding would allow the court to resolve a discrete question of law" that is central to the validity of the individual plaintiffs' claims in a single stroke *Id.* at 843. The Court has already done so here.

Further, in *Parsons*—a case that *is* binding—the Ninth Circuit stated in no uncertain terms:

> A clear line of precedent, stretching back long before [*Dukes*] and unquestioningly continuing past it, firmly establishes that when inmates provide sufficient evidence of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm, [the commonality requirement] is satisfied.

754 F.3d at 684. Here, there is no dispute that the Act now dictates the centralized policies of IDOC facilities. Plaintiffs allege that the Act exposes all proposed class members to a

substantial risk of serious future harm. Unlike *Parsons*, Plaintiffs' proposed class does not consist of *all* inmates in IDOC custody. But considering that the class consists of at least fifty-four individuals (*see* Dkt. 36, at 2), the logic from *Parsons* applies with equal force here. *See also Brown v. Plata*, 563 U.S. 493, 505 n.3 (2011). Members of the proposed class "are as one in their exposure to [an allegedly illegal statute—the Act], rather than only in their advancement of a general Eighth Amendment legal theory." *Parsons*, 754 F.3d at 679. And the allegedly unconstitutional harm the Act causes to each class member "can be answered in a single stroke." Thus, because there are questions of law common to the class, the commonality requirement is satisfied.

### 3. Typicality

The typicality requirement demands that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry is related to the commonality inquiry. "Both serve as guideposts for determining whether . . . the named [plaintiffs'] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected . . . ." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Under Rule 23(a)(3)'s "permissive standards," claims are "typical" when they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). A primary concern of the typicality inquiry is whether there exists a "danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (cleaned up).

Here, with Plaintiffs, the Court notes that the named Plaintiffs are not seeking individualized damages, nor do they present any claim that is unique to them. Dkt. 39, at 14. Instead, they, like the proposed class, seek only injunctive relief from the Act's prohibition of the use of state funds for hormone therapy. Further, absent the Court's TRO and preliminary injunction, the named Plaintiffs would be subject to the same alleged injury as the proposed class—denial of hormone therapy; and that injury is caused by the same course of conduct—Defendants' adherence to the Act. *See Parsons*, 754 F.3d at 685.

State Defendants argue in passing that because the named Plaintiffs are challenging only the Act's prohibition of hormone therapy for prisoners, and not its prohibition of sex-change surgery for prisoners (the "Surgery Provision"), named Plaintiffs are not typical of the class—some of whom may want to challenge the Surgery Provision. But as of yet, no class member has advanced any claim regarding the Surgery Provision. Instead, the named Plaintiffs and the class members are advancing the same, single claim. Thus, for now, the claim brought by the named Plaintiffs is at least "reasonably co-extensive" to the claim advanced by the proposed class as a whole. *Parsons*, 754 F.3d at 685. And the Court cannot identify any danger members of the proposed class would face by allowing the named Plaintiffs to represent them in this claim. Accordingly, the typicality requirement is satisfied.

MEMORANDUM DECISION AND ORDER – 19

### 4. Adequacy

Finally, Rule 23(a) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent" as well as the "competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997). The Court must consider two factors: (1) whether the named plaintiffs and their counsel have any conflicts of interests with members of the class and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023).

On the first point, State Defendants raise an argument similar to the argument they raised to contest typicality. Relying on *Rader v. Teva Parenteral Medicines, Inc.*, 276 F.R.D. 524 (D. Nev. 2011), they assert that when a class representative abandons potentially available claims, the representative creates a conflict between herself and the class members because the doctrine of res judicata bars class members from pursuing those claims in subsequent litigation. In *Rader*, the District of Nevada held that a petition for class certification failed under the adequacy prong because the proposed representative had "thrown away" claims that could have been raised by the class members. *Id.* at 529. It elaborated that because "[t]he class members [would] be bound by any judgment and precluded from pursuing claims at a later date that could have been asserted in the class action[,]" the proposed representative had "created an insurmountable conflict between his own interests and that of the class he wishes to represent." *Id.*

The named Plaintiffs here are not seeking an injunction as to the Surgery Provision,

nor are they seeking individual damages despite the fact that § 1983 allows them to. State Defendants claim that these two choices render the named Plaintiffs inadequate representatives of the class. Dkt. 46, at 12–13.

Regarding the preclusive effect of the named Plaintiffs' choice not to seek individual damages, the Ninth Circuit took up this issue in *Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996). There, it stated, "the general rule is that a class action suit seeking only declaratory relief does not bar subsequent individual damage claims by class members, even if based on the same events." *Id.* at 1291. It elaborated that "every federal court of appeals that has considered the question," has followed this rule. *Id.* (cleaned up). Thus, the Court finds that the named Plaintiffs' choice not to pursue individual damages does not create a conflict between them and the class and does not render them inadequate to serve as class representatives.

