Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso*
Leslie Cooper*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org
lcooper@aclu.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **KATIE ROBINSON**, et al.,<br>*Plaintiffs*,<br><br>v.<br><br>**RAÚL LABRADOR**, et al.,<br>*Defendants*. | Case No. 1:24-cv-00306-DCN<br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RENEWED PRELIMINARY INJUNCTION** |

Plaintiffs request this court reissue its September 3, 2024, Preliminary Injunction prior to December 2, 2024—its 90-day expiration date under the Prison Litigation Reform Act ("PLRA"). 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief shall automatically expire on the date that is 90 days

after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.").[1]

None of the material facts established prior to the initial order have changed. The challenged state law prohibiting gender-affirming hormone therapy with public funding or in public facilities remains on the books and, absent an injunction from this Court, would be enforced to discontinue such treatment for individuals with gender dysphoria in IDOC custody. With the preliminary injunction in place, IDOC's contracted medical provider continues to prescribe hormone therapy to individuals with gender dysphoria for whom it is medically indicated. And class members continue to rely on this care for their health and well-being. The properly circumscribed relief provided by the court remains as necessary today as when it was issued.

## BACKGROUND

On June 26, Plaintiffs' counsel received word from State Defendants that they intended to begin enforcement of House Bill 668's ban on providing gender affirming care in public facilities ("the Act") on its effective date. (*See* Dkt. 8 at 3-4). Two days later, Plaintiffs filed a Complaint (Dkt. 1) and a motion seeking a temporary restraining order, provisional class certification, and a preliminary injunction (Dkt. 2). From July 1 until August 2, the Court maintained a limited TRO protecting only the named plaintiffs' access to their prescribed hormone therapy. (Dkt. 13 and 28). During this time, defendants tapered the hormone therapy of all other putative class members in accordance with the Act. (*See* Dkt. 36 at ¶ 7).

After briefing (*see* Dkt. 23, 24, and 25) and a hearing on the Plaintiffs' Motion (*see* Dkt. 28), the court ordered limited discovery, additional briefing, and a class certification hearing to be held on August 2 (Dkt. 28). In the second round of briefing, Plaintiffs noted that the Court had sufficient evidence to rule

---

[1] To the extent the class certification from the September 3 order was provisional, Plaintiffs also request recertification of the class, as none of the material facts prior to the initial order have changed regarding the requirements of Rule 23(b)(2). If the certification from the September 3 order was a permanent class certification, then Plaintiffs solely seek renewal of the September 3 Preliminary Injunction.

on class certification and did not need to issue provisional class certification as initially requested. (Dkt. 40-2 at 21).

The court granted the preliminary injunction and request for class certification on September 3, 2024. (Dkt. 58).² To prevent the potential Constitutional violation, the court did not order any particular procedures, but rather enjoined enforcement of the Act as applied to the hormone therapy treatment of the certified class during the pendency of the lawsuit. *Id.* at 28. The court's order contemplated "continued compliance" with IDOC's own policies that had been in effect prior to enactment of the Act. *Id.* at 11.

The preliminary injunction is set to expire on December 2, 2024. 18 U.S.C. § 3626(a)(2).

ARGUMENT

1. *The Court Is Empowered to Reissue Its Preliminary Injunction Prior to Its Expiration Under the PLRA.*

The court's preliminary injunction should be reissued prior to its expiration as it extends relief which is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1).

The PLRA establishes that "[p]reliminary injunctive relief shall automatically expire on the date that is 90 days after its entry," unless the court makes the injunction final, *id.* at § 3626(a)(2), or issues a new preliminary injunction, *see Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001); *see also Gammett v. Idaho State Bd. of Corr.*, No. CV05-257-S-MHW, 2007 WL 2684750, at *4 (D. Idaho Sept. 7, 2007) ("The Ninth Circuit Court of Appeals has held that a district court may enter a second preliminary injunction upon the expiration of the first without violating the terms of the statute."). The Ninth Circuit

---

² The court's order "GRANTS Plaintiffs' request for class certification." (Dkt. 58 at 27). However, to the extent the court viewed its order as granting only provisional class certification—as initially requested by Plaintiffs—that provisional certification would expire along with the preliminary injunction. *See Ahlman v. Barnes*, 20 F.4th 489, 495 (9th Cir. 2021) (holding that provisional class certification expires along with preliminary injunctions under the PLRA). If the court views its order as thusly limited, plaintiffs respectfully request that the court now grant full class certification based on the reasoning set forth in Plaintiffs prior briefing. (*See* Dkt. 2-1, Dkt. 25, Dkt. 40-2).

permits district courts to reissue preliminary relief under the PLRA so long as that relief remains necessary. *See Mayweathers*, 258 F.3d at 936 ("Nothing in the statute limits the number of times a court may enter preliminary relief. If anything, the provision simply imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted.").

