Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso*
Leslie Cooper**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org
lcooper@aclu.org

*Admitted *pro hac vice*
**Motion for *pro hac vice* pending

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **KATIE ROBINSON**, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>**RAÚL LABRADOR**, et al.,<br><br>*Defendants*. | Case No. 1:24-cv-00306-DCN<br>**PLAINTIFFS' OPPOSITION TO GOVERNOR LITTLE AND ATTORNEY GENERAL LABRADOR'S MOTION TO DISMISS (DKT. 75)** |

House Bill 668, codified at Idaho Code § 18-8901, carries with it unique criminal penalties which are subject to enforcement by Attorney General Raul Labrador and Governor Bradley Little,

making both proper parties under *Ex parte Young*, 209 U.S. 123, 155–56 (1908) ("individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state . . . may be enjoined" from enforcing an unconstitutional act). Plaintiffs sued the Attorney General and Governor to prevent the known, severe risks of enforcing H.B. 668. Idaho is responsible for 60 to 70 incarcerated people who have been diagnosed with gender dysphoria and need the care that H.B. 668 prohibits.

Under the well-established exception to state sovereign immunity laid out in *Ex parte Young*, both Attorney General Labrador and Governor Little are proper defendants. Attorney General Labrador is a proper defendant under *Ex parte Young* because it is his prosecutorial duty to enforce H.B. 668. *See* Idaho Code § 67-1401(7); *Newman v. Lance*, 922 P.2d 395, 399 (Idaho 1996).

Governor Little is a proper defendant under *Ex parte Young* because failure of the Director of the Idaho Department of Correction ("IDOC Director") to comply with H.B. 668 would require the Governor to terminate his employment. Intentional violations of H.B. 668 are punishable as "misuse of public moneys," incorporating by reference the attendant punishments for this criminal offense set out in Section 18-5702. *See* Idaho Code § 18-8901(7) (citing *id.* § 18-5702). In addition to potential misdemeanor and felony charges, Section 18-5702 requires that public employees who misuse funds be terminated from their positions subject to any procedures applicable to such termination. If the IDOC Director failed to comply with the terms of H.B. 668, Idaho law dictates that Governor Little would be directly and solely responsible for terminating him. *See* Idaho Code §§ 67-802(2), 67-2404(2).

I. **Background**

H.B. 668 prevents the use of public resources for the provision of gender-affirming medical care, including hormone therapy. The law affects incarcerated individuals who need this care in three primary ways. Section 2 of the law prohibits the use of public funds to pay for gender-affirming medical care. Idaho Code § 18-8901(2). Section 5 prevents public health care professionals from providing this care in the scope of their employment. *Id.* § 18-8901(5). Finally, and, critically for incarcerated people, Section 6 prevents state properties, facilities, or buildings from being used to provide this care. *Id.* § 18-8901(6). This final prohibition means that incarcerated individuals, even if they were able to fund and administer their own care, would be unable to access gender-affirming medical care by virtue of their detention in a public facility. Incarcerated people are the only population in Idaho that is prohibited from accessing this care in any manner. They cannot pursue outside funding or seek care providers outside the state.

The responsibility for enforcing H.B. 668 falls largely to the Attorney General. "[I]t is the duty of the attorney general . . . [w]hen required by the public service, to repair to any county in the state and assist the prosecuting attorney thereof in the discharge of duties." *Id.* § 67-1401(7). When engaged in this prosecutorial duty, the attorney general may "do every act that the county attorney can perform . . . ." *Newman*, 922 P.2d at 399 (quoting *State v. Taylor*, 87 P.2d 454, 457 (Idaho 1939)).

Failure of the IDOC Director to comply with H.B. 668 would require the Governor to terminate his employment. Intentional violations of H.B. 668 are punishable as "misuse of public moneys" and subject to the grading and punishment provisions in Section 18-5702. Idaho Code § 18-8901(7). The punishments are graded based on the amount in controversy and whether the public employee or officer was charged with the "receipt, safekeeping or disbursement of public

moneys." *See id.* §§ 18-5702(1)–(3). The violations range from misdemeanor charges, up to one year imprisonment, and/or a $1,000 fine all the way up to felony charges, between one and fourteen years imprisonment, and/or a $10,000 fine. *Id.* In all cases, public employees who misuse funds "shall" "[b]e terminated for cause . . . subject to any procedures applicable to such termination" and disqualified from holding public positions charged with the receipt, safekeeping, or disbursement of public moneys in the future. *Id.* § 18-5702(5).

