Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso*
Leslie Cooper**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org
lcooper@aclu.org

*Admitted *pro hac vice*
**Motion for pro hac vice admission pending

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **KATIE ROBINSON,** et al., | Case No. 1:24-cv-00306-DCN |
| *Plaintiffs*, | **REPLY ISO PLAINTIFFS' MOTION FOR RENEWED PRELIMINARY INJUNCTION (Dkt. 80)** |
| v. | |
| **RAÚL LABRADOR**, et al., | |
| *Defendants*. | |

This court is clearly authorized to renew its September 3, 2024 Preliminary Injunction, Dkt. 58, a fact confirmed by the Ninth Circuit's reasoning in the exact case Defendants cite, *see* Dkt. 87 at 2 (citing *Ahlman v. Barnes*, 20 F.4th 489 (9th Cir. 2021)). Further, Plaintiffs' claims rest

upon a simple set of uncontroverted facts that have remained constant since the court found them sufficient to enter a preliminary injunction on September 3: Defendants' commitment to enforcing a *blanket* policy which denies evaluation for or prescription of gender-affirming hormone therapy for any prisoner, regardless of medical necessity, raises serious questions of constitutionality.

### 1. *Ahlman v. Barnes* Reinforces the Court's Authority to Issue a Renewed Injunction.

In 2001, the Ninth Circuit held that nothing in the Prison Litigation Reform Act ("PLRA") "limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) ("If anything, the provision simply imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted."). That standard has governed the Ninth Circuit for at least 23 years, and there is no indication that the court intended to overrule that precedent *sub silentio* in *Ahlman*. *Cf. Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011) (holding that a three-judge panel cannot overrule circuit precedent unless an intervening Supreme Court decision undermines existing precedent and both cases are closely on point).

The court in *Ahlman* did not consider *subsequent* preliminary injunctions under the PLRA at all. Defendants' quotes are taken out of context from the *Ahlman* court's analysis, which focused entirely on whether a *stay* of a preliminary injunction tolled the 90-day expiration and thereby "extend[ed]" the preliminary injunction. *See* Dkt. 87 at 2.

In *Ahlman*, the court was asked to determine the effect of a Supreme Court stay on an injunction's expiration under the PLRA. Several detainees in Orange County had sued over the lack of COVID-19 protections in the jails. *Ahlman*, 20 F.4th at 491. The district court issued a preliminary injunction that required the jails to implement procedures to protect against COVID-19. *Id.* at 492. On an application for stay of the injunction, the Ninth Circuit remanded the case to determine if "changed circumstances," including increased protective measures at the jails,

"warranted modification or dissolution of the preliminary injunction." No. 20-55568, 2020 WL 3547960 (9th Cir. June 17, 2020). The district court found that dissolution was not warranted, and the defendants appealed this decision. *Ahlman*, 20 F.4th at 491. At issue in *Ahlman* was whether the appeal of the district court's dissolution decision was moot, as 90 days had elapsed since the preliminary injunction was issued, *id.*, although the Supreme Court had stayed the injunction in the meantime, *Barnes v. Ahlman*, 140 S. Ct. 2620 (2020).

Defendants' reliance on *Ahlman* to suggest that the Ninth Circuit has "clearly foreclosed" the ability of courts to issue subsequent preliminary injunctions under the PLRA is thus misplaced. Dkt. 87 at 2. The court's discussion of how the PLRA affects courts' equitable authority is limited to the tolling of preliminary injunctions and its effect on the appeal's mootness. *Id. a*t 494.

In fact, in *Ahlman* the court explicitly considered the likelihood that the district court would issue a second injunction, assuming, in line with longstanding precedent, that the court had such a power. After the quotes Defendants cite, the Ninth Circuit went on to find that, because there was "evidence that conditions at the jail ha[d] significantly improved," "the chance that Plaintiffs successfully acquire *another preliminary injunction* . . . [wa]s remote." *Id.* at 495 (emphasis added). It noted that, "[c]ertainly, any *subsequent injunction* would be based on an entirely new set of factual circumstances." *Id.* (emphasis added). The Ninth Circuit said nothing about plaintiffs' ability to seek such relief or the district court's power to issue it; instead, it seemed to take for granted that the district court could issue a second injunction. It did not, as Defendants argue, overrule *Mayweathers*, 258 F.3d 930.

