UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLE ROBINSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RAUL LABRADOR, et al., <br><br> Defendants. | Case No. 1:24-cv-00306-DCN <br><br> **AMENDED MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Preliminary Injunction (Dkt. 80), which seeks the same relief as the Court's previously-issued preliminary injunction (Dkt. 58) that is set to expire on December 2, 2024. State Defendants[1] opposed the Motion (Dkt. 87), and Plaintiffs replied (Dkt. 90). Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons set forth below, the Motion is GRANTED.

---

[1] The Court will use the term "State Defendants" to refer to defendants Raul Labrador in his official capacity as Attorney General of the State of Idaho, Josh Tewalt in his official capacity as the Director of the Idaho Department of Corrections, Brad Little in his official capacity as Governor of the State of Idaho, and Bree Derrick in her official capacity as the Deputy Director of the Idaho Department of Corrections. Defendants Centurion Health and Centurion of Idaho, LLC (together, "Centurion") are private healthcare organizations that contract with the Idaho Department of Corrections to provide medical care for prisoners in state custody. Centurion did not oppose Plaintiffs' Motion.

**AMENDED** MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

Plaintiffs Katie Heredia and Rose Mills[2] are challenging Idaho Code § 18-8901 (the "Act"), which took effect on July 1, 2024. The Act prohibits the use of public funds for medical interventions—surgical or otherwise—that "alter[] the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex[.]" *Id.* at § 18-8901(2).

Heredia and Mills are two transgender women who are currently incarcerated in facilities administered by the Idaho Department of Corrections ("IDOC"). They bring this claim as a putative class action on behalf of "all incarcerated persons in the custody of IDOC who are, or will be diagnosed with gender dysphoria, and are receiving, or would receive, hormone therapy proscribed by [the Act]." Dkt. 1, at 4. Both Heredia and Mills have been diagnosed with Gender Dysphoria and have been prescribed regular hormone-altering medications as a form of treatment. *See, e.g.*, Dkt 2-2; Dkt. 2-4. They argue the Act denies them and other similarly situated inmates necessary medical treatment in violation of the Eighth Amendment and 42 U.S.C. § 1983. Dkt. 1, at 18–20.

In a prior order, the Court certified the proposed class[3] and enjoined enforcement of the Act as it applied to the use of state funds for providing hormone therapy while the

---

[2] Katie Heredia's legal name is Cole Robinson, and Rose Mills' legal name is Brody Mills. At times, Katie Heredia has been referred to as Katie Robinson. The Court will use Heredia and Mills' preferred names throughout this Order.

[3] As Plaintiffs' point out, the Court previously granted Plaintiffs' request for class certification, but the Court was granting a Motion for Provisional Class Certification from Plaintiffs. *See* Dkt. 80-1, at 3 n.2. Because the Court is granting a new preliminary injunction, it will not address the potential expiration of a provisional certification along with a preliminary injunction under the PLRA. *See Ahlman v. Barnes*, 20 F.4th 489, 495 (9th Cir. 2021). However, it was the Court's intention that the class certification be

lawsuit was pending. Dkt. 58, at 28. During a telephonic scheduling conference with all the parties, counsel for Plaintiffs notified the Court that the original preliminary injunction would expire on December 2, 2024, in accordance with the 90-day automatic expiration set forth in 18 U.S.C. § 3626(a)(2). The Court asked for additional briefing on the issue, and Plaintiffs filed the instant Motion for Preliminary Injunction.

The Court granted Plaintiffs' Motion to Expedite (Dkt. 82), and State Defendants challenged the Motion for Preliminary Injunction (Dkt. 87). The Court must now decide whether, under 18 U.S.C. § 3626(a)(2), the preliminary injunction may continue past December 2, 2024.

### III. LEGAL STANDARDS

#### A. 18 U.S.C. § 3626(a)(2)

Under the Prison Litigation Reform Act ("PLRA"), when a court enters a preliminary injunction in a civil action with respect to prison conditions, the injunction will automatically expire 90 days after its entry unless the court enters a final injunctive order finding "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation" before the 90 days expires. 18 U.S.C. § 3626(a)(2).

