Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso*
Leslie Cooper*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org
lcooper@aclu.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **KATIE ROBINSON,** et al., <br> *Plaintiffs*, <br><br> v. <br><br> **RAÚL LABRADOR**, et al., <br> *Defendants*. | Case No. 1:24-cv-00306-DCN <br> **SURREPLY IN OPPOSITION TO GOVERNOR LITTLE AND ATTORNEY GENERAL LABRADOR'S MOTION TO DISMISS AMENDED COMPLAINT [Dkt. 75]** |

Plaintiffs' injuries are fairly traceable to the Attorney General and likely to be redressed by an order of this court, even if I.C. § 18-8901 does not contemplate enforcement against plaintiffs themselves. *See Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*, 32 F. Supp. 3d 1143, 1151 (D. Idaho 2014) ("[E]ven when a regulation is not directed at a party, it can be 'an object' of government regulation so long as the 'injury alleged, . . . ' is caused by the challenged action and is 'likely to be redressed by a favorable decision.'") (quoting *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992)).

*Ex parte Young* imposes only the "modest requirement" that an official have "some connection" to the enforcement of the law. *Matsumoto v. Labrador*, 701 F. Supp. 3d 1032, 1045 (D. Idaho 2023) (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 903-04 (9th Cir. 2022)). In the cases applying the *Ex parte Young* exception, courts have not required that a plaintiff be the subject of such enforcement—only that such enforcement be against Plaintiffs' interests. *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992); *see also Poe v. Labrador*, 709 F. Supp. 3d 1169, 1187 (D. Idaho 2023) (holding the Attorney General was a proper defendant under *Young* in case where criminal penalties applied to medical providers and not plaintiffs, but plaintiffs suffered because they were accordingly denied medical care).

I.    **Plaintiffs' Injuries are Fairly Traceable to the Attorney General**

In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court confirmed that plaintiffs have standing to challenge government action that affects their interests even when they are not the direct object of that action. *See also San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163 (9th Cir. 2011); *Idaho Bldg. & Const. Trades Council, AFL-CIO*, 32 F. Supp. 3d at 1151. Because the injury here—denial of medications—was produced by the determinative and coercive effect of the Attorney General's enforcement authority upon IDOC officials, the injury is fairly traceable to the Attorney General.

Traceability requires that "there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the

result of the independent action of some third party not before the court."[1] *Bennett*, 520 U.S. at 167. However, the fact that independent third-party actions may defeat traceability "does not exclude injury produced by *determinative or coercive effect* upon the action of someone else." *Salazar*, 638 F.3d at 1170 (quoting *Bennett*, 520 U.S. at 169) (emphasis added).

In *Bennett*, the petitioners were injured by the Bureau of Reclamation's decision to reduce water flows due to Biological Opinions issued by the Fish and Wildlife Service. Petitioners brought A.P.A. claims against the Service regarding the Opinions. The Court upheld the traceability and redressability of the petitioners' claims against the Service, because the Service had the ability to bring enforcement action against the Bureau if it did not reduce water flows based on the Opinion. Such enforcement authority was determinative and coercive upon the Bureau, *Bennett*, 520 U.S. at 169-70, meeting petitioners' "modest" burden of demonstrating their injuries were traceable to the Service. *Id.* at 171.

The specter of the Attorney General's ability to enforce § 18-8901 against IDOC officials has a determinative, coercive effect on whether those IDOC officials continue providing plaintiffs' medications. This is so regardless of whether the Attorney General ever actually exercises his enforcement authority. *See Salazar*, 638 F.3d at 1170–71 (holding that the coercive effect of "the *ability* to enforce" penalties, not whether enforcement ever actually occurs, is relevant to traceability because "[t]he Service might never enforce . . . precisely because the Bureau is keenly aware of the consequences of [violations]").

Defendants set forth a chain of causation by which the Attorney General may exercise his enforcement authority—actually evincing the Attorney General's connection with the law's enforcement under *Ex parte Young*. *See* Dkt. 100 at 6. It is not clear that a 'chain of causation' analysis is required here. *See Matsumoto v. Labrador*, 122 F.4th 787, 799–800 (9th Cir. 2024). "Typically, when a court undertakes a 'chain of causation' traceability analysis, it does so because the case involves unregulated plaintiffs and the actions of private third parties." *Id.* This case, involving the actions of named state officials—IDOC

---

[1] Defendants improperly rely on the actions of IDOC administrators, who are parties actually "before the court"— not third parties—to exempt the Attorney General from these proceedings. *See* Dkt. 100 at 6.

administrators and the Attorney General—"is distinct from that class of cases." *Id.*

Even assuming that a 'chain of causation' analysis applies here, it is much simpler than Defendants assert: The threat of the Attorney General's ability to enforce § 18-8901 by "deputiz[ing] himself," being "deputized by the governor," or request by a county prosecutor caused IDOC officials to cease providing plaintiffs' medications. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004); *see also Planned Parenthood Great Nw., Haw., Ala., Ind., Ky. v. Labrador*, 122 F.4th 825, 838–39 (9th Cir. 2024) ("[O]ur precedent makes clear that the Attorney General's authority to assist county prosecutors . . . 'demonstrates the requisite causal connection for standing purposes.'") (quoting *Wasden*, 376 F.3d at 920). Plaintiffs need not establish that the enforcement action by the Attorney General is the "very last step in the chain of causation." *Bennett*, 520 U.S. at 168–69. So long as Plaintiffs can establish a chain of causation, it "does not fail solely because there are several links or because a single third party's actions intervened." *Matsumoto v. Labrador*, 122 F.4th 787, 800 (9th Cir. 2024).

## II.      An Injunction Against the Attorney General Would Redress Plaintiffs' Injury

Redressability is satisfied so long as the requested remedy "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Mecinas*, 30 F.4th at 900. "Plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012).

Because an injunction against the Attorney General would remove the determinative and coercive effect of his enforcement authority on IDOC officials, it significantly increases the likelihood that IDOC will revert to its prior policy and allow plaintiffs to access their prescribed medications. *See Salazar*, 638 F.3d at 1172; *see also Bennett*, 520 U.S. at 171. Plaintiffs have thus met their burden as to redressability.

Dated: January 28, 2025                                          Respectfully submitted,

                                                                        */s/ Emily Myrei Croston*
                                                                        Emily Myrei Croston (ISB 12389)