UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

COLE ROBINSON, et al.,

      Plaintiffs,

v.

RAUL LABRADOR, et al.,

      Defendants.

Case No. 1:24-cv-00306-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Plaintiffs' third Motion for Preliminary Injunction (Dkt. 113) and Motion to Seal (Dkt. 114). The Motion for Preliminary Injunction seeks the same relief as the Court's previously-issued preliminary injunctions (Dkts. 58; 95), the latter of which is set to expire on March 3, 2025. State Defendants[1] opposed the Motion (Dkt. 116), and Plaintiffs replied (Dkt. 118). Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons set forth below, the Motion for Preliminary Injunction and Motion to Seal are GRANTED.

---

[1] The Court will use the term "State Defendants" to refer to defendants Raul Labrador in his official capacity as Attorney General of the State of Idaho, Josh Tewalt in his official capacity as the Director of the Idaho Department of Corrections, Brad Little in his official capacity as Governor of the State of Idaho, and Bree Derrick in her official capacity as the Deputy Director of the Idaho Department of Corrections. Defendants Centurion Health and Centurion of Idaho, LLC (together, "Centurion") are private healthcare organizations that contract with the Idaho Department of Corrections to provide medical care for prisoners in state custody. Centurion did not oppose Plaintiffs' Motion.

## II. BACKGROUND

Plaintiffs Katie Heredia and Rose Mills[2] are challenging Idaho Code § 18-8901 (the "Act"), which took effect on July 1, 2024. The Act prohibits the use of public funds for medical interventions—surgical or otherwise—that "alter[] the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex[.]" *Id.* at § 18-8901(2).

Heredia and Mills are two transgender women who are currently incarcerated in facilities administered by the Idaho Department of Corrections ("IDOC"). They bring this claim as a putative class action on behalf of "all incarcerated persons in the custody of IDOC who are, or will be diagnosed with gender dysphoria, and are receiving, or would receive, hormone therapy proscribed by [the Act]." Dkt. 1, at 4. Both Heredia and Mills have been diagnosed with Gender Dysphoria and have been prescribed regular hormone-altering medications as a form of treatment. *See, e.g.*, Dkt 2-2; Dkt. 2-4. They argue the Act denies them and other similarly situated inmates necessary medical treatment in violation of the Eighth Amendment and 42 U.S.C. § 1983. Dkt. 1, at 18–20.

In a prior order, the Court certified the proposed class and enjoined enforcement of the Act as it applied to the use of state funds for providing hormone therapy to class members while the lawsuit was pending. Dkt. 58, at 28. During a telephonic scheduling conference with all the parties, counsel for Plaintiffs notified the Court that the original

---

[2] Katie Heredia's legal name is Cole Robinson, and Rose Mills' legal name is Brody Mills. At times, Katie Heredia has been referred to as Katie Robinson. The Court will use Heredia and Mills' preferred names throughout this Order.

preliminary injunction would expire on December 2, 2024, in accordance with the 90-day automatic expiration set forth in 18 U.S.C. § 3626(a)(2). The Court asked for additional briefing on the issue, and Plaintiffs filed a second Motion for Preliminary Injunction. Dkt 80.

After careful consideration of the second Motion, the Court issued a second preliminary injunction. Dkt. 96. It found it had the authority to issue new preliminary injunctions under 18 U.S.C. § 3626(a)(2) every 90 days if "Plaintiffs can continue to prove that preliminary relief is warranted." Dkt. 96, at 7. The second preliminary injunction is now set to expire on March 3, 2025. Accordingly, the Court must once again analyze whether Plaintiffs have met their burden of showing continuing preliminary relief is warranted. Plaintiffs provided individualized medical evaluations of the named Plaintiffs, and the Motion to Seal filed together with the Motion for Preliminary Injunction relates to those evaluations.

State Defendants once again opposed Plaintiffs' Motion for Preliminary Injunction (Dkt. 116), but their opposition was only one page which incorporated their previous arguments and reinforced their assertion that the state suffers irreparable harm when enjoined from effectuating a legislatively-enacted statute. State Defendants do not oppose Plaintiffs' Motion to Seal.

