RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

JAMES J. SIMERI, ISB #12332
GREGORY E. WOODARD, ISB #11329
MATTHEW L. MAURER, ISB #12575
DAVID J. MYERS, ISB #6528
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
james.craig@ag.idaho.gov
james.simeri@ag.idaho.gov
greg.woodard@ag.idaho.gov
matthew.maurer@ag.idaho.gov
david.myers@ag.idaho.gov

*Attorneys for State Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBINSON, *et al.* | Case No. 1:24-cv-00306-DCN |
| *Plaintiffs,* | **MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |
| *v.* | |
| RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; *et al.,* | |
| *Defendants.* | |

Plaintiffs have subpoenaed all personal cell phone records, over a 20-month period, of the former director of the Idaho Department of Correction (IDOC), Mr. Josh Tewalt, and the current Chief Psychologist, Dr. Walter Campbell. Plaintiffs' third-party subpoenas to these two individuals' wireless carriers is expansive—they ask for "[a]ll logs of phone calls and text messages, sent or received, from January 1, 2024 – Present for any accounts utilized by [each individual] . . . ."

As Defendants have previously explained to Plaintiffs, IDOC officials' personal cell phone records are irrelevant to the matters litigated in this case—here, the constitutionality of a state statute—and their disclosure would be a substantial invasion of individuals' privacy. In addition, production of the logs, if allowed, will necessitate additional written or deposition discovery by Plaintiffs (of Mr. Tewalt, Dr. Campbell, and potentially others), as they pursue more details along the rabbit trail. Thus, the subpoena will cause harm unless the Court quashes it and issues a protective order. There is, therefore, good cause for the Court to issue such a protective order under Rule 26(c) and to forbid the discovery of Mr. Tewalt's and Dr. Campbell's personal cell phone records.

## LEGAL STANDARD

Under Rule 26(c)(1), a court may issue an order preventing discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1)(A). A court must generally find "good cause" before issuing such an order. *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). The party seeking a protective order to prevent discovery has the

burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *Id.*

"Although typically only the recipient of a subpoena has standing to assert objections, '[a] party has standing to challenge a subpoena issued to third parties where its own interests may be implicated.'" *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013) (quoting *Johnson v. Bancorp*, 2012 WL 6726523, at *2 (W.D.Wash. 2012)). Rule 26(c)(1) permits a party to seek a protective order from the presiding court in order to restrict the party seeking discovery from pursuing certain requests on third parties. *Bite Tech, Inc. v. X2 Impact, Inc.*, 2013 WL 195598, at *4 (W.D.Wash. 2013).

"As a general rule, parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." *United States ex rel. Davis v. Lincare Inc.*, 2005 WL 8165982, at *1 (D. Idaho May 3, 2005) (citing Fed. R. Civ. P. 26(b)(1)). "Although the information requested need not be admissible at trial, it must be reasonably calculated to lead to the discovery of admissible evidence." *Id.* The scope of discovery is broad, but the Supreme Court of the United States has clarified that "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). In other words, while the standard of relevancy in discovery is a liberal one, it is not so liberal that it allows a party to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Lincare Inc.*, 2005 WL 8165982, at *2 (cleaned up).

ARGUMENT

## I. The information Plaintiffs seek is not relevant or proportional to the needs of this case

Plaintiffs claim that they "face the imminent loss of their health care because Idaho state law mandates an across-the-board ban on their necessary medical treatment." Dkt. 65 at ¶ 1 (Amended Class Action Complaint). Thus, from the very first paragraph of their complaint, Plaintiffs acknowledge they are not challenging a discretionary IDOC policy—they are challenging the constitutionality of a "state law mandate[]." *Id.* Put differently, they are not challenging any actions or policy decisions of, or directed by, Mr. Tewalt or Dr. Campbell. Any communications involving these individuals—even communications regarding the "across-the-board ban" on state funded cross-sex hormones or cross-sex surgery—therefore have no relevance to Plaintiffs' constitutional challenge. This is especially true regarding their communications on their personal cell phones.

