Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Chase B. Strangio*
Malita Picasso*
Leslie Cooper*
Alexandra R. Johnson*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
cstrangio@aclu.org
mpicasso@aclu.org
lcooper@aclu.org
a.johnson@aclu.org

Pilar C. French*
Harlan Mechling*
Carlisle S. Pearson*
Nicholas J.H. Mercado*
Antonia Gales*
BALLARD SPAHR LLP
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204
Tel: (503) 778-2100
frenchp@ballardspahr.com
mechlingh@ballardspahr.com
pearsoncs@ballardspahr.com
mercadon@ballardspahr.com
galesa@ballardspahr.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **KATIE ROBINSON**, et al.,<br>*Plaintiffs*,<br>v.<br>**RAÚL LABRADOR**, et al.,<br>*Defendants*. | Case No. 1:24-cv-00306-DCN<br>**PLAINTIFFS' REPLY ISO MOTION FOR FIFTH PRELIMINARY INJUNCTION** |

    The Court is authorized to issue a fifth preliminary injunction that parallels the injunctions it issued on September 3, 2024, Dkt. 58, December 3, 2024, Dkt. 96, March 3, 2025, Dkt. 120,

1

and May 30, 2025, Dkt. 137. None of the material facts have changed for the purpose of determining whether another preliminary injunction is warranted, as was true when this Court issued the second, third, and fourth preliminary injunctions in this case.

Defendants attempt to defeat Plaintiffs'[1] motion for a fifth preliminary injunction by arguing that "Plaintiffs' invocation of 'medical necessity' has become increasingly untenable as it relates to gender dysphoria treatments . . . ." Dkt. 147 at 2 (citing *United States v. Skrmetti*, 145 S. Ct. 1816, 1837 (2025) (Thomas, J. concurring)). However the Supreme Court's acknowledgment of the debate over gender-affirming care was specific to that care for minors only. *See, e.g.*, *id.* at 1836-37 (reviewing evidence related only to minors' care and analyzing "the State's objective of protecting minors' health and welfare"). *Skrmetti* said nothing about the medical necessity of gender-affirming care for adults, which is at issue in this case. Indeed, the law upheld in *Skrmetti* provides that gender-affirming care remains available to adults. *Id.* at 1829 (observing that, under S.B. 1, "[h]ealthcare providers may administer certain medical treatments to individuals ages 18 and older but not to minors").

Defendants also rely on a statement in a recent case from this Court that is distinguishable here. Dkt. 147 at 2-3 (citing *Dana v. Campbell*, No. 1:18-CV-00298-DCN, 2025 WL 1827042, at *7 (D. Idaho July 1, 2025)). *Dana* was "a diagnosis case, not a treatment case[.]" *Id.* at *5. There, the plaintiff "allege[d] [IDOC's chief psychologist] delayed and used an incorrect framework in *diagnosing* her with GD [gender dysphoria]." *Id.* (emphasis in original). Here, the class is defined as those with a diagnosis of gender dysphoria, and the care at issue is treatment—not diagnosis. *See* Dkt. 58 at 28 ("certify[ing] the proposed class of all incarcerated persons in the custody of

---

[1] One of the class representatives, Rose Mills, was recently released from custody as Defendants note, *see* Dkt. 147 at 1 n.1. Plaintiffs will file an appropriate formal notice of her release.

2

IDOC who are, or will be diagnosed with Gender Dysphoria, and are receiving, or would receive hormone therapy proscribed under Idaho Code § 18-8901").

