UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLE ROBINSON, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>RAUL LABRADOR, et al.,<br><br>  Defendants. | Case No. 1:24-cv-00306-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court is Plaintiffs' fifth Motion for Preliminary Injunction. Dkt. 143. The Motion seeks the same relief as the Court's four previously-issued preliminary injunctions (Dkts. 58; 95; 120; 137), the latest of which is set to expire on September 1, 2025. State Defendants[1] opposed the Motion (Dkt. 147), and Plaintiffs replied (Dkt. 148). Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons set forth below, the Motion for Preliminary Injunction is GRANTED.

# II. BACKGROUND

As this Court has discussed extensively in its four prior Orders, Plaintiff Katie

---

[1] The Court will use the term "State Defendants" to refer to defendants Raul Labrador in his official capacity as Attorney General of the State of Idaho, Josh Tewalt in his official capacity as the Director of the Idaho Department of Corrections, Brad Little in his official capacity as Governor of the State of Idaho, and Bree Derrick in her official capacity as the Deputy Director of the Idaho Department of Corrections. Defendants Centurion Health and Centurion of Idaho, LLC (together, "Centurion") are private healthcare organizations that contract with the Idaho Department of Corrections to provide medical care for prisoners in state custody. Centurion did not oppose Plaintiff's Motion.

MEMORANDUM DECISION AND ORDER - 1

Heredia[2] challenges the constitutionality of Idaho Code § 18-8901 (the "Act"), which took effect on July 1, 2024. The Act prohibits the use of public funds for medical interventions—surgical or otherwise—that "alter[] the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex[.]" *Id.* at § 18-8901(2). Such interventions have been referred to as "gender-affirming care."

Heredia is a transgender woman currently incarcerated in a facility administered by the Idaho Department of Corrections ("IDOC"). Heredia brings this claim as a putative class action on behalf of "all incarcerated persons in the custody of IDOC who are, or will be diagnosed with gender dysphoria, and are receiving, or would receive, hormone therapy proscribed by [the Act]." Dkt. 1, at 4. Heredia argues that the Act denies inmates diagnosed with gender dysphoria necessary medical treatment in violation of the Eighth Amendment and 42 U.S.C. § 1983. Dkt. 1, at 18–20. In a prior order, the Court certified the proposed class and enjoined enforcement of the Act as it applied to the use of state funds for providing hormone therapy while this lawsuit was pending. Dkt. 58, at 28.

However, 18 U.S.C. § 3626(a)(2) provides that injunctions pertaining to prison conditions automatically expire after 90 days. Thus, since the Court entered the first injunction, the Plaintiffs have sought a new preliminary injunction every three months. *See* Dkts. 80; 113; 134; 143. The Court has subsequently issued those new injunctions on a

---

[2] Katie Heredia's legal name is Cole Robinson. At times, Katie Heredia has been referred to as Katie Robinson. The Court will use Heredia's preferred name throughout this Order. Additionally, Plaintiff Rose Mills has been released from IDOC custody and is no longer a proper party or class representative. Pursuant to Plaintiffs' Notice (Dkt. 149) and Federal Rules of Civil Procedure 21 and 23(d)(1)(D), Mills is dismissed as a party and class representative.

MEMORANDUM DECISION AND ORDER - 2

showing by Plaintiffs that preliminary relief is still warranted. *See* Dkts. 95, 120, 137.

The Court's most recent injunction is set to expire on September 1, 2025. Dkt. 137. Accordingly, Plaintiffs moved the Court for a fifth injunction on August 12, 2025. Dkt. 143. Defendants responded on August 20, and Plaintiffs replied on August 25. Dkt. 147; 148. Plaintiffs' Motion is therefore ripe for decision.

### III. LEGAL STANDARDS

#### A. 18 U.S.C. § 3626(a)(2)

Under the Prison Litigation Reform Act ("PLRA"), when a court enters a preliminary injunction in a civil action with respect to prison conditions, the injunction will automatically expire 90 days after its entry unless the court enters a final injunctive order finding "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation" before the 90 days expires. 18 U.S.C. § 3626(a)(2).

The Ninth Circuit has held that entering a second preliminary injunction after the first one has expired does not violate the PLRA. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001). It has also held that "§ 3626(a)(2) provides no way to *extend* a preliminary injunction other than making the injunctive relief final." *Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021). Reading these two cases together, the Court can enter a successive preliminary injunction, but it cannot extend its initial order without making it final after reaching the requisite findings. Plaintiffs still have the burden of proof as to whether preliminary relief is warranted. *Mayweathers*, 258 F.3d at 936.

MEMORANDUM DECISION AND ORDER - 3

### B. Preliminary Injunction

The standard for issuing a preliminary injunction remains the same as it was for the Court's four previously-issued orders. Plaintiffs must show "(1) they are likely to prevail on the merits of their substantive claims, (2) they are likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22–23 (2008)).

The Ninth Circuit has further instructed district courts to evaluate these factors "on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (cleaned up). Thus, a court may grant a preliminary injunction where the plaintiff shows only a "serious question" going to the merits—without necessarily showing a likelihood of success on the merits—if the balance of the hardships "tips sharply" in favor of the plaintiffs and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 68 F.4th at 490–91. The serious-question standard is satisfied where a plaintiff raises questions "that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Id.* at 497 (cleaned up); *see also Fellowship of Christian Athletes*, 82 F.4th at 684 (explaining a showing of "serious questions" is "a lesser showing than likelihood of success"). Additionally, when "the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Poretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

MEMORANDUM DECISION AND ORDER - 4

Finally, under the PLRA, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). This is referred to as the needs-narrowness-intrusiveness requirement.

## IV. DISCUSSION

The Court will once again take up each factor of the preliminary injunction test in turn, followed by the needs-narrowness-intrusiveness requirement under the PLRA. The parties' arguments largely incorporate by reference the arguments made in their prior filings. The Court's analysis will, therefore, remain largely unchanged as well.

**A. Serious Question Going to the Merits**

In addition to incorporating their prior arguments, State Defendants cite recent court opinions to show judicial skepticism of the medical necessity of gender-affirming care, but neither citation precludes the Court from finding a significant question still exists in this case. State Defendants first cite Justice Thomas's concurring opinion in *United States v. Skrmetti*, 145 S. Ct. 1816, 1844 n.5 (2025). There, Justice Thomas (writing only for himself) expressed his concern that medical experts may define "medical necessity" too broadly in the context of gender-affirming care. *Id*. But after expressing his doubt, Justice Thomas concluded that "the limits of 'medical necessity' in [the context of gender-affirming care for minors] are debatable." *Id.*. Where Justice Thomas sees debatability, this Court sees a significant question. Justice Thomas's *Skrmetti* concurrence does not belie a serious question as to the medical necessity of gender-affirming care for adult inmates.

State Defendants also cite this Court's opinion in *Dana v. Campbell*, No. 18-298,

MEMORANDUM DECISION AND ORDER - 5

2025 WL 1827042 (D. Idaho July 1, 2025) as evidence of judicial skepticism as to Plaintiffs' claims. There, this Court noted the issue of proper medical care for transgender individuals is currently unsettled. *Id*. at *7. Like Justice Thomas's statements, this Court's statements in *Dana* merely recognize that the proper medical treatment for gender dysphoria is a matter of public debate. But neither comment definitively resolves the question as to the medical necessity of gender-affirming care.

Plaintiffs assert there has been little change in the legal status of gender-affirming care in the corrections context. They point to *Kingdom v. Trump*, No. 25-691, 2025 WL 1568238 (D.D.C. June 3, 2025), where a judge for the District Court for the District of Columbia granted preliminary class relief to a class of inmates diagnosed with gender dysphoria and denied gender-affirming care. While the injunction in *Kingdom* was supported by a significant likelihood of success on an Administrative Procedures Act arbitrary and capricious claim—a far different scenario than Plaintiffs' Eighth Amendment claims here—Plaintiffs appears nonetheless correct that the legal status of gender-affirming care has not shifted.

Ultimately, this case remains in a period of "deliberative investigation" preceding the presentation of evidence from both parties that will, ideally, help the factfinder answer the ultimate questions in this case. Indeed, the parties have sought extensions to discovery deadlines on three prior occasions, underscoring the fact-intensive nature of this case. Dkts. 128; 132; 140. The Court once again has no new evidence that circumstances have changed, and the Court's previous reasons for finding a serious question as to the merits in this case still stand. Thus, the Court incorporates its reasoning in its previously-issued

decisions regarding this matter (Dkts. 58, at 5–9; 95, at 8–9) and finds this factor weighs in favor of another preliminary injunction.

### B. Irreparable Harm

No party presents any new arguments or evidence regarding the irreparable harm factor. The Court, therefore, incorporates its previous analyses regarding this prong. Dkts. 58, at 9–10; 95, at 9–11; 120, at 7–8; 137, at 6–7. In particular, the Court reiterates that the State Defendants have an interest in enforcing duly enacted laws. *See* Dkt. 137, at 6. But Plaintiffs have presented evidence that they would suffer severe physiological and psychological repercussions should Defendants discontinue their medication. *See* Dkt. 120, at 7–8. The Court finds that the irreparable harm prong continues to "tip sharply" in favor of the Plaintiffs. *See Alliance for the Wild Rockies*, 68 F.4th at 490–91.

### C. Balance of Equities/Public Interest

Much as before, both these factors weigh in favor of the Plaintiffs. State Defendants have not raised any new arguments to counter the Court's reasoning in prior orders, and the Plaintiffs effectively argue the same reasoning is still pertinent. State Defendants remain silent on the potential burden of continuing to provide hormone therapy to the named Plaintiff and the class members. The balance of hardships weighs in favor of the Plaintiffs. And as previously addressed, the Court will continue to steer clear of potential constitutional impingement. The public interest factor weighs in favor of Plaintiffs.

### D. Needs-Narrowness-Intrusiveness Requirement

Because the Court will not be altering the terms of the preceding preliminary injunction, it finds the additional requirements imposed by 18 U.S.C. § 3626(a)(2) continue

MEMORANDUM DECISION AND ORDER - 7

to be met. The scope of the preliminary injunction continues to only enjoin the enforcement of the Act as it applies to class members receiving hormone therapy. *See* Dkt. 2, at 2. The injunction remains narrowly drawn to only a small group of affected individuals receiving one type of gender-affirming treatment. It extends no further than necessary because it protects only those individuals who would have otherwise been eligible for hormone therapy under IDOC's previous policies, which, in turn, maintains the status quo and ensures no violation of class members' Eighth Amendment rights pending a final decision on the merits.[3]

Finally, the injunction continues to be the least intrusive means necessary to protect the class members' rights because it does not impose any burdens on prison operations beyond what IDOC had already self-imposed prior to the Act. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("What is important, and what the PLRA requires, is a finding that . . . the 'relief' . . . corrects the violations of the prisoners' rights with [as minimal of an impact as] possible on [a prison's] discretion over their policies and procedures."). Therefore, this preliminary injunction satisfies the needs-narrowness-intrusiveness requirement of the PLRA and can properly be issued.

## V. CONCLUSION

Plaintiffs have once again made the requisite showing that a preliminary injunction continues to be appropriate in this case. While case law continues to develop, none of the

---

[3] The Court once again emphasizes this Order *is not* a final decision. It remains to be seen whether the disputed sections of Idaho Code § 18-8901 are constitutional. This Order simply allows the class members to continue to receive medication until the Court can make a final, informed decision in this case.

cases cited by the parties changes the Court's conclusion that a significant question remains, and further injunctive relief is warranted. Furthermore, the injunction once again complies with the needs-narrowness-intrusiveness requirement of the PLRA. Accordingly, the Court orders a fifth preliminary injunction against enforcement of the Act as described herein.

## VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Motion for Preliminary Injunction (Dkt. 143) is GRANTED.

2. The Court enjoins enforcement of Idaho Code § 18-8901's prohibition on the use of state funds for purposes of providing hormone therapy as against the class for the next 90 days.[4]

3. Plaintiff Rose Mills (aka Brody Mills) is DISMISSED as a party and as a class representative.

DATED: August 29, 2025

David C. Nye
Chief U.S. District Court Judge

---

[4] This injunction takes effect on September 2, 2025, immediately after the expiration of the fourth injunction on September 1, 2025.