Plaintiffs' choice not to pursue injunctive relief as to the Surgery Provision presents a closer question. "Conflicts of interest may arise when one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010). However, in *Pride v. Correa*, the Ninth Circuit found that "[i]ndividual claims for injunctive relief related to medical treatment," were not precluded by a class action that raised systemic challenges to the healthcare provided in California prisons. 719 F.3d 1130, 1136–37 (9th Cir. 2013). This was, in part, because individualized medical care "ha[d] not already been addressed conclusively by the [class action]." *Id.* at 1136 (cleaned up).

Here, as in *Pride*, the plaintiff class seeks systemic relief—success on their claim would result in the prison-wide availability of hormone therapy for those to whom it has been prescribed. Individuals seeking such treatment would still have to take the individualized steps of medical evaluation, prescription, and monitoring. No claims for individualized medical care are currently before the Court. Defendants note that there are likely class members who will want to pursue sex-change surgery at some point in the future. *See* Dkt. 46-1, at 17–18; Dkt. 46-2, at 12. But because the class here seeks systemic relief, pursuant to *Pride*, if an individual Idaho inmate wants to seek individual injunctive relief from the Surgery Provision at some future point, this class action will not bar the inmate from doing so. *Id.* at 1137.[8] Accordingly, the Court is satisfied that the interests of the named Plaintiffs do not conflict with those of the class.

Moving to the second point, whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class, "the relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (cleaned up). As already discussed, the named Plaintiffs have the same goals as the class in this lawsuit. There are no incentive awards or diverging claims at play here, so there will be no temptation for named Plaintiffs to assert their own interests at the expense of the proposed class. Their "interest in, and nexus with," the proposed class is entirely sufficient. *Id.* at 943.

---

[8] A district court could, however, decline to exercise jurisdiction over an inmate's claim seeking *systemic* relief as to the Surgery Provision. *Id.*

MEMORANDUM DECISION AND ORDER – 22

### 5. Rule 23(b)

Under Federal Rule of Civil Procedure 23(b), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "[C]ourts have repeatedly invoked [Rule 23(b)(2)] to certify classes of inmates seeking declaratory and injunctive relief for alleged widespread Eighth Amendment violations in prison systems." *Parsons*, 754 F.3d at 686–87 (collecting cases). In *Dukes*, the Supreme Court clarified:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

564 U.S. at 360.

Here, IDOC's refusal to administer hormone injections applies generally to the proposed class, and the proposed class seeks only injunctive relief. "[E]very inmate in the proposed class is allegedly suffering the same (or at least a similar injury)"—denial of access to hormone therapy upon prescription by a medical professional. *Parsons*, 754 F.3d at 689. An injunction on the Act would provide relief to each class member, and in no way differentiates between class members. Thus, Plaintiffs qualify to bring a class action under Rule 23(b)(2).

6. *Labrador v. Poe by & through Poe*

In a recent order, the Supreme Court cast serious doubt on the propriety of issuing injunctions that apply to nonparties and urged that the practice be retired. *Poe*, 144 S. Ct. at 921–28, 928–34 (Gorsuch, J. concurring) (Kavanaugh, J. concurring). The parties dispute the applicability of that order to Plaintiffs' request for class certification. State Defendants argue that Plaintiffs are essentially seeking a universal injunction, and that class certification is not a permissible *Poe* workaround. Dkt. 46, at 3–6. Plaintiffs counter that their course of action is consistent with the Supreme Court's guidance in *Poe*. Dkt. 39, at 21–22. The Court agrees with Plaintiffs.

Plaintiffs here are not seeking a universal injunction. A universal injunction would freeze enforcement of *all* provisions of the Act against *all* Idahoans. Instead, Plaintiffs are seeking to enjoin only a portion of the Act—the hormone provision—as to only a small portion of population—the proposed class. The class will remain subject to the rest of the Act, and the rest of Idaho will remain subject to the entirety of the act.

Further, class certification and injunctive relief are not inconsistent with the Supreme Court's guidance in *Poe*. In fact, two of the three opinions from *Poe* referenced class certification as a legitimate way to obtain the widespread relief that was impermissibly granted there via universal injunction. *See Poe*, 144 S. Ct. at 927, 932. Specifically, Justice Gorsuch stated that if a party "seek[s] relief for a larger group of persons, they must join those individuals to the suit or win class certification." *Id.* at 927. Justice Kavanaugh distinguished between universal injunctions and class actions, stating that it would be permissible for future hypothetical plaintiffs to "file a class action for

classwide injunctive relief under Rule 23(b)[.]" *Id.* at 932. That is precisely what Plaintiffs are doing here.

State Defendants insinuate that class certification is meant to benefit the class only upon final judgment. Dkt. 46, at 6. But this insinuation is not supported by *Poe* or any other case of which the Court is aware. In a variation of an argument the Court has already disposed of, State Defendants also contend that a class should be certified only after a case has been slowly and deliberatively developed. *Id.* at 5. The Court agrees that class should not be hastily certified. It is partly for this reason that the Court ordered limited discovery, additional briefing, and additional argument on the question of class certification. But the record is now sufficiently developed for the Court to conclude that Plaintiffs have complied with Rule 23.

In conclusion, *Poe* does nothing to foreclose Plaintiffs' chosen course of action. Plaintiffs seek limited relief for a limited class, and they have worked in good faith to win certification of that class under the rules. The proceedings have moved quickly. But the opinions in *Poe* cautioned not against quick proceedings per se, but against judicial overreach based on limited records. For the reasons outlined above, such concerns are not relevant here.

### 7. Class Counsel

In passing, Plaintiffs ask the Court to appoint counsel for named Plaintiffs as counsel for the class. Dkt. 39, at 20. Under Federal Rule of Civil Procedure 23(g)(1), in appointing class counsel, the Court must consider (i) the work counsel has invested in identifying or investigating potential claims in the action, (ii) counsel's experience in litigating class actions, complex cases, and cases similar to the case at hand, (iii) counsel's knowledge of applicable law, and (iv) the resources counsel plans to commit to the present case.

Counsel here affirm that they have spent "hundreds of hours speaking with putative class members and investigating and presenting the claims in this case." Dkt. 39, at 20. The Court has no reason to doubt this assertion. It simply adds that since the initiation of this case, counsel for Plaintiffs have been very proactive in moving the case forward. Plaintiffs also cite to various related cases their counsel have worked. *Id.* at 17–20. Between their four listed attorneys, counsel for Plaintiffs have extensive experience litigating transgender issues, class actions, constitutional claims, and claims of prisoners. *Id.* Considering the issues present in this case, the Court is satisfied that Plaintiffs' team is well-qualified to represent the proposed class and has sufficient knowledge of applicable law. Finally, counsel for Plaintiffs appear ready and able to commit to this case the resources it will demand. The ACLU of Idaho regularly litigates before this Court and others in this district and is known to have the staffing and other resources necessary to maintain a class action.

Finding all four considerations listed under Rule 23(g) to weigh in favor of appointing counsel for named Plaintiffs as class counsel, the Court hereby GRANTS Plaintiffs' request and appoints counsel for Plaintiffs as counsel for the class.

### C. Bond

Federal Rule of Civil Procedure 65(c) states that a court "may issue a preliminary injunction or a [TRO] only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Plaintiffs request that the Court waive the bond requirement contained in Federal Rule of Civil Procedure 65(c). The Ninth Circuit has held that requiring a bond "to issue before enjoining potentially unconstitutional conduct by a

governmental entity simply seems inappropriate because . . . protection of those rights should not be contingent upon an ability to pay." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Neither State Defendants nor Centurion contested Plaintiffs' request for waiver in their briefing, though at the first oral argument, State Defendants stated in passing that the bond requirement should not be waived. Nevertheless, consistent with the Ninth Circuit's statement in *Johnson*, the Court finds the bond requirement to be inappropriate in this situation. Therefore, the Court GRANTS Plaintiffs' request and waives the bond requirement.

## V. CONCLUSION

Plaintiffs have raised serious questions going to the merits of their claims, they have shown likely irreparable harm, and they have shown that the balance of equities and the public interest favor the imposition of a preliminary injunction. Accordingly, the Court will convert the current TRO into a preliminary injunction against enforcement of the identified portions of the Act as to Plaintiffs.

Further, Plaintiffs have established numerosity, commonality, typicality, and adequacy. They have also shown that they qualify to bring a class action under Rule 23(b)(2). Accordingly, the Court hereby GRANTS Plaintiffs' request for class certification. Additionally, pursuant to its findings under Rule 23(g), the Court appoints counsel for Plaintiffs as class counsel.

Finally, the Court will waive the bond requirement that would otherwise be imposed under Federal Rule of Civil Procedure 65(c).

## VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Motion for Temporary Restraining Order, Provisional Class Certification, and Preliminary Injunction (Dkt. 2) is hereby GRANTED.

    a. The Court certifies the proposed class of all incarcerated persons in the custody of IDOC who are, or will be diagnosed with Gender Dysphoria, and are receiving, or would receive hormone therapy proscribed under Idaho Code § 18-8901.

    b. The Court enjoins enforcement of Idaho Code § 18-8901's prohibition on the use of state funds for purposes of providing hormone therapy as against the class while this lawsuit is pending.

    c. The Court appoints counsel for the named Plaintiffs as counsel for the class.

2. The bond requirement imposed by Federal Rule of Civil Procedure 65(c) is WAIVED.

DATED: September 3, 2024

David C. Nye
Chief U.S. District Court Judge