The court noted in its order that this case presents questions which "are unlikely to be resolved at any preliminary hearing [and] . . . will almost certainly require deliberative investigation." (Dkt. 58 at 5). The parties are set to begin discovery and will put the issue before the court more fully in dispositive motions or at trial. (*See* Dkt. 79 Scheduling Order). As such, Plaintiffs request this court reissue its preliminary injunction.

To reissue the relief, the court must find that the prospective relief complies with 18 U.S.C. § 3626(a)(1)(A). The relief must be "narrowly drawn, extend[ing] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." *Id.* The Ninth Circuit has held that this provision "has not substantially changed the threshold findings and standards required to justify an injunction." *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001). "[T]he [PLRA] merely codifies existing law and does not change the standards for determining whether to grant an injunction." *Id.* (quoting *Smith v. Ark. Dep't of Corr.*, 103 F.3d 637, 647 (8th Cir.1996)). "What is important, and what the PLRA requires, is a finding that the set of reforms being ordered—the 'relief'—corrects the violations of prisoners' rights with the minimal impact possible on defendants' discretion over their policies and procedures." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010).

2. *The Preliminary Injunction Remains Necessary to Protect the Rights of the Plaintiff Class.*

In issuing its order, the court found that the parties raised "serious questions" going to the merits of the case and that the balance of hardships tips sharply in favor of the plaintiffs. Neither the relevant policies nor the facts on the ground have changed since the court issued its preliminary injunction.

The court recognized that serious questions arise from the disagreement between the parties "over whether the denial of hormone therapy for inmates with Gender Dysphoria is medically unacceptable and creates an excessive risk to the health of such inmates." (Dkt. 58 at 6). The Eighth Amendment protects incarcerated individuals from policies which create a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834, (1994) ("For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). There is no dispute that gender dysphoria is a serious medical need. (Dkt. 58 at 6). The plaintiffs have set forth evidence of the risk of denying hormone therapy to individuals for whom a doctor has determined it is medically necessary. (*See* Dkt. 2-5, Ettner Decl., at ¶¶ 42, 55-62; Dkt. 40-9, Alviso Decl., at ¶¶ 15, 21, 27, 36-39, 42); (*see also* Dkt. 71 at ¶ 12 ("Centurion admits only that hormone replacement therapy is a recognized medical treatment that may be prescribed under certain circumstances, and that Centurion provided appropriate, medically indicated care and treatment to incarcerated individuals in accordance with the relevant standards of care.")). As the court found, this evidence establishes, at minimum, that there are serious questions as to whether the prohibition on any evaluation for or provision of a recognized medical treatment constitutes a substantial risk of serious harm to prisoners in Idaho. (Dkt. 58 at 9).

Additionally, plaintiffs presented testimony that they would be severely and irreparably harmed by cessation of their hormone therapy. (*See* Mills Decl. at ¶¶ 9-10; Heredia Decl. at ¶¶ 9; *see also* Dkt. 2-2, at 5; Dkt. 2-4, at 4). And defendants cannot establish that they will be unduly burdened by complying with their own policies as in effect prior to July 1, 2024. (*See* Dkt. 58 at 10-11). Therefore, the balance of hardships points toward reissuing a preliminary injunction.

Neither these legal conclusions nor the relevant material facts have changed since the court's Sept. 3rd order. The challenged act continues to be part of Idaho Code. I.C. § 18-8901. The Defendants have evinced their commitment to enforcing and/or complying with the Act both through statements to Plaintiffs' counsel (*see* Dkt. 8 at 3-4) and by tapering the hormone therapy of absent putative class members

prior to the court's August 2 Order (s*ee* Dkt. 36 at ¶ 7).[3] And class members continue to report health benefits from this care. (*See* Mills Decl. at ¶¶ 6-8; Heredia Decl. at ¶¶ 6-8). The narrow relief provided by the court remains as necessary today as when it was issued.

3. *Reissuing the Preliminary Injunction Meets the Needs-Narrowness-Intrusiveness Requirements of the PLRA.*

The relief issued by the court on September 3 was properly limited to the violation of the Federal Right as required by the PLRA. *See* 18 U.S.C. § 3626(a)(1)(A) ("Prospective relief . . . shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."). The order is limited to a certified class and a particular treatment—hormone therapy; it makes no decisions as to any individual class member's medical care; and it allows the state to design the procedure for ensuring compliance.

The preliminary injunction was narrowly drawn to include only a particular certified class and a single form of prohibited treatment. In the court's order, it noted that "Plaintiffs are seeking to enjoin only a portion of the Act—the hormone provision—as to only a small portion of population—the proposed class. The class will remain subject to the rest of the Act, and the rest of Idaho will remain subject to the entirety of the act." (Dkt. 58 at 24).

Whether relief is narrowly drawn "is dictated by the extent of the violation established." *See Balla v. Idaho State Bd. of Correction*, No. 1:81-CV-1165-BLW, 2020 WL 2812564, at *9 (D. Idaho May 30, 2020), *aff'd sub nom. Balla v. Idaho*, 29 F.4th 1019 (9th Cir. 2022) (citing *Coleman v. Schwarzenegger*,

---

[3] Even if Defendants changed course and began voluntarily providing hormone therapy, a renewed preliminary injunction would still be necessary considering their prior commitment to enforcing the Act. *See Armstrong v. Newsom*, 58 F.4th 1283, 1298 (9th Cir. 2023) ("But voluntary plans may change. Particularly considering Defendants' prior failures to improve their accountability systems in the absence of specific, court-ordered instructions, it was reasonable for the district court to include measures in its orders that Defendants may have adopted voluntarily.").

922 F. Supp. 2d 882, 963 (E.D. Cal. and N.D. Cal. 2009)). In *Edmo v. Idaho Department of Correction*, No. 1:17-CV-00151-BLW, 2019 WL 1546927, (D. Idaho Apr. 9, 2019) *affirmed by Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 (9th Cir. 2019), this court explained that its ruling was narrowly drawn in part because it extended only to the plaintiff and circumstances directly before the court. *Id.* at *2. "I carefully indicated that the preliminary injunction was narrowly drawn and would have no application outside of the case before me. I made clear that the injunction applies solely to Plaintiff, noting that '[the Court's] decision . . . [was] based upon, and limited to, the unique facts and circumstances presented by Ms. Edmo's case.'" *Id.* In other circumstances, this court has found that class actions may result in remedies applicable to the class. *Balla*, 2020 WL 2812564, at *9 (approving systemwide relief where class showed systemic harms).

Here, the court has similarly indicated that the relief granted extends no further than the certified class and the particular treatment challenged. It paid particular attention to this issue in relation to the Supreme Court's decision in *Labrador v. Poe*, 144 S.Ct. 921 (2024) and found that the injunction was properly narrow. (*See* Dkt. 58 at 24-25). As such, the original preliminary injunction was, and a reissued order would also be, narrowly drawn within the meaning of the PLRA.

In *Edmo*, the district court also noted that its decision "extends no further than necessary to correct the constitutional injury Plaintiff is suffering," because the decision did not constitute "a general finding that all inmates suffering from gender dysphoria are entitled to gender confirmation surgery." *Edmo*, 2019 WL 1546927, at *2; *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 (9th Cir. 2019) (approving the district court's reasoning).

Similarly, the preliminary injunction here does not require a finding that gender-affirming hormone therapy is required for any particular class member. It only prohibits the blanket ban on evaluation and treatment set forth in the Act. It is within IDOC's authority to establish procedures for diagnosing and prescribing the care at issue. The court is not required to evaluate or second-guess the findings of IDOC's own contracted medical providers. Thus, the court's order extends no further than necessary to correct the violation.

In determining whether relief is intrusive, the burden of compliance is "beside the point." *Armstrong*, 622 F.3d at 1071. Instead, "the core concern of the intrusiveness inquiry [is] whether the district court has 'enmeshed [itself] in the minutiae of prison operations,' beyond what is necessary to vindicate plaintiffs' federal rights." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 562, (1979)). In *Armstrong v. Schwarzenegger*, the Ninth Circuit noted that "[i]ntrusiveness is a particularly difficult issue for defendants to argue, [where] by ordering them to draft and promulgate a plan, the district court left to defendants' discretion as many of the particulars regarding how to deliver the relief as it deemed possible. Allowing defendants to develop policies and procedures to meet [Constitutional] requirements is precisely the type of process that the Supreme Court has indicated is appropriate for devising a suitable remedial plan in a prison litigation case." *Id.* at 1071 (citing *Lewis v. Casey*, 518 U.S. 343, 362–63 (1996)).

Prior to July 1, IDOC provided hormone therapy according to its own internal policy. As the court noted in its order,

> State Defendants made no argument regarding the potential burden of continuing to provide hormone therapy to the named plaintiffs. Further, as Plaintiffs note, IDOC's own medical care policy prior to enactment of the Act expressly recognized Hormone therapy as a valid form of treatment for some individuals with Gender Dysphoria. Surely, continued compliance with that policy pending the outcome of this litigation would not impose any major burden on State Defendants.

(Dkt. 58 at 11 (internal quotes omitted)). The court's order does not dictate any policies or procedures for ensuring compliance. It merely prevents the enforcement of the constitutionally suspect Act. *See Armstrong v. Brown*, 768 F.3d 975, 985 (9th Cir. 2014) ("The Modified Injunction says nothing about how the State should implement compliance . . . ; it provides no mandates for how the prison should run its facilities, house prisoners, or conduct its daily administration."). The relief is thus "the least intrusive means necessary to correct the violation of the Federal right." *See* 18 U.S.C. § 3626(a)(1)(A).

## CONCLUSION

The court's September 3 preliminary injunction "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct

the violation of the Federal right." Because none of the predicates for that decision have changed, Plaintiffs respectfully request that the court re-issue its preliminary injunction prior to its expiration on December 2, 2024.

Dated: October 28, 2024

Respectfully submitted,

/s/ *Emily Myrei Croston*
Emily Myrei Croston (ISB No. 12389)

ACLU of Idaho Foundation