The IDOC Director controls whether IDOC facilities comply with H.B. 668, and the Governor in turn has exclusive jurisdiction over the IDOC Director's termination. The IDOC Director is responsible for "monitor[ing] the performance of the private prison contractor" and "insur[ing] that the inmates are properly cared for." *Id.* § 20-241A(6); *see also* Idaho Department of Correction, *Policy and Standard Operating Procedure Management*, IDOC Policy No. 103.00.01.003 ("IDOC Policy No. 103") (giving IDOC Director authority to approve IDOC policy). If the IDOC Director used this authority to ensure plaintiffs' constitutional rights and continue the provision of gender-affirming care in IDOC facilities, he would be guilty of misuse of public moneys under H.B. 668 and thus subject to mandatory termination. *See* Idaho Code § 18-8901 (incorporating by reference *id.* § 18-5702). Under Idaho law, it is the Governor's responsibility to ensure that the public officers perform their duties and, when those duties are not performed, to "apply such remedy as the law allows," *see id.* § 67-802(2), including here exercising his sole authority to terminate the IDOC Director, *see id.* § 67-2404(2).

After Governor Bradley Little signed H.B. 668 into law, plaintiffs' counsel wrote to the IDOC Director and the Attorney General's office seeking a temporary nonenforcement agreement to avoid the harms to plaintiffs of losing access to their medication. *See generally* Pls.' Opp'n to Defs.' Mot. for Hr'g 1–4, ECF No. 8. Plaintiffs advised state actors of the risks of discontinuing

hormone therapy and asked that the IDOC Director continue to provide this care to the people incarcerated in Idaho. *Id.* Throughout June, the parties conferred until State Defendants advised plaintiffs' counsel that they would not agree to a nonenforcement plan and instead intended to enforce H.B. 668 to deny hormone therapy to class members. *Id.*

Plaintiffs filed this case on June 28, 2024, alleging that the law's categorical prohibition on gender-affirming medical care in public facilities subjects all incarcerated people with gender dysphoria to a "substantial risk of serious harm" in violation of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In the complaint, plaintiffs named Attorney General Raul Labrador in his official capacity as a prosecutor responsible for enforcing the law. Compl. ¶ 67, ECF No. 1. Governor Little is named in his official capacity as the supreme executive power vested in him by the state, *see id.* at ¶ 68, makes him responsible for ensuring that public officers' duties are performed through a hiring-and-firing power. He is also named based on his sole authority to enforce H.B. 668 through his power to terminate the IDOC Director. Amended Compl. ¶ 53, ECF No. 65. In conjunction with the complaint, plaintiffs filed a motion for a temporary restraining order, preliminary injunction, and class certification. Pls.' Mot. for TRO, Provisional Class Certification, and Prelim. Inj., ECF No. 2. After receiving briefing and argument from the parties, the court granted an extended temporary restraining order allowing those individuals who had been on hormone therapy prior to July 1 to resume their care. Suppl. Mem. Decision and Order on TRO, ECF No. 51. On September 3, 2024, the court granted the preliminary injunction and class certification, extending the prior relief to all those who need hormone therapy, including parties who had not yet started hormone therapy on July 1, 2024. Mem. Decision and Order, ECF No. 58.

Plaintiffs filed an amended complaint on September 30, 2024, in response to which State Defendants Governor Little and Attorney General Labrador filed a motion to dismiss on October 15, 2024. *See* Amended Compl., ECF No. 65; Gov. Little and Att'y Gen. Labrador's Br. in Support of Mot. to Dismiss Amended Compl., ECF No. 75-1.

## II. Argument

In considering a motion to dismiss, the Court looks to whether the allegations in the complaint are sufficient to set forth the party's claim for relief. Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.").

*Ex parte Young* establishes that the Eleventh Amendment does not bar suits against a state official acting in violation of federal law. *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 422 (9th Cir. 1996). Because a state cannot authorize its officers to violate federal law, state officials are stripped of their representative character and entitlement to state sovereign immunity where they act in violation of federal law. *Id.*; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Ex parte Young*, 209 U.S. at 159-60. "An allegation of an ongoing

violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997).

For a suit against a state official seeking an injunction to be proper, "such officer must have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157; *see also Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). The state official must "have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Mecinas v. Hobbs*, 30 F.4th 890, 903-04 (9th Cir. 2022) (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). "While the connection to the enforcement of the challenged act must be 'fairly direct,' the Ninth Circuit describes this as a 'modest requirement.'" *Matsumoto v. Labrador*, 701 F. Supp. 3d 1032, 1045 (D. Idaho 2023) (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 903-04 (9th Cir. 2022)); *see also Coeur d'Alene Tribe of Idaho*, 521 U.S. at 276-77 ("[W]here prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar."). The connection to enforcement of the challenged act "must be determined under state law . . . ." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).

### A. The Attorney General Is a Proper Defendant as He Is Authorized to Enforce House Bill 668 Through His Assistance Power.

Attorney General Labrador is a proper defendant under *Ex parte Young* because he has the "authority to bring legal action to enforce H.B. 668." *See* Compl. ¶ 67. The Attorney General is a proper defendant if he has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. However, "no . . . special charge need be found directly in the challenged statute to meet the requisite 'some connection' so long as there is sufficient indicia of the defendant's

7

enforcement powers found elsewhere in the laws of the state." *Okpalobi v. Foster*, 244 F.3d 405, 419 (5th Cir. 2001).

In Idaho, the Attorney General has "the duty[,]" "[w]hen required by the public service, to repair to any county in the state and assist the prosecuting attorney thereof in the discharge of duties." Idaho Code § 67-1401. "The attorney general may, in his assistance, do every act that the county attorney can perform." *Newman*, 922 P.2d at 399 (quoting *Taylor*, 87 P.2d at 457). The Ninth Circuit has found it determinative for *Ex parte Young* purposes that "the attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have." *Wasden*, 376 F.3d at 920. H.B. 668 provides criminal enforcement measures by reference to Idaho Code § 18-5702. *See* Idaho Code § 18-8901(7). Attorney General Labrador's duty to assist with such prosecutions and "do every act" that a county prosecutor would in enforcing H.B. 668 makes him a proper defendant under *Ex parte Young*. *See Wasden*, 376 F.3d at 920.

State Defendants' arguments for immunity rely entirely on *Newman* and *Wasden*, wherein the Ninth Circuit determined that the Attorney General's assistance power was sufficient to make him a proper defendant in that case. *Wasden*, 376 F.3d at 920 (finding Attorney General's prosecutorial "power demonstrates the requisite causal connection" such that he was "properly named under *Ex parte Young*"). That the Idaho Attorney General's assistance power is sufficient for *Ex parte Young* purposes has been consistently upheld. *See, e.g.*, *Pocatello Educ. Ass'n v. Heideman*, 123 F. App'x 765, 766 (9th Cir. 2005); *Poe ex rel. Poe v. Labrador*, No. 23-CV-00269, 2024 WL 170678, at *1-2 (D. Idaho Jan. 16, 2024); *Planned Parenthood Greater Nw. v. Labrador*, 684 F. Supp. 3d 1062, 1079 (D. Idaho 2023); *Matsumoto*, 701 F. Supp. 3d at 1045; *Idaho Bldg. & Constr. Trades Council, AFL-CIO v. Wasden*, 836 F. Supp. 2d 1146, 1156-58 (D. Idaho 2011),

*vacated in part sub nom. Idaho Bldg. & Constr. Trades Council, AFL-CIO v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 616 F. App'x 319 (9th Cir. 2015).

In their brief, Defendants conflate "two separate inquiries"—the *Wasden* court's standing and *Ex parte Young* analyses. *Wasden*, 376 F.3d at 919. They claim that the Attorney General cannot be a proper party because his enforcement authority would not be applied directly against the plaintiffs. *Ex parte Young* determines who is a proper *defendant* with reference to the defendant's enforcement authority. *See Ex parte Young*, 209 U.S. at 157. It has never required that plaintiffs be the subject of prosecution. In *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992), the court asked only whether the defendant's enforcement powers could be applied "against plaintiffs' *interests* . . . ." (emphasis added). Here, the Attorney General's power to prosecute medical providers or administrators who would be responsible for ensuring access to hormone therapy would operate "against plaintiffs' interests" in continuing to receive that care. Just last year this court found that the Idaho Attorney General was a proper party where medical providers, not the plaintiffs who needed treatment, were the targets of the act's enforcement. *Poe by & through Poe v. Labrador*, 709 F. Supp. 3d 1169, 1178, 1189 (D. Idaho 2023). Even if the Defendants had presented argument against plaintiffs' standing by reference to *Wasden*, in this case there exists "the requisite causal connection between [the Attorney General's] responsibilities and any injury that the plaintiffs might suffer, such that relief against the defendants would provide redress." *Wasden*, 376 F.3d at 919. The court should deny Defendants' motion to dismiss Attorney General Labrador, as he is not entitled to state sovereign immunity from this action for prospective relief to enjoin his enforcement of this unconstitutional law.

## B. The Governor Is a Proper Defendant as He Is Obligated to Enforce House Bill 668 Through His Removal Power.

Governor Little is a proper defendant under *Ex parte Young* because he is responsible for ensuring public officials, including the IDOC Director, comply with H.B. 668 and terminating them from their positions if they violate its terms. *See* Idaho Code §§ 67-802, 18-5702(5). The Governor sued in his official capacity is a proper defendant when he has "some connection with the enforcement of the act" in question that is "fairly direct" rather than "generalized . . . ." *Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (quoting *Ex parte Young*, 209 U.S. at 157, and *Eu*, 979 F.2d at 704). This connection need not be explicit in the statute itself; rather, "[t]he Governor's connection to a plaintiff's injury may be sufficiently direct based on other duties the law places on him related to the challenged statute." *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012) (citing *Eu*, 979 F.2d at 704, and *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1110-11 (E.D. Cal. 2002), *aff'd*, 353 F.3d 712 (9th Cir. 2003)). Here, Idaho law enforcing Section 5 of the Idaho Constitution imposes obligations upon Governor Little that forge a direct connection between the Governor and enforcement of H.B. 668. Specifically, he is tasked with terminating any state administrators, including the IDOC Director, who misuse public moneys by failing to comply with H.B. 668. This termination power renders Governor Little a proper defendant under *Ex parte Young*. *Cf. State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) (collecting cases establishing that every circuit to consider the issue has concluded that an action for reinstatement following an unconstitutional firing decision satisfies the *Ex parte Young* exception).

If the IDOC Director were to violate the terms of H.B. 668 by procuring gender-affirming medical care for incarcerated people with gender dysphoria, Idaho law would require his

termination. The IDOC Director has the authority to direct policies for medical care, including gender-affirming care, within IDOC facilities. *See* Compl. ¶ 69; *see also* IDOC Policy No. 103. Accordingly, he could—and, prior to the passage of H.B. 668, did—direct a policy allowing for gender-affirming care within IDOC facilities, which would now run afoul of H.B. 668. *See* Compl. ¶¶ 3, 89; *see also* State Defs.' Answer to Compl. ¶¶ 3, 89, ECF No. 62 (admissions regarding IDOC Gender Dysphoria Policy, 401.06.03.501). H.B. 668 provides that violation of its terms "by a public officer or public employee shall be considered a misuse of public moneys punishable pursuant to section 18-5702" of the Idaho Code. *See* Idaho Code § 18-8901. Section 18-5702 in turn provides for *mandatory* termination of said officer or employee "*subject to any procedures applicable to such termination.*" *See id.* § 18-5702(5) (emphasis added) (specifically providing that they "shall [b]e terminated for cause from the public office or employment subject to any procedures applicable to such termination" and "be disqualified from holding any position as a public officer or public employee if such position is charged with the receipt, safekeeping or disbursement of public moneys").

Idaho law tasks Governor Little with executing this termination. Section 67-802 requires that the Governor "see that all offices are filled, and the duties thereof performed, or, in default thereof, apply such remedy as the law allows." *Id.* § 67-802. If the IDOC Director violated the prohibitions in H.B. 668, it would be Governor Little's duty under Section 67-802 to apply the remedy specified by Section 18-5702 for misuse of public moneys: specifically, mandatory termination.

No one except Governor Little could terminate the IDOC Director in the way H.B. 668 and Section 18-5702 require in the event of noncompliance. Although the Governor-appointed Board of Correction selects the IDOC Director, *see id.* §§ 20-201A, 20-217A, the Governor himself

retains jurisdiction over the IDOC Director's termination. *See id.* § 67-2404(2) ("Unless a term of office is provided by law, each director, unless specifically provided otherwise, shall serve at the pleasure of the governor."); Richard Henry Seamon, *Idaho Administrative Law: A Primer for Students and Practitioners*, 51 IDAHO L. REV. 421, 471 nn.255-256 (2019) (since "[t]here are no statutes specifically addressing removal of . . . the director of correction," Section 67-2404 applies).

Idaho law thus ensures that it is Governor Little, and Governor Little alone, who would execute the requirements of Section 18-5702 by firing any IDOC Director not compliant with H.B. 668. In other words, Governor Little has "direct authority over" enforcement of H.B. 668 because he is required to terminate any IDOC Director who fails to comply with the law. *Mirabelli v. Olson*, No. 23-cv-00768-BEN-WVG, 2024 WL 2789460, at *4 (S.D. Cal. May 10, 2024) (indicating that the Governor would be a proper defendant if he had "direct authority over" or "principal responsibility" for enforcement of any aspect of the law). This direct authority makes him a proper defendant under *Ex parte Young*.

This conclusion follows the same logic employed by the Ninth Circuit in *Eu*, 979 F.2d 697. There, an organization sued various state officials, including the Governor, challenging a state law prescribing the number of judges on the Superior Court for Los Angeles County by arguing that the shortage of judges deprived local litigants of equal protection and due process. *Id.* at 699-700. The Governor argued that he lacked a specific connection to enforcement of the challenged statute to be held liable, but the court rejected that argument, holding that his duty to appoint judges to any newly created judicial positions was a sufficient connection to fall into the *Ex parte Young* exception. *Id.* at 704; *see also id.* (claims against Governor were "not based on any asserted general duty to enforce state law," since he had "a specific connection to the challenged statute").

Specifically, the Governor had responsibility concerning the employment of public officers that comprised a sufficiently direct connection to the law: the "duty to appoint judges to any newly-created judicial positions . . . ." *Id.* That the Governor had not yet engaged in any enforcement proceeding against the plaintiff here "d[id] not preclude this suit," since the law in question was "currently being given effect by state officials, including [the Governor.]" *Id.* The Ninth Circuit thus concluded that the Governor was a proper defendant under the *Ex parte Young* exception. *Id.*

Contrary to Defendants' assertions, the Governor's mandatory termination duty does not parallel the duty rejected for *Ex parte Young* purposes in *Animal Legal Defense Fund v. Otter*, 44 F. Supp. 3d 1009 (D. Idaho 2014). There, the question was whether the Governor had sufficiently direct enforcement authority over a new criminal statute (criminalizing "interference with agricultural production") via Section 19-4522 of the Idaho Code, which "requires the Governor to issue a warrant for" extraterritorial arrest "if he receives a rendition application" meeting certain requirements. *Id.* at 1014, 1017. However, since the "decision to prosecute and request rendition rests with the involved county's prosecuting attorney," the court held that the Governor did not have enforcement authority over the new criminal provision. *Id.* at 1017. But here, the Governor's duty to terminate the IDOC Director for failure to comply with H.B. 668 does not turn on a discretionary decision by a prosecuting attorney, such as the Attorney General, to enforce the law. Rather, the Governor's enforcement authority stands separate and apart from discretionary enforcement decisions made by other state actors,[1] making him a proper defendant under *Young*.

Defendants also mistakenly suggest that the "ministerial" nature of the Governor's termination duty renders it insufficient for *Ex parte Young* purposes, again relying on *Animal Legal*

---

[1] The decision by the IDOC Director not to comply with H.B. 668 triggering the Governor's enforcement authority would constitute the opposite of a discretionary enforcement decision—instead, it would constitute a crime.

*Defense Fund*. Yet the *Animal Legal Defense Fund* court pointed to the "*ministerial*" nature of the Governor's extradition duty to make clear that it was "wholly separate" from the prosecuting attorney's *discretionary* decision to prosecute and request rendition. *Id.* (emphasis added). Again, here, no other state actor needs to decide whether to enforce H.B. 668 for the Governor's enforcement duty to attach. Pursuant to the specific terms of H.B. 668 and the provisions of the Idaho Code it incorporates by reference, the simple fact of noncompliance by the IDOC Director would trigger the Governor's enforcement duty to terminate him. No intervening discretionary enforcement decision would be required.

In any case, enforcement powers need not be discretionary for the *Ex parte Young* exception to apply. "[E]ven 'entirely ministerial' duties can be sufficient under *Young*, because 'the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights.'" *Const. Party of Pa. v. Cortes*, 824 F.3d 386, 396 (3d Cir. 2016) (quoting *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980)); *see also Finberg*, 634 F.2d at 54 ("We note that courts often have allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws." (collecting cases)). Any rule to the contrary would grant immunity to the state actors with potentially the most direct connections to enforcement: namely, mandatory enforcement. *See, e.g.*, *Brown*, 674 F.3d at 1134 (declining to grant immunity to head of University of California who "is *duty-bound* to ensure his employees follow" law in question and with whom "the buck stops" (emphasis added)).

The court should deny Defendants' motion to dismiss the claims naming Governor Little as a defendant, as he is not entitled to Eleventh Amendment immunity from this action for prospective relief to enjoin his enforcement of H.B. 668.

## III. Conclusion

Attorney General Labrador and Governor Little each have specific roles in enforcing H.B. 668 and as such are proper defendants under *Ex parte Young*. We ask the court to deny State Defendants' motion to dismiss.

Date: November 19, 2024　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Emily Myrei Croston*

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Emily Myrei Croston