Indeed, courts in the Ninth Circuit have continued to recognize the viability of subsequent preliminary injunctions under the PLRA after the decision in *Ahlman*. *See, e.g.*, *Sacramento Homeless Union v. City of Sacramento*, No. 23-16123, 2024 WL 3916113, at *1 (9th Cir. Mar. 15,

3

2024) (preserving possibility for subsequent injunction by noting that "any future injunction" may be "significantly impact[ed]" by "the changing factual circumstances") (citing *Ahlman*, 20 F.4th at 493-95); *Rutherford v. Luna*, No. CV 75-04111 DDP, 2023 WL 4241691, at *1 (C.D. Cal. June 22, 2023) (noting the court had previously twice extended the preliminary injunction); *accord Smith v. Edwards*, 88 F.4th 1119, 1124 (5th Cir. 2023).

This is in line with longstanding practice in Idaho prior to *Ahlman*. *See, e.g.*, *McGiboney v. Corizon*, No. 4:18-CV-00529-DCN, 2020 WL 1666805, at *9 (D. Idaho Apr. 3, 2020) (recognizing that plaintiffs need only prove that "preliminary relief is" still "warranted in order to obtain a second preliminary injunction"); *Edmo v. Idaho Dep't of Correction*, No. 1:17-CV-00151-BLW, 2019 WL 2319527, at *1 & n.2 (D. Idaho May 31, 2019) ("reincorporat[ing] all those findings" from initial preliminary injunction in "decision today to reissue the preliminary injunction in accordance with the Prison Litigation Reform Act"); *Gammett v. Idaho State Bd. of Corr.*, No. CV05-257-S-MHW, 2007 WL 2684750, at *4 (D. Idaho Sept. 7, 2007) (recognizing "a court may enter a renewed injunction" under PLRA and citing *Mayweathers*, 258 F.3d at 936).

Defendants further cite out-of-circuit cases, including a vacated case from the Eleventh Circuit.[1] Again, Defendants quote these cases out of context. In none of these cases did the court consider the issue and determine that successive preliminary injunctions are barred by the PLRA. The discussion in the *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1216 (11th Cir. 2021), *vacated*, 33 F.4th 1325 (11th Cir. 2022), was limited to whether a court's needs-narrowness-intrusiveness findings make the preliminary injunction "final" such that it may be extended beyond the 90-day expiration date. The court determined that those findings did not, and that making the order final in the PLRA meant issuing a permanent injunction. *Id.* The Eleventh Circuit's vacated decision

---

[1] Defendants conspicuously failed to indicate that the case they cite was vacated. *See* Dkt. 87 at 4.

did not abrogate the equitable authority of district courts to issue *subsequent* preliminary injunctions. *Cf. Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("[E]quitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command."). If anything, the *Jackson* court simply did not address the possibility of subsequent preliminary injunctions. Similarly, contrary to Defendants' characterization, the court in *Banks v. Booth*, 3 F.4th 445 (D.C. Cir. 2021), did not consider the possibility of subsequent preliminary injunctions or make any rule respecting them. It held only—as the parties here agree—that under the PLRA preliminary injunctions expire after 90 days. *Id.* at 449.

In contrast to Defendants' assertions, the courts to directly consider the issue have found a right to seek and issue successive preliminary injunctions under the PLRA, including the <u>Tenth Circuit</u>, *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003) (quoting *Mayweathers*, 258 at 936) ("'Nothing in the [PLRA] limits the number of times a court may enter preliminary relief.'"), <u>Eleventh Circuit</u>, *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *21 (11th Cir. Apr. 15, 2022) (finding that second preliminary injunction complied with PLRA), and <u>district courts beyond the Ninth Circuit</u>, *see, e.g.*, *Barrett v. Maciol*, No. 20-CV-00537, 2022 WL 130878, at *9 (N.D.N.Y. Jan. 14, 2022); *Peacher v. Conyers*, No. 20-CV-02997, 2022 WL 499893, at *3 (S.D. Ind. Feb. 17, 2022); *Martinez v. Reams*, No. 20-CV-00977, 2020 WL 8474726, at *1 (D. Colo. Dec. 4, 2020); *Jackson v. Wexford of Ind., LLC*, No. 19-CV-03141, 2019 WL 5566442, at *3 (S.D. Ind. Oct. 29, 2019); *Reaves v. Dep't of Corr.*, 195 F. Supp. 3d 383, 427 (D. Mass. 2016); *McGovern v. Ferriter*, No. CV 12-00101, 2014 WL 1932355, at *5 (D. Mont. May 14, 2014); *Farnam v. Walker*, 593 F. Supp. 2d 1000, 1004 (C.D. Ill. 2009); *Bowers v. City of Philadelphia*, No. 06-CV-3229, 2007 WL 2972556, at *2 (E.D. Pa. Oct. 10, 2007); *Riley v. Brown*, No. 06-0331, 2006 WL 1722622, at *1 n.1, *15 (D. N.J. June 21, 2006).

This rule makes sense. First, it would be nearly impossible for courts to resolve complex prison cases in only ninety days. The Supreme Court has explained that "[c]ourts should presume that Congress was sensitive to the real-world problems faced by those who would remedy constitutional violations in the prisons and that Congress did not leave prisoners without a remedy for violations of their constitutional rights." *Brown v. Plata*, 563 U.S. 493, 526 (2011). Second, the PLRA's ninety-day expiration date still furthers the statute's goals by creating a framework for periodic review of preliminary relief. *See Mayweathers*, 258 at 936 ("[T]he provision simply imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted.").

### 2. A Preliminary Injunction Remains Warranted.

Simply put, a second preliminary injunction in this case is warranted for exactly the same reasons that the September 3, 2024 preliminary injunction was warranted. First, HB 668 remains in effect as part of the Idaho Code, absent an injunction. Second, Defendants have not claimed that they would desist from enforcing HB 668 upon expiration of the September 3 order; indeed, their statements and actions thus far evince an intent to the contrary. *See, e.g.*, Dkt. 65 ¶ 87 (refusing to commit to nonenforcement); Dkt. 8 ¶ 6 (same); Dkt. 36 ¶ 7 (tapering hormone therapy of class members prior to court's August 2, order); *cf.* Dkt. 87 (containing no indication that Defendants would not enforce HB 668 if this court denies the instant motion for a subsequent preliminary injunction). Third, Plaintiffs have presented testimony that the harms they would experience if HB 668 were enforced remain severe and irreparable.[2]

---

[2] The declarations submitted by Plaintiffs in support of a subsequent preliminary injunction are not "simply recycled." Dkt. 87 at 5. They instead contain new pleadings establishing that the continued care they have received due to this court's September 3 order has been essential to their physical wellbeing and reaffirm any discontinuance of that care would jeopardize said wellbeing. *See* Dkt. 80-2 ¶¶ 6, 9-10; Dkt. 80-3 ¶¶ 6, 9-10.

While the parties dispute whether the denial of hormone therapy "creates an excessive risk to the health of" class members, Dkt. 58 at 6, the court recognized that within this dispute "Plaintiffs have raised a serious question going to the merits of this case," which "weighs in favor of enjoining enforcement of the Act" at this juncture before "more deliberative investigation" can occur. *Id.* at 9. The parties have agreed upon a litigation and discovery plan which will allow the presentation of additional evidence for the court's deliberative investigation.[3] *See* Dkt. 78 and 79. At this stage, no additional evidence has been presented by either party, and the standards in issuing a preliminary injunction remain the same. Accordingly, this court's understanding of the first prong of the preliminary injunction test should mirror its understanding as of September 3.

Similarly, "Plaintiffs' statements are" still "sufficient to show at least a likely increase in emotional stress and a likely decrease in sense of well-being if they lose access to hormone therapy," which demonstrates that the irreparable-harm and balance-of-equities prongs also "weigh[] in favor of granting a preliminary injunction." *Id.* at 10-11 (citing *Chalk v. U.S. Dist. Ct. Cent. Dist. Of Cal.*, 940 F.2d 701, 709 (9th Cir. 1988); *see also id.* at 11 (finding Defendants "silent" on public-interest prong); Dkt. 87 (making no arguments on public-interest prong in suggesting subsequent preliminary injunction is unwarranted). The analysis this court previously adopted in its September 3 order applies with equal force to the motion at issue here. This court should issue a second preliminary injunction as requested by Plaintiffs.

The consistency of the conditions in this case differentiates it from those where courts have questioned the need for continuing preliminary injunctions. For instance, in *Ahlman*, "conditions at the jail ha[d] significantly improved since the first injunction," such that "any subsequent

---

[3] Defendants' position would end the injunction's protection, deny class members access to medication, and force the parties into the same emergency posture they occupied in July of 2024. This result would short-circuit the deliberative process that the court set forth in its order.

7

injunction would" have to "be based on an entirely new factual set of circumstances." *Ahlman*, 20 F.4th at 495. There, unlike here, the factual predicates underlying the initial injunction no longer existed. *Id.*; *see also Sacramento Homeless Union*, 2024 WL 3916113, at *1 (noting that "changing factual circumstances" "may significantly impact the likelihood and scope of any future injunction"). In this case, there is no reason to believe that Defendants no longer intend to enforce HB 668. The court's preliminary injunction is the only reason for any improvement of conditions, and it remains necessary for that reason.

While the threat of enforcement of HB 668 absent an injunction remains intact—and Defendants have identified no other intervening change in the circumstances of this case—a preliminary injunction should remain in place. *See, e.g.*, *Terhune*, 136 F. Supp. 2d at 1154 (issuing subsequent preliminary injunction "because the defendants have failed to identify substantially different evidence, a change in the controlling legal authority, or any error in the court's prior decision"). Even in cases where the parties had made "progress . . . in developing plans to alleviate" the unconstitutional conditions at issue, courts within this Circuit have nonetheless found "that the injunction described in its [earlier] Order[s] should remain in place." *Rutherford*, 2007 WL 9950374, at *1; *see also id.* ("[I]f the preliminary relief is still warranted, a district court may enter a new injunction after the previous one expires.").

This court should issue a second preliminary injunction in light of the unchanged nature of the circumstances that gave rise to its September 3 order.

**3. Absent Class Members Are Not Required to Present Individualized Proof of Harm.**

Defendants' arguments regarding absent class members continue to miss the mark. This is a properly certified class action, not a collection of 70 individual plaintiffs.[4] Yet, this seems to be exactly what Defendants would ask this court to take on—70 offers[5] of individualized proof. *Cf. McPhail v. First Command Fin. Plan., Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008) (quoting *Fischer v. Wolfinbarger*, 55 F.R.D. 129, 132 (W.D. Ky.1971)) ("It is not intended that members of the class should be treated as if they were parties plaintiff, subject to the normal discovery procedures, because if that were permitted, then the reason [behind Rule 23(a)(1) of the Federal Rules of Civil Procedure] would fail."). "[A]n absent class-action plaintiff is not required to do *anything*. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) (emphasis added). *Cf.* Dkt. 25 at 9-10 (providing cases indicating that absent class members are not required to exhaust administrative remedies). The named Plaintiffs have been certified as adequate representatives of the class, Dkt. 58, and have presented representative evidence of the irreparable harm they will experience if their medication is cut off by defendants, *see* Dkt. 80-2; Dkt. 80-3.

Further, the harm that Plaintiffs set forth is not individualized. In this litigation, Plaintiffs do not claim that gender-affirming hormone therapy is medically necessary for any individual class

---

[4] Even if Plaintiffs' counsel were required to provide individualized proof of irreparable harm, they could not do so. Defendants have refused to provide Plaintiffs' counsel with the names and locations of class members despite repeated requests. Croston Decl., Ex. A *passim*; Croston Decl. ¶ 5. Defendants indicated on October 30 that they will not provide these names due to HIPAA concerns, even with the entry of a valid protective order in this case. Croston Decl. ¶ 5. *But see F.G. v. Coopersurgical, Inc.*, No. 24-CV-01261-JST, 2024 WL 2274448, at *5 (N.D. Cal. May 20, 2024) (citing 45 C.F.R. § 164.512 and collecting cases) ("A covered entity may nevertheless disclose PHI without prior notice in discovery where a qualifying protective order is in place.").

[5] May Decl. at ¶ 3, Dkt. 36 shows that they estimate 60-70 current class members. However, the class is constantly changing and includes individuals who will be incarcerated in the future, leading to further practical difficulties if individualized proof were necessary.

member. They claim only that the blanket refusal to provide any evaluation for or prescription of this medication where indicated creates a "substantial risk of serious harm" to all class members, whether or not that risk materializes. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993); *see also* Dkt. 40-2 at 8-13 (discussing common nature of Plaintiffs' claims). The risk itself is a harm against which the Eighth Amendment protects. *See Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (noting that while individual variations "affect how particular inmates experience" allegedly unconstitutional policies, "they do not defeat commonality": "[s]ome inmates may not actually be harmed, but they are all allegedly exposed to a risk of harm that is, in its own right, a constitutional injury amenable to resolution in a class action"). All class members are subject to that harm.

The parties have submitted a joint litigation and discovery plan which will allow full exploration of the medical necessity of this care. At this stage, the facts are that Defendants themselves determined that class members need this care, *see* Dkt. 40-2 at 2, medical experts have testified that this care is necessary for some individuals, *id.* at 4-5, and the named plaintiffs who represent the class have testified about the harm to themselves, *see* Dkt. 80-2; Dkt. 80-3. These facts lead to the conclusion that withdrawing 60-70 people from their physician-prescribed medication would likely cause irreparable harm.

## CONCLUSION

Plaintiffs respectfully request that the court re-issue its preliminary injunction prior to its expiration on December 2, 2024.

Dated: November 20, 2024                    Respectfully submitted,

                                            */s/ Emily Myrei Croston*

                                            Emily Myrei Croston (ISB No. 12389)