The Ninth Circuit has addressed this section of the PLRA on two separate occasions which are relevant here. First, it has held that entering a second preliminary injunction after

---

permanent, and the reasons provided in its previous Order for class certification still stand. *See* Dkt. 58, at 11–26. This does not preclude Defendants from seeking decertification of the class in the future. *See* Fed. R. Civ. Pro. 23(c)(1)(C).

**AMENDED** MEMORANDUM DECISION AND ORDER - 3

the first one has expired does not violate the PLRA. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001). On the other hand, it has held that "§ 3626(a)(2) provides no way to *extend* a preliminary injunction other than making the injunctive relief final." *Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021). Reading these two cases together, the Court can enter a successive preliminary injunction, but it cannot extend its initial order without making it final after reaching the requisite findings. Plaintiffs still have the burden of proof as to whether preliminary relief is warranted. *Mayweathers*, 258 F.3d at 936.

### B. Preliminary Injunction

The standard for issuing a preliminary injunction has not changed since the Court's order three months ago. To qualify, plaintiffs must show "(1) they are likely to prevail on the merits of its substantive claims, (2) they are likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22–23 (2008).

The Ninth Circuit has further instructed district courts to evaluate these factors "on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. Of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (cleaned up).[4] This approach permits the imposition of a preliminary injunction where a plaintiff shows only "serious questions going to the

---

[4] As the Ninth Circuit has noted before, there is a growing circuit split on the question of whether the sliding-scale approach is consistent with the Supreme Court's opinion in *Winter*. *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 n.12 (9th Cir. 2024). The Court will continue to apply the sliding-scale approach because the Ninth Circuit has expressly held the approach is consistent with the Supreme Court's decision. *Id.*

**AMENDED** MEMORANDUM DECISION AND ORDER - 4

merits"—and not a likelihood of success on the merits—as long as the hardship balance "tips sharply" in the plaintiff's favor, and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 68 F.4th at 490–91. The serious-questions standard is satisfied where a plaintiff raises questions "that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Id.* at 497 (cleaned up); *see also Fellowship of Christian Athletes*, 82 F.4th at 684 (explaining a showing of "serious questions" is "a lesser showing than likelihood of success"). Additionally, when "the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Poretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

Finally, under the PLRA, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). This is referred to as the needs-narrowness-intrusiveness requirement.

## IV. DISCUSSION

### A. The Court's Authority to Issue a Successive Preliminary Injunction

State Defendants contend the Court "lacks the authority to renew its preliminary injunction under the PLRA." Dkt. 87, at 4. This statement is correct in the sense that the Court cannot *renew* the already existing preliminary injunction without making a final order that includes the requisite findings set forth by the PLRA. However, State Defendants also assert that "Plaintiffs have simply cited outdated and poorly reasoned case law on this

issue,"[5] (*Id.*) and the Court has no authority to issue a new preliminary injunction in this case. State Defendants are not correct in this argument.

In *Mayweathers*, a district court entered a preliminary injunction allowing Muslim inmates to attend religious services without disciplinary action. 258 F.3d at 933–34. Defendants appealed the first injunction, and the district court entered an identical preliminary injunction two months after the expiration of the first injunction under the PLRA. *Id.* at 934. The defendants appealed the district court's entry of the second preliminary injunction as well, and the two appeals were consolidated. *Id.* The Ninth Circuit explicitly held that a district court may enter a new injunction after the expiration of an initial injunction and not violate the PLRA. *Id.* at 936 ("Nothing in the statute limits the number of times a court may enter preliminary relief.")

In *Ahlman v. Barnes*, a district court entered a preliminary injunction requiring the implementation of COVID-19 protective measures within jails. 20 F.4th at 492. While several appeals were pending in the case, including an emergency appeal to the United States Supreme Court, the preliminary injunction was stayed until the appeals could be resolved. *Id.* at 492–93. During the stay, the preliminary injunction 90-day expiration date passed, and when the district court did not enter a second injunction, plaintiffs moved to dismiss the appeal of the preliminary injunction as moot. *Id.* at 493. Defendants argued the stay

---

[5] The case law to which the State Defendants are referring is *Mayweathers v. Newland*. While issued in 2001, no subsequent decision has overruled *Mayweathers*. In fact, it has been cited in less "outdated" cases as the standard in issuing more than one preliminary injunction under the PLRA. *See Hedrick v. Grant*, 648 Fed. Appx. 715, note 1 (9th Cir. 2016) ("*Mayweathers* … may be properly read simply as stating that the PLRA forces courts to frequently revisit prospective relief to ensure that it is no broader than necessary.") State Defendants' do not elaborate as to why *Mayweathers* is "poorly reasoned," but it seems the Ninth Circuit tends to disagree.

**AMENDED** MEMORANDUM DECISION AND ORDER - 6

suspended the injunction, preventing it from expiring, so the appeal was not moot. *Id.* The Ninth Circuit held the PLRA does limit a court's traditional equitable power by not allowing any *extension* of a preliminary injunction past 90 days (without a final order and specific additional findings), where normally a preliminary injunction would last until the resolution of the case on the merits. *Id.* at 494.

However, and as Plaintiffs have pointed out, *Ahlman* goes on to discuss at length the argument that the plaintiffs were likely to seek another preliminary injunction if the appeal of the first injunction was dismissed. *Id.* at 495. And rather than stating the plaintiffs would be unable to obtain a second preliminary injunction, the court discussed the changed circumstances within the jails that would make the chance of the plaintiffs successfully acquiring another preliminary injunction remote. *Id.* The court even said, "[A]ny subsequent injunction would be based on an entirely new set of factual circumstances." *Id.* The Court agrees with Plaintiffs' argument that this later discussion indicates that the power of the district court to enter a second preliminary injunction under the PLRA is assumed, and even if it isn't, *Ahlman* certainly wasn't overturning the holding in *Mayweathers* which is directly on point in this case.

The Court agrees with the holding in *Ahlman* to the extent that the PLRA does limit a court's traditional authority to issue preliminary equitable relief until the resolution of a case on the merits. However, the Court finds that the PLRA does not preclude the issuance of multiple subsequent injunctions, each to last 90 days, if Plaintiffs can continue to prove that preliminary relief is warranted. "The imposition of this burden conforms with how the PLRA governs the termination of final prospective relief." *Mayweathers*, 258 F.3d at 936.

**AMENDED** MEMORANDUM DECISION AND ORDER - 7

Thus, the Court will issue another preliminary order here if Plaintiffs have met that burden.

### B. Preliminary Injunction

The Court will again briefly take up each factor of the preliminary injunction test in turn, followed by the needs-narrowness-intrusiveness requirement under the PLRA.

*1. Serious Question Going to the Merits*

The Court's analysis under this factor is becoming increasingly tied with State Defendants' concerns raised under the irreparable harm factor. The Court reemphasizes that the question as to the medical necessity of gender-affirming care does not come with a simple answer. And as State Defendants rightly point out, Plaintiffs are not medical professionals (nor are the Court or State Defendants). Understanding the implications of tapering incarcerated individuals off hormone-therapy will require "deliberative investigation" and presentation of (likely extensive) evidence on both sides of the issue.

The government still has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Where the Government shows "deliberate indifference" to the serious medical needs of a prisoner by choosing a course of treatment that is medically unacceptable in conscious disregard of an excessive risk to the plaintiff's health, the Government violates the Eight Amendment rights of those prisoners. *Id.* at 104; *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). As stated in the Court's prior order, the Court does not, and indeed cannot, have an answer as to whether the denial of hormone therapy for inmates diagnosed with gender dysphoria is medically unacceptable and creates an excessive risk to their health without further investigation and evidence. Dkt. 58, at 9.

**AMENDED** MEMORANDUM DECISION AND ORDER - 8

State Defendants balk at Plaintiffs' contention that "nothing has changed" since the Court issued its prior preliminary injunction; but in this particular context, the contention is correct. The parties are just beginning discovery, and neither party has had an opportunity to formally gather and present evidence to the Court touching on the medical necessity of hormone therapy. Plaintiffs' original evidence from the World Professional Association for Transgender Health and the declaration of Randi C. Ettner on standards of care for transgender individuals remain applicable here. The Court remains convinced that the Idaho Legislature has not, in the past 90 days, conclusively answered whether hormone therapy is medically necessary.

Until the parties present the Court with more definitive evidence one way or another as to the medical necessity of hormone therapy to individuals with gender dysphoria, there continues to be a serious question as to the merits of this case, and this factor weighs in favor of granting another preliminary injunction.

   2. *Irreparable Harm*

State Defendants renew their objection to Plaintiffs' affidavits as evidence of irreparable harm to the named Plaintiffs and additionally argue the Plaintiffs "have failed to show any evidence of irreparable harm with respect to absent class members." Dkt. 87, at 6–7. Irreparable harm can result where a plaintiff is likely to experience "emotional stress, depression, and a reduced sense of well-being." *Chalk v. U.S. Dist. Court Cent. Dist. Of Cal.*, 840 F.2d 701, 709 (9th Cir. 1988).

Mills and Heredia have submitted new declarations emphasizing hormone therapy has helped with their depression, mental stability, and a reduction in suicidality. Dkt. 80-2,

**AMENDED** MEMORANDUM DECISION AND ORDER - 9

at 2; Dkt. 80-3, at 2. Heredia in particular has been receiving hormone therapy for 10 years. Dkt. 80-3, at 2. The Court will once again emphasize what it did in its last order, that the "Plaintiffs' assertion of likely irreparable harm would be on much firmer ground had they introduced testimony from a medical expert who had evaluated them individually." Dkt. 58, at 10. If another preliminary injunction is necessary in this case in the future, the Court asks that such an evaluation is provided to the Court.

However, it remains true that Plaintiffs' statements "are sufficient to show at least a likely increase in emotional stress and a likely decrease in sense of well-being if they lose access to hormone therapy." *Id.* (*citing Chalk*, 840 F.2d at 709). Even though the Plaintiffs' declarations are not necessarily the strongest possible evidence of irreparable harm, the Court will not require proof of irreparable harm through tapering Mills and Heredia off their hormone therapy to see if their anxiety, depression, and suicidality returns.

As to State Defendants' contention that there is no evidence of irreparable harm to class members, the Court finds that an individualized showing of irreparable harm to each class member is not necessary here because the blanket prohibition on hormone therapy for any incarcerated individual diagnosed with gender dysphoria presents primarily the same Eighth Amendment concerns for each class member. That is, even if, upon individual evaluation by a medical professional, hormone therapy is determined to be medically necessary for the treatment of that individual's gender dysphoria, the Government would be denying that treatment under the Act.[6] This puts each inmate with gender dysphoria at

---

[6] *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) is helpful here. Thirteen inmates in the custody of the Arizona Department of Corrections (the "ADC") challenged the ADC's policies and practices relating to

**AMENDED** MEMORANDUM DECISION AND ORDER - 10

substantial risk of irreparable harm because they are automatically precluded from seeking a recognized gender dysphoria treatment, even if it is determined to be medically necessary. As such, this factor weighs in favor of granting a preliminary injunction.

### 3. Balance of Equities/Public Interest

"The 'balance of equities' concerns the burdens or hardships to [a plaintiff] compared with the burden on [the defendant] if an injunction is ordered. The 'public interest' mostly concerns the injunction's impact on nonparties rather than parties." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (cleaned up).

The Court continues to recognize that Mills and Heredia have shown they are likely to experience legitimate mental health and well-being issues if they lose access to hormone therapy. And that is true even considering the Court does not yet have evidence as to the *extent* of the potential harm to Mills, Heredia, or other class members. On the other side of the scale, IDOC has continued to administer hormone therapy in accordance with its own medical care policy that was in place prior to enactment of the Act. There has still been no argument from State Defendants regarding the potential burden of continuing to provide hormone therapy to the named plaintiffs and the class members. Therefore, the Court still

---

medical care, dental care, and mental health on behalf of all inmates in ADC custody. *Id.* at 662–63. While addressing the question of commonality in certifying a class action, the court discussed the defendants' argument that the district court abused its discretion in concluding the class members shared a common question of law or fact. *Id.* at 675. In particular, the defendants contended "Eight Amendment healthcare and conditions-of-confinement claims are inherently case specific and turn on many individual inquiries." *Id.* (cleaned up). The Ninth Circuit ultimately held the plaintiffs' allegations were not an aggregation of many claims of individual mistreatment; rather, the claim was that ADC's "policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm," which was sufficient to show commonality. *Id.* at 675–76. Mills and Heredia's allegations here function the same way.

**AMENDED** MEMORANDUM DECISION AND ORDER - 11

finds continued compliance with that prior policy pending the outcome of this litigation will not impose any major burden on State Defendants. Thus, the balance of hardships continues to "tip sharply" in favor of plaintiffs. *Alliance for the Wild Rockies*, 68 F.4th at 490–91.

As for the public interest, State Defendants continue in silence. The public certainly has an interest in the enforcement of duly enacted laws, and the Court does recognize that taxpayer dollars fund the medical treatments of incarcerated inmates. But the Court remains obligated to protect the public's interest in preventing constitutional violations. *Porretti*, 11 F.4th at 1050–51. While it remains to be determined whether such a violation is present here, the public is best served if the Court continues to steer clear of potential constitutional impingement. Thus, this final factor also weighs in favor of granting another preliminary injunction.

4. *Needs-Narrowness-Intrusiveness Requirement*

As discussed above, the PLRA imposes additional requirements before a preliminary injunction may be issued. 18 U.S.C. § 3626(a)(2). The scope of the preliminary injunction Plaintiffs requested only enjoins the enforcement of the Act as it applies to class members receiving hormone therapy. *See* Dkt. 2, at 2. And that is the scope of the Court's prior order. As the Court's specifically noted, "The class will remain subject to the rest of the Act, and the rest of Idaho will remain subject to the entirety of the Act." Dkt. 58, at 4.

The injunction is, therefore, narrowly drawn to only a small group of affected individuals receiving one type of gender-affirming treatment. It extends no further than necessary because it protects only those individuals who would have otherwise been eligible for hormone therapy under IDOC's previous policies, which, in turn, maintains the

status quo and ensures no violation of class members' Eight Amendment rights pending a final decision on the merits.[7]

Finally, the injunction is the least intrusive means necessary to protect the class members' rights because it does not impose any burdens on prison operations beyond what IDOC had already self-imposed prior to the Act. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("What is important, and what the PLRA requires, is a finding that . . . the 'relief' . . . corrects the violations of the prisoners' rights with [as minimal of an impact as] possible on [a prison's] discretion over their policies and procedures.") Therefore, this preliminary injunction satisfies the needs-narrowness-intrusiveness requirement of the PLRA and can properly be issued.

   5. *Conclusion*

A preliminary injunction enjoining enforcement of the Act as it pertains to hormone therapy being provided to members of the class comports with PLRA requirements. All four factors that must be weighed in granting a preliminary injunction—a serious question going to the merits, a likelihood of irreparable harm, the balance of equities, and the public interest—all weigh in favor of granting a preliminary injunction. Therefore, the Court will grant a second preliminary injunction in this case.

### V. CONCLUSION

Under Ninth Circuit case law, the Court has the authority to issue a second

---

[7] The Court emphasizes this Order *is not* a final decision. It remains to be seen whether the disputed sections of Idaho Code § 18-8901 are constitutional. This Order simply allows the class members to continue to receive medication until the Court can make a final, informed decision in this case.

**AMENDED** MEMORANDUM DECISION AND ORDER - 13

preliminary injunction under the PLRA if Plaintiffs show that such relief is still warranted. Plaintiffs have made the requisite showing that a preliminary injunction is appropriate in this case. This injunction also complies with the needs-narrowness-intrusiveness requirement of the PLRA. Accordingly, the Court orders a second preliminary injunction against enforcement of the Act as described herein.

## VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Motion for Preliminary Injunction (Dkt. 80) is GRANTED.

2. The Court enjoins enforcement of Idaho Code § 18-8901's prohibition on the use of state funds for purposes of providing hormone therapy as against the class for the next 90 days.[8]

DATED: December 3, 2024

David C. Nye
Chief U.S. District Court Judge

---

[8] This injunction takes effect on December 3, 2024, after the expiration of the first injunction on December 2, 2024.

**AMENDED** MEMORANDUM DECISION AND ORDER - 14