### III. LEGAL STANDARDS

#### A. 18 U.S.C. § 3626(a)(2)

Under the Prison Litigation Reform Act ("PLRA"), when a court enters a preliminary injunction in a civil action with respect to prison conditions, the injunction will

automatically expire 90 days after its entry unless the court enters a final injunctive order finding "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation" before the 90 days expires. 18 U.S.C. § 3626(a)(2).

The Ninth Circuit has held that entering a second preliminary injunction after the first one has expired does not violate the PLRA. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001). It has also held that "§ 3626(a)(2) provides no way to *extend* a preliminary injunction other than making the injunctive relief final." *Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021). Reading these two cases together, the Court can enter a successive preliminary injunction, but it cannot extend its initial order without making it final after reaching the requisite findings. Plaintiffs still have the burden of proof as to whether preliminary relief is warranted. *Mayweathers*, 258 F.3d at 936.

### B.  Preliminary Injunction

The standard for issuing a preliminary injunction remains the same as it was for the Court's two previously-issued orders. To qualify, plaintiffs must show "(1) they are likely to prevail on the merits of their substantive claims, (2) they are likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22–23 (2008).

The Ninth Circuit has further instructed district courts to evaluate these factors "on a sliding scale, such that a stronger showing of one element may offset a weaker showing

of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. Of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (cleaned up). This approach permits the imposition of a preliminary injunction where a plaintiff shows only "serious questions going to the merits"—and not a likelihood of success on the merits—as long as the hardship balance "tips sharply" in the plaintiff's favor, and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 68 F.4th at 490–91. The serious-questions standard is satisfied where a plaintiff raises questions "that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Id.* at 497 (cleaned up); *see also Fellowship of Christian Athletes*, 82 F.4th at 684 (explaining a showing of "serious questions" is "a lesser showing than likelihood of success"). Additionally, when "the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Poretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

Finally, under the PLRA, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). This is referred to as the needs-narrowness-intrusiveness requirement.

### C. Motion to Seal

Court proceedings and records are generally open to the public. *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Assoc. Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("We thus find that the public and press have a first amendment right of access to pretrial documents in general."). This right of access is "grounded in the First Amendment and in common law." *CBS, Inc.*

*v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823, 825 (9th Cir. 1985) (citing *Assoc. Press*, 705 F.2d at 1145). Such a general rule for access applies in civil cases. *See, e.g., Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979).

Two standards govern motions to seal documents: a "compelling reasons" standard, which applies to documents attached to dispositive motions, and a "good cause" standard, which applies to documents attached to non-dispositive motions. *Simmons v. Battelle Energy All., LLC*, 2016 WL 3552182, at *3 (D. Idaho June 23, 2016) (citing *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006)); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2016). *But see Ctr. for Auto Safety v. Chrysler Group, LLC.*, 809 F.3d 1092, 1101 (9th Cir. 2016) (holding that motions that are technically non-dispositive may still require the party to meet the "compelling reasons" standard when the motion is more than tangentially related to the merits of the case).

## IV. DISCUSSION

### A. Preliminary Injunction

The Court will once again briefly take up each factor of the preliminary injunction test in turn, followed by the needs-narrowness-intrusiveness requirement under the PLRA.

### 1. Serious Question Going to the Merits

At the outset, it is important to note that State Defendants have provided no new evidence since the Court issued the last preliminary injunction regarding the question of the medical necessity of gender-affirming care. While Plaintiffs provided the requested medical reports of the effect of such care on Mills and Heredia, those reports do not ultimately answer that question either. The Court would not expect such evidence from

either party at this juncture. However, that means the Court's analysis under this factor remains largely the same as when it issued the second preliminary injunction.

Ultimately, this case remains in a period of "deliberative investigation" that will precede the presentation of evidence from both parties that will, ideally, help the factfinder answer the ultimate questions in this case. The Court has no new evidence that circumstances have changed since its prior order, and the Court's previous reasons for concluding Plaintiffs have demonstrated a serious question as to the merits still stands. Thus, the Court incorporates its reasoning in its previously-issued decisions regarding this matter (Dkts. 58, at 5–9; 95, at 8–9) and finds this factor weighs in favor of another preliminary injunction.

### 2. Irreparable Harm

Plaintiffs have provided new evidence that strengthens their position under this factor. In particular, Mills and Heredia underwent evaluations by Dr. Misty Wall, a clinical social worker who has extensive experience in evaluating and treating individuals with gender dysphoria. Dr. Wall's evaluation of both Mills and Heredia confirmed what Plaintiffs have been alleging—discontinuation of hormone therapy will lead to severe psychological distress for both individuals, up to and including possible suicidal attempts.[3]

Perhaps most compelling, Dr. Wall concluded that previous attempts at social transitioning were unsuccessful at relieving symptoms in both Mills and Heredia and

---

[3] Dr. Wall's findings were much more detailed than what is listed here. The Court has limited its discussion of those reports to maintain the privacy of Mills and Heredia. However, the findings do support Plaintiffs contention of impending harm should either individual stop receiving hormone therapy.

gradually lowering hormone levels until withdrawal was not anticipated to change outcomes in ultimate psychological decline. Dkt. 114-3, at 6–7. As discussed in previous orders, emotional stress, depression, and a reduced sense of well-being can all be categorized as irreparable harm. *Chalk v. U.S. Dist. Court Cent. Dist. Of Cal.*, 840 F.2d 701, 709 (9th Cir. 1988). And based on these new reports, such effects seem inevitable if the class members' hormone therapy is discontinued.

State Defendants argue the state will suffer irreparable harm because they have been enjoined from effectuating a statute that has been enacted by representatives of the people. Dkt. 116, at 2. The Court does not disagree with such an assertion. As it has noted before, the public does have an interest in having duly enacted laws enforced. *See* Dkt. 58, at 11. While the Court acknowledges such a harm, it must balance that harm against the harms the class members will face and what implications those harms could have on the public's interest in preventing constitutional violations. While perhaps this consideration is more properly weighed under the public interest section, this factor tips in favor of Plaintiffs because they have provided evidence that they will face drastic repercussions should their medicine be discontinued. When considering the competition between protecting the public from a constitutional violation and the public's right to have laws enforced, the two considerations weigh against one another, but as the Court has noted previously, it will err on the side of avoiding constitutional impingement. As such, the Plaintiffs more individual susceptibility to irreparable harm tips the scales in their favor.

### 3. Balance of Equities/Public Interest

Much as before, both these factors weigh in favor of Plaintiffs. State Defendants

have not raised any new arguments to counter the Court's reasoning in prior orders, and Plaintiffs effectively argue the same reasoning is still pertinent. Mills and Heredia have provided even more evidence of the hardships they would face if their therapy is discontinued, and State Defendants remain silent on the potential burden of continuing to provide hormone therapy to the named Plaintiffs and the class members during the pendency of this case. The balance of hardships weighs in favor of Plaintiffs. And as already addressed, the Court will continue to steer clear of potential constitutional impingement and the public interest weighs in favor of Plaintiffs.

### 4. *Needs-Narrowness-Intrusiveness Requirement*

Because the Court will not be altering the terms of the prior preliminary injunction, it finds the additional requirements imposed by 18 U.S.C. § 3626(a)(2) continue to be met. The scope of the preliminary injunction continues to only enjoin the enforcement of the Act as it applies to class members receiving hormone therapy. *See* Dkt. 2, at 2. The injunction remains narrowly drawn to only a small group of affected individuals receiving one type of gender-affirming treatment. It extends no further than necessary because it protects only those individuals who would have otherwise been eligible for hormone therapy under IDOC's previous policies, which, in turn, maintains the status quo and ensures no violation of class members' Eight Amendment rights pending a final decision on the merits.[4]

Finally, the injunction continues to be the least intrusive means necessary to protect

---

[4] The Court once again emphasizes this Order *is not* a final decision. It remains to be seen whether the disputed sections of Idaho Code § 18-8901 are constitutional. This Order simply allows the class members to continue to receive medication until the Court can make a final, informed decision in this case.

the class members' rights because it does not impose any burdens on prison operations beyond what IDOC had already self-imposed prior to the Act. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("What is important, and what the PLRA requires, is a finding that . . . the 'relief' . . . corrects the violations of the prisoners' rights with [as minimal of an impact as] possible on [a prison's] discretion over their policies and procedures.") Therefore, this preliminary injunction satisfies the needs-narrowness-intrusiveness requirement of the PLRA and can properly be issued.

## B.  Motion to Seal

The Motion for Preliminary Injunction is dispositive even though it does not dispose of the case or any claim within because the Court's holding relates directly to the merits of the case.[5] Therefore, the accompanying Motion to Seal (Dkt. 24) must meet the compelling reasons standard, and it does. Defendants are requesting to seal portions of the reports created by Dr. Misty Wall during the examinations Mills and Heredia that took place on February 3, 2025, along with references to the redacted details of those reports in the Memorandum in Support of Motion for Third Preliminary Injunction. State Defendants do not oppose the Motion.

The report contains extremely sensitive details about Mills and Heredia's medical

---

[5] The Ninth Circuit has held that public access to documents does not only turn on whether a motion is technically dispositive, but whether the motion to which a motion to seal attaches is more than tangentially related to the merits of the case. *Chrysler Group,* 809 F.3d at 1101. It is difficult for the Court to imagine a situation in which a motion for preliminary injunction would only be tangentially related to the merits of the case under this standard, as part of the Court's analysis of a preliminary injunction requires it to determine whether, at the very least, there is a serious question raised as to the merits of the case. Thus, the Court will err on the side of caution in this instance and apply a compelling reasons standard, but its conclusion is ultimately the same: there are compelling reasons to seal the documents at issue here.

history. Plaintiffs argue that information is already protected due to the Court's protective order (Dkt. 85-1), as it is confidential information. They also argue any public interest in the documents is served by access to the redacted versions. The Court agrees. An individual's right to privacy can be a compelling interest that justified sealing a particular medical or health record, and such a finding is even more appropriate where only certain portions of records are under seal such that the court employs the least restrictive means necessary of protecting privacy rights. *See Civ. Bear L. Ctr. for Pub. Interest, Inc. v. Maile*, 117 F.4th 1200, 1210–1212 (9th Cir. 2024).

Such is the case here. Plaintiffs are only requesting limited redaction of the most intimate details of Mills and Heredia's gender dysphoria and the effects it has had on their health. Enough information remains in the redacted versions to provide the public with sufficient insight into the ongoing proceedings in this case while also balancing Mills and Heredia's privacy interests. The mutually-agreed upon protective order already in place bolsters the finding that granting the Motion to Seal here is appropriate. As such, the Motion to Seal is GRANTED.

## V. CONCLUSION

Plaintiffs have again made the requisite showing that a preliminary injunction continues to be appropriate in this case, bolstered by medical evaluations of both named Plaintiffs which will be filed under seal to protect their privacy. The injunction complies with the needs-narrowness-intrusiveness requirement of the PLRA. Accordingly, the Court orders a third preliminary injunction against enforcement of the Act as described herein.

MEMORANDUM DECISION AND ORDER - 11

# VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Motion for Preliminary Injunction (Dkt. 113) is GRANTED.

2. The Court enjoins enforcement of Idaho Code § 18-8901's prohibition on the use of state funds for purposes of providing hormone therapy as against the class for the next 90 days.[6]

3. Plaintiffs' Motion to Seal (Dkt. 114) is GRANTED.

DATED: March 3, 2025

David C. Nye
Chief U.S. District Court Judge

---

[6] This injunction takes effect on March 4, 2025, after the expiration of the second injunction on March 3, 2025.