Moreover, the information Plaintiffs seek—Mr. Tewalt's and Dr. Campbell's personal cell phone records from their wireless carriers—would show, at most, only logs of calls and text messages, not the content of any communication itself. A discovery request for contentless logs regarding irrelevant communications is the very definition of discovery that is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

### A. Plaintiffs are challenging the constitutionality of a statute, not an IDOC policy.

In the Amended Complaint, both named Plaintiffs allege they will be deprived of cross-sex hormones "because of [a] new law." Dkt. 65 at ¶¶ 34 & 46. They claim

that ending their cross-sex hormones amounts to cruel and unusual punishment in violation of the Eighth Amendment—a claim that requires proof of "deliberate indifference." Their constitutional challenge, therefore, is not to any action or policy position Mr. Tewalt or Dr. Campbell took, but rather to the "new law."

Neither Mr. Tewalt nor Dr. Campbell proposed, drafted, voted on, or ratified the law Plaintiffs are challenging. They merely acted as their duties required: they abided by the law. Accordingly, those individuals' communications about that law are simply not relevant to Plaintiffs' claim. This means that not even their work communications are relevant, let alone their personal cell phone communications. Plaintiffs' requested disclosure of Mr. Tewalt's and Dr. Campbell's personal cell phone information therefore exceeds the proper scope of discovery and is not proportional to the needs of this case.

### B. Records from the wireless carrier would have no content, so the subpoena therefore contemplates follow-on discovery.

The cell phone call and text records that Plaintiffs seek to obtain from Mr. Tewalt's and Dr. Campbell's wireless carriers would have no content of the communications themselves; at most the logs would show metadata—i.e., the dates that calls and texts were sent or received on those individuals' cell phones and the phone numbers of the senders or recipients of those communications. Plaintiffs are no doubt aware of this limitation, which suggests they plan to conduct follow-on discovery about the identity of the countless senders and receivers, followed further by written and deposition discovery about the contents of countless telephone

conversations and texts. All of this follow-on discovery exceeds the proper scope of discovery and is not proportional to the needs of this case.

## II. Good cause exists to prohibit Plaintiffs from obtaining Mr. Tewalt's and Dr. Campbell's personal cell phone records.

Plaintiffs should be forbidden from accessing Mr. Tewalt's and Dr. Campbell's personal cell phone records in this case because those records are irrelevant and it would be a massive invasion of their privacy. The party seeking a protective order to prevent discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d at 424 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)). "A showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c)." *B.P. v. City of Johnson City*, 2024 WL 4844119, at *4 (E.D. Tenn. Nov. 20, 2024) (quotation omitted).

In this case, Mr. Tewalt's and Dr. Campbell's work communications have little, if any, relevance, and their personal cell phone records have absolutely no relevance—given the fact that Plaintiffs are challenging a statute, not any of Mr. Tewalt's or Dr. Campbell's acts or decisions.

What's more, the harm that would result from producing Mr. Tewalt's and Dr. Campbell's personal cell phone records is substantial. Producing those records would be a significant invasion of privacy, disclosing logs of all the calls and texts these individuals have had with family, friends, and others regarding personal matters. Again, we're not talking about work phones that Mr. Tewalt and Dr. Campbell were

issued by IDOC—these are their personal cell phones. Such a substantial invasion of privacy is unwarranted where, as here, the information sought would have no relevance and no probative value.

### A. Mr. Tewalt's and Dr. Campbell's personal cell phones are not subject to discovery.

Plaintiffs' discovery request seeking Mr. Tewalt's and Dr. Campbell's personal cell phone records goes beyond the proper scope of discovery in this case. It is important to note that Plaintiffs have sued Mr. Tewalt in his official capacity, not his individual capacity. Dkt. 65 at 1, 54. Accordingly, Plaintiffs have already received in discovery the relevant documents and emails Mr. Tewalt (and Dr. Campbell) generated in the course of their official duties.[1] If these individuals had been issued a work cell phone, Plaintiffs would have also received the relevant cell phone records, if any, generated while using those official phones. But Plaintiffs should not be allowed to obtain Mr. Tewalt's and Dr. Campbell's personal cell phone records when Plaintiffs' allegations have nothing to do with anything Mr. Tewalt or Dr. Campbell have done in their personal capacities.

It is important to note that Mr. Tewalt is no longer the director of the Idaho Department of Correction. Which means he is no longer a party to this litigation. By operation of law, he was automatically replaced as a defendant with the new director. Fed. R. Civ. P. 25(d). And Dr. Campbell was never a party to this litigation. Where,

---

[1] In the spirit of cooperation, State Defendants have produced former Director Tewalt's and Dr. Campbell's work emails, even though, as argued above, the State's position is that those emails are not relevant because Plaintiffs are challenging a statute, not an IDOC policy. Plaintiffs' attempt now to massively invade these individuals' privacy flies in the face of that cooperative spirit.

as here, the personal information of a non-party is sought, courts are more inclined to find good cause for a protective order. *Foltz*, 331 F.3d at 1137; *see also Aecom Energy & Constr., Inc. v. Ripley*, 2021 WL 6882321, at *2 (C.D. Cal. Dec. 16, 2021) (prohibiting discovery of non-party cell phone records).

Perhaps the most concerning thing about Plaintiffs' blanket subpoena for all Mr. Tewalt's and Dr. Campbell's personal cell phone records is the precedent it sets for public servants. Who would want to enter public service knowing their personal cell phone records could be subject to disclosure in a lawsuit against the agency for which they work? And this isn't just these individuals' personal cell phone records— it could include their families' records too. As noted above, Plaintiffs' subpoenas requested records for "any accounts utilized by Josh Tewalt [and Walter Campbell]." If these men have family phone plans, Plaintiffs' request could encompass phone records for all members of those family plans. Simply put, the annoyance, embarrassment, and oppression that Plaintiffs' requested discovery would cause these individuals warrants a protective order under Rule 26(c)—not least because of the precedent this might set for public servants' privacy.

**B. Even if Plaintiffs could articulate some relevance for these personal cell phone records, the request still fails proportionality.**

As argued above, Plaintiffs cannot show any relevance for Mr. Tewalt's or Dr. Campbell's personal cell phone records. But even if they could, the overwhelming majority of the records would still be personal call and text logs wholly unrelated to this case. Such a substantial invasion of these individuals' personal cell phones—for, at best, a handful of still irrelevant records—is not proportional to the needs of this

case. *Aecom Energy*, 2021 WL 6882321, at *2; *City of Johnson City*, 2024 WL 4844119, at *5 ("By seeking all data and call logs, without any limitations . . . , the Plaintiffs are essentially conceding that the information produced will include personal calls and data unrelated to the instant litigation.")

It bears mentioning that cell phone records were specifically excluded from the original joint litigation and discovery plan the parties agreed to. Dkt. 78 at 2–3. Only later, when the parties were discussing the extension of discovery deadlines, was a provision added into the amended joint litigation and discovery plan regarding the *preservation* of cell phone records from that point moving forward. Dkt. 128-2 at 3. But the parties have never agreed on the relevancy of cell phone records in this case. To the contrary, after Plaintiffs changed course and asserted that cell phone records are now relevant, State Defendants have consistently objected to all requests for cell phone records. Such records are not, and never have been, relevant or proportional.

## CONCLUSION

State Defendants request that this Court quash Plaintiffs' subpoenas and issue a protective order forbidding the discovery of Mr. Tewalt's and Dr. Campbell's personal cell phone records.

DATED:  August 13, 2025

<div style="margin-left: 40%;">

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By:   /s/ Matthew L. Maurer
    MATTHEW L. MAURER
    Deputy Attorney General

</div>

MOTION FOR PROTECTIVE ORDER—8

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 13, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Paul Carlos Southwick
psouthwick@acluidaho.org

Emily Myrei Croston
ecroston@acluidaho.org

Malita Picasso
mpicasso@aclu.org

Chase B. Strangio
cstrangio@aclu.org

Leslie J. Cooper
lcooper@aclu.org

Alexandra Johnson
a.johnson@aclu.org

Carlisle S. Pearson
pearsoncs@ballardspahr.com

Harlan T. Mechling
mechlingh@ballardspahr.com

Nicholas J.H. Mercado
mercadon@ballardspahr.com

Pilar C. French
frenchp@lanepowell.com


*Attorneys for Plaintiff*

Christina M. Hesse
cmh@dukeevett.com

Michael J. Bentley
mbentley@bentley.com

*Attorneys for Defendants Centurion of Idaho, LLC and Centurion Health*

/s/ *Matthew L. Maurer*
MATTHEW L. MAURER