Defendants also take the language they quote from *Dana* out of context. The court there was considering qualified immunity in the context of an individualized medical determination. The court was (1) observing that the right as-defined was too "generic" to defeat qualified immunity, *Dana*, 2025 WL 1827042, at *6, and (2) explaining that, for the purposes of the qualified-immunity analysis, there were "[f]ew cases" prior to October 2019 that "discussed the Eighth Amendment's application to GD at all . . . ." *Id.*[2]

As for outright bans on gender-affirming hormone treatments for adults, the legal landscape has not changed since the Court issued its most recent preliminary injunction. Courts have continued to enjoin such bans. On June 3, 2025, a judge for the District Court of the District of Columbia certified a proposed class and granted a preliminary injunction in *Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *1 (D.D.C. June 3, 2025). That class similarly consists of "inmates in the custody of the Bureau of Prisons ('BOP') who have been medically diagnosed with gender dysphoria," *id.*, and the preliminary injunction orders BOP officials "to continue providing gender-affirming hormones and social accommodations in accordance with BOP policy prior to the issuance of the Executive Order" that prohibited federal funding from being spent on any such use. *Id.* at *3.

---

[2] Since then, however, courts have routinely recognized that gender dysphoria is a serious medical need, and failure to treat it as such is a violation of the Eighth Amendment. *See, e.g., Monroe v. Baldwin*, 424 F. Supp. 3d 526, 542 (S.D. Ill. 2019); *Iglesias v. Fed. Bur. of Prisons*, No. 19-CV-415, 2021 WL 6112790, at *17 (S.D. Ill. Dec. 27, 2021); *Zayre-Brown v. N.C. Dep't of Pub. Safety*, No. 3:22-cv-191, 2024 WL 410243 (W.D.N.C., Feb. 2, 2024); *Doe v. McHenry*, 763 F. Supp. 3d 81, 88 (D.D.C. 2025); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 785-86 (9th Cir. 2019).

Contrary to Defendants' overblown assertions that Plaintiffs' claims have "crumbled," Dkt. 147 at 4, Defendants point to no evidence[3] to undermine Plaintiffs' substantial evidence that this treatment is well-accepted in the medical field, *see* Dkt. 2-1 at 7-10, including the fact that this treatment remains supported by every major medical association in the United States. *See* Dkt. 2-5 at 10-11; *see also* Dkts. 114-5, 114-6, 114-7 (providing additional evidence on the necessity of this care); Dkt. 120 at 6-7 (this Court crediting such evidence and observing that "State Defendants have provided no new evidence" on the question of medical necessity). As this Court recently recognized, Defendants' "reiterat[ion]" of the "debate" over the safety and effectiveness of hormone therapy "does not constitute evidence resolving the question of the medical necessity of gender-affirming care." Dkt. 137 at 5.

Moreover, regardless of any uncertainty on the question of hormone therapy's medical necessity for adults, the question remains a serious one going to the merits of the case, satisfying the first prong of the preliminary injunction test. *See* Dkt. 96 at 9 ("Until the parties present the Court with more definitive evidence one way or another as to the medical necessity of hormone therapy to individuals with gender dysphoria, there continues to be a serious question as to the merits of this case, and this factor weighs in favor of granting another preliminary injunction."); *see also* Dkt. 58 at 9 (similar); Dkt. 120 at 7 (similar); Dkt. 137 at 6 ("The Court's previous reasons for concluding Plaintiffs have demonstrated a serious question as to the merits still stands."). The Court has previously found that the "period of 'deliberative investigation'" on this question—in which this case remains—"weighs in favor of another preliminary injunction," and it should find as much again here. *Id.*

---

[3] In fact, the evidence in this case includes prior testimony from the State's own experts that medical treatment for gender dysphoria is beneficial for some adults, *see* Dkt. 25 at 3-4, and IDOC's own policy, in place since 2002, which recognizes that hormone therapy is necessary for some individuals with gender dysphoria. *Id.* at 3.

4

Defendants also "incorporate here their arguments opposing the previous injunctions." Dkt. 137 at 4. Plaintiffs thus incorporate their responses to said arguments. *See* Dkt. 25, Dkt. 90, Dkt. 118, Dkt. 136.

Plaintiffs respectfully request that the Court issue a fifth preliminary injunction prior to the fourth preliminary injunction's expiration on September 1, 2025.

Dated: August 25, 2025

Respectfully submitted,

/s/ *Emily Myrei Croston*
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation