RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

JAMES J. SIMERI, ISB #12332
GREGORY E. WOODARD, ISB #11329
MATTHEW L. MAURER, ISB #12575
DAVID J. MYERS, ISB #6528
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
james.craig@ag.idaho.gov
james.simeri@ag.idaho.gov
greg.woodard@ag.idaho.gov
matthew.maurer@ag.idaho.gov
david.myers@ag.idaho.gov

*Attorneys for State Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBINSON, *et al.*<br><br>        *Plaintiffs,*<br><br>        *v.*<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; *et al.*,<br><br>        *Defendants.* | Case No. 1:24-cv-00306-DCN<br><br>**RESPONSE TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS AND TO COMPEL THE PRODUCTION OF CELL PHONE DATA [DKT. 153]** |

Plaintiffs claim they need the personal cell phone records of Idaho Department of Correction (IDOC) employees. These records, they argue, would reveal IDOC employees' "potentially more candid" opinions on Idaho Code section 18-8901—the statute Plaintiffs have challenged as unconstitutional in this case. But IDOC employees' opinions of that statute have no bearing whatsoever on its constitutionality. Put simply, the personal cell phone records Plaintiffs seek are not relevant to any party's claim or defense.

Nonetheless, Plaintiffs persist, arguing that any time a government employee uses a personal cell phone for "business purposes," even briefly, that employee's entire personal cell phone becomes a "public record" and must be preserved. This surely cannot be the standard. Government employees who, to be sure, hold a public trust, nevertheless are not required to sign away all privacy and open up their personal communications to the public. No one would ever serve in government if that were the case. Yet this is Plaintiffs' argument. And State Defendants have opposed that argument, consistently, from the first time Plaintiffs requested IDOC employees' personal cell phone data.

State Defendants now reiterate here that same opposition—IDOC employees' personal cell phone records have zero relevance to this case, employees have no general duty to preserve those records, and failure to do so in this case, where the records have no bearing on any party's claim or defense, certainly does not amount to "spoliation." Plaintiffs have failed to make even a threshold showing of spoliation under Rule 37(e), and their request for sanctions must be denied.

## BACKGROUND

In early September 2024, the parties held a Rule 26(f) conference to discuss discovery planning for this case. During these initial discussions, the parties agreed that cell phone records were not relevant in this case. Maurer Decl. ¶ 4. Accordingly, following the conference the parties agreed on a discovery plan in October 2024 that specifically excluded cell phone data from the list of ESI to be preserved. Dkt. 78.

In February of 2025, the parties discussed altering the litigation plan to extend litigation deadlines. During these discussions, Plaintiffs also requested an alteration of the discovery plan to include cell phone records on the list of ESI to be preserved. After confirming that this request for preservation applied only to named defendants Josh Tewalt and Bree Derrick and that the preservation only applied from that point going forward, not retroactively, State Defendants agreed to this request. Maurer Decl. ¶ 5, Ex. A. At no point, however, did State Defendants ever agree that cell phone records were relevant or discoverable in this case. *Id.* at ¶ 5.

In April of 2025, the parties held a discovery meeting wherein Plaintiffs requested that State Defendants "locate and produce Josh Tewalt's phone records and other ESI." *Id.* at Ex. A. In response, State Defendants reiterated their agreement was to preserve cell phone records only as of the dates of the amended discovery plan, not retroactively. *Id.*

In May of 2025, State Defendants objected to Plaintiffs' discovery request to produce IDOC employees' personal cell phone records, noting the request constituted a fishing expedition. Mechling Decl. Ex. 9. The parties mediated this dispute with the

Court's clerk. The clerk agreed that IDOC employees' personal cell phone records, as a general matter, were not relevant to this case. She also suggested Plaintiffs' request for personal cell phone records was a fishing expedition. Maurer Decl. at ¶ 6.

Also in May of 2025, Plaintiffs sought discovery on discovery from State Defendants, requesting a Rule 30(b)(6) deposition and serving written discovery requesting information regarding record retention and preservation. State Defendants opposed these attempts to conduct discovery on discovery, and the parties mediated the issue with the Court's clerk in June 2025. The clerk advised against a "discovery on discovery" deposition. The parties agreed on a plan to address their discovery disputes. This plan did not involve any agreement by State Defendants to provide discovery on discovery through written discovery responses. *Id.* at ¶ 7, Ex. B.

On July 30, 2025, the parties held one of their weekly discovery meetings. In that meeting Plaintiffs indicated they were planning to subpoena Josh Tewalt's personal cell phone records. State Defendants responded that they would object to subpoenas for those records and would seek a protective order. State Defendants have never suggested that Plaintiffs subpoena cell phone carriers to obtain the personal cell phone records of Josh Tewalt. *Id.* at ¶ 8; Ex. C.

## LEGAL STANDARD

When a party seeks sanctions for spoliation for electronically stored information, often referred to as "ESI," that request is governed by Federal Rule of Civil Procedure 37(e). *Hardy v. Kish*, No. 1:23-CV-00306-BLW, 2025 WL 252665, at *1 (D. Idaho Jan. 21, 2025). The framework under Rule 37(e) is separate from, and

"more stringent" than, the spoliation analysis under the Court's inherent discretionary power to impose sanctions. *Id.* at *2. Under Rule 37(e), the threshold inquiry is whether ESI has been lost, which requires a showing that ESI is relevant, there was a duty to preserve it, but it was not preserved due to a party's negligence. *Id.* (quoting *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018)).

"[W]hen a claim is anticipated, the full scope of preservation may not be reasonably foreseeable." *Oracle*, 328 F.R.D. at 550. "A party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant." *Id.* (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).

**ARGUMENT**

## I. Plaintiffs have failed to establish spoliation under Rule 37(e).

In order to obtain sanctions under Federal Rule of Civil Procedure 37(e), Plaintiffs must show that ESI that should have been preserved has been lost. But Plaintiffs cannot make this threshold showing. The personal cell phone records they seek are not relevant in this case, where Plaintiffs are challenging the constitutionality of a statute, not any actions, policies, or decisions of IDOC employees. In other words, the personal cell phone records Plaintiffs seek are not relevant, and State Defendants had no duty to preserve them.

### a. Personal cell phone records are not relevant to the constitutionality of the statute.

***IDOC employees' opinions on the merits of § 18-8901 have no bearing on***

***this case.*** Plaintiffs are abundantly clear that "[t]his case involves a challenge to Idaho's [§ 18-8901]—a statute that, if enforced, would prohibit the provision of [cross-sex hormones] to transgender people in state custody…." Dkt. 153-1 at 1. What Plaintiffs fail to explain is how phone records—texts and call logs—from IDOC employees' personal cell phones are "critical" to proving their claim. *Id.* at 2. To be clear, IDOC employees had no role in proposing, drafting, voting on, or ratifying the statute Plaintiffs are challenging. This means that "what Defendants knew about the medical risks associated with denying care and how they responded," *id.,* is completely irrelevant. State Defendants were not the ones "denying care"—that was the legislature. State Defendants simply "responded" as their duties required, by following the law. Their opinions of the law have zero relevance to this case. Plaintiffs' dispute is not with IDOC or any of its employees' support of or objection to the law, but with the Idaho legislature.

Plaintiffs' claim is that cross-sex hormone treatment is medically necessary for some transgender inmates and that § 18-8901's prohibition on that treatment for inmates in IDOC custody amounts to cruel and unusual punishment in violation of the Eighth Amendment. State Defendants assert that the Idaho legislature has the authority to determine that cross-sex hormones are never medically necessary and that § 18-8901 is a reasonable measure to protect inmates, the state's medical and correctional systems, and citizens. Thus, the key issue is medical necessity and deliberate indifference, which are questions not for IDOC employees, but for the legislature who instituted the medical prohibition.

IDOC employees' personal cell phone records are therefore wholly irrelevant. Whether those records show IDOC employees' "anxiety with the new law" [Dkt. 153-1 at 14], or whether the records would show employees' approval of § 18-8901, it makes no difference. Accordingly, throughout this litigation State Defendants have consistently resisted Plaintiffs' efforts to obtain IDOC employees' personal cell phone records—as they are private and irrelevant. This is not about State Defendants trying to "shield damaging evidence from view," *id.* at 7, as Plaintiffs assert; State Defendants invite Plaintiffs to themselves draft the most "damaging" text message they can imagine an IDOC employee sending on his personal cell phone—it would still have zero relevance to this case. This is about preventing a fishing expedition into the irrelevant personal cell phone records of IDOC employees.

*Plaintiffs have not shown why personal cell phone records are needed to elicit employees' 'candid' opinions on § 18-8901.* Even assuming IDOC employees' opinions as to the merits of § 18-8901 are relevant in this case—which they are not—Plaintiffs have still failed to demonstrate why IDOC employees' personal cell phone records are needed to obtain those opinions. Plaintiffs note several of the emails provided in discovery show that IDOC employees were concerned that transgender identifying prisoners would experience negative impacts once § 18-8901 went into effect, including mental distress and an increased risk of self-harm. Dkt. 153-1 at 14. Plaintiffs go on to suggest that "similar, and potentially more candid, communications took place via text message." *Id.* at 15. But this is pure speculation. Plaintiffs have not even inquired into IDOC employees' opinions about

the effects of § 18-8901.

To be clear, IDOC employees' opinions on § 18-8901 are not relevant to this case because they had no role in passing the law. But even assuming those opinions were relevant, Plaintiffs still have not made the additional showing of why IDOC employees' personal cell phone records are needed to obtain those opinions. Plaintiffs' logic is as follows: IDOC employees, when questioned at trial, may downplay or deny the negative effects of § 18-8901. In order to impeach that testimony, Plaintiffs need, so the logic goes, the real-time, candid opinions of the employees at the time the statute went into effect. And the only way to get those candid opinions, Plaintiffs argue, is through their personal cell phone records from that time period.

But Plaintiffs' logic is flawed because it rests on an unproven assumption— that IDOC employees will deny or temper their views on § 18-8901. Plaintiffs have no basis for this assumption. Plaintiffs have not deposed IDOC employees to ask them whether they had concerns about implementing § 18-8901 or whether those concerns were expressed to co-workers and supervisors. If Plaintiffs had simply deposed IDOC employees, they likely would have discovered that a number of IDOC employees do indeed have concerns about § 18-8901 and have no problem expressing those concerns. All the documents and emails provided in discovery up to this point suggest this. But instead, Plaintiffs continue to speculate that "text messages and voicemails will provide some of the most contemporaneous and unfiltered evidence" critical to proving their claim. Dkt. 153-1 at 15. But speculation is not enough. Plaintiffs must provide more to meet their burden of showing the relevance (and spoliation) of the

personal cell phone records they seek.

***Finally, the cases Plaintiffs cite are inapposite.*** Plaintiffs argue that "[c]ell phone records are frequently relied upon by courts analyzing claims under the Eighth Amendment." Dkt. 153-1 at 13. But all of the cases Plaintiffs cite involve claims against specific employees taking specific actions that are challenged as deliberately indifferent to the plaintiff's serious medical needs. In those cases, any evidence that might show a specific defendant's intent or knowledge when the defendant caused the alleged harm could be relevant to analyzing deliberate indifference in those cases. Clearly cell phone records—voicemails, text messages, etc.—could provide such evidence of intent or knowledge.

By contrast, Plaintiffs' claim here does not involve the specific actions of a specific defendant—or even the policies or decisions of a specific defendant. As all parties acknowledge, this case is about the constitutionality of a state law—a blanket challenge to that law's prohibition on cross-sex hormones for prisoners. Accordingly, evidence of State Defendants' intent or knowledge is not relevant. They had no role in passing the law.

Plaintiffs argue simply that, since cell phone records were relevant in other Eighth Amendment cases, they should be relevant in this Eighth Amendment case. But Plaintiffs' argument elides decisive differences between the cases they cite and this case. For example, Plaintiffs cite *Cole v. McAllister*, 548 F. Supp. 3d 985, 990 (D. Idaho 2021), in support of their argument. In that case, a medical provider was alleged to have been deliberately indifferent to an inmate's medical needs, which

resulted in the inmate's death. *Id.* at 987. In scrutinizing the adequacy of the defendant's medical care to the inmate, the court relied on text messages that showed what the defendant knew about the inmate's medical condition, when he knew about the medical condition, and how he responded. *Id.* at 993.

The crucial distinction from *Cole*—and from all the cases Plaintiffs cite in support of their argument—is obvious: those plaintiffs were not bringing a blanket challenge to a statute, they were challenging specific actions of specific defendants, for which cell phone records had specific relevance. Here, Plaintiffs have not articulated and cannot articulate any specific relevance for IDOC employees' personal cell phone records because Plaintiffs' claim does not relate to any specific actions the employees took. Instead, Plaintiffs seek IDOC employees' personal cell phone records to obtain the employees' opinions on a statute they did not enact regarding medical treatment over which they have no control—that is, Plaintiffs seek a fishing expedition.

### b. Defendants had no duty to preserve personal cell phone records

Like their failure to show the relevance of the personal cell phone records at issue, Plaintiffs' failure to demonstrate a duty to preserve those records is also fatal to their claims of spoliation. Plaintiffs' argument that personal cell phone records must be preserved any time the phone is used for "business purposes" simply does not withstand scrutiny. And of the "seven instances" Plaintiffs offer as examples where IDOC employees "appear to have sent or received text messages about issues central to this case," Dkt. 153-1 at 10, Plaintiffs have blatantly mischaracterized or

taken out of context six of them.

**_Plaintiffs' argument that IDOC employees have a duty to preserve personal cell phone records if the phone is used for "business purposes" is invalid._** Plaintiffs argue that personal cell phone records become public records if the phone is used for any "business purpose." In support of this argument, Plaintiffs point to IDOC's standard operating procedures on 1) personal cell phone use in IDOC correctional facilities (SOP 510.02.01.002), and 2) employees' official use of computing devices, electronic mail, and the internet (SOP 141.00.06.008). Dkt. 153-1 at 9–10; Mechling Decl. Exs. 17 & 20. Plaintiffs attempt to portray these SOPs as authority for their argument that IDOC employees who use their personal cell phones for work purposes must preserve their personal cell phone data as public records. But a plain reading of the SOPs shows that they recognize a clear distinction between personal cell phone records and government cell phone records. Under SOP 510.02.01.002, personal cell phone use must be limited "to ensure that such usage does not interfere with the performance of their duties," as distinguished from government "cell phones supported by the IDOC," which are not covered by the SOP. Mechling Decl. Ex 17. Instead, government cell phones are covered by SOP 141.00.06.008, which governs IDOC employees' use of _department computing devices_—i.e. government phones, computers, etc. Mechling Decl. Ex. 20.

The upshot is that government phones and computing devices are indeed subject to inspection, and IDOC has the right to access/inspect any files stored on those devices. _Id._ This includes searches "in connection with legal actions or other

external requests for information." *Id.* On the other hand, no such provisions apply to personal cell phones. These separate standards for government phones and personal phones makes sense, Plaintiffs' conflation of the two separate standards does not.

Under Plaintiffs' line of argument, personal cell phone records would become public records, with a duty to preserve them, the moment an IDOC employee uses the phone for "business purposes." Dkt. 153-1 at 9. This argument fails for at least two reasons.

First, there is no limiting principle. Once a device is found to have been used for "business purposes," according to Plaintiffs, "the phone itself is a discoverable data source." *Id.* But this would impose on State Defendants the extraordinary burden of ensuring that all personal cell phone data is preserved. For example, the parties agree that IDOC employees can send and receive work email from their personal phones. Those work emails are identifiable by a tag at the bottom of every email indicating that it was sent from a mobile phone (e.g. "Get Outlook for iOS"). The emails themselves are maintained on a government server, subject to agency retention policies, and within IDOC control. Indeed, thousands of these emails have been turned over in discovery. But according to Plaintiffs, this is not enough: the entire contents of IDOC employees' personal phones, not just their work emails, must be preserved and subject to IDOC inspection and control, meaning that IDOC employees give up all privacy in their personal cell phones the moment they are used for "business purposes." This standard is impracticable for IDOC to administer and

untenable for employees to accept.

Second, Plaintiffs' concept of "business purposes" is nebulous, sweeping in all manner of non-substantive cell phone communication as long as the communication is between co-workers. Plaintiffs offer no definition of what constitutes "business purposes." But the examples they offer suggest an unreasonably broad definition, which would include things like an employee texting his supervisor that he is stuck in traffic and will be late to a meeting, an employee texting a co-worker to see if his work email server is down, or an employee texting a colleague to see if he is available for a phone call. Any one of these non-substantive communications from an IDOC employee's personal cell phone could transform that phone into a public record, according to Plaintiffs.

### *Mischaracterized "examples" of IDOC employees sending or receiving texts "about issues central to this case."*

- Director Derrick texted IDOC personnel about transgender housing. (*Id.* Ex. 23).

Plaintiffs misinterpreted an email referencing "trans housing" as transgender housing. But the context of the email makes it clear that the reference is to *transitional housing*, because the email mentions GEO, which is a company IDOC contracts with for *transitional housing*.

- Chief Psychiatrist Walter Campbell and Associate Chief Heather Casady instructed IDOC and Centurion clinical supervisors on the gender dysphoria committee to text them in connection with a clinical supervisor meeting involving review of the gender dysphoria policy. (*Id.* Ex. 25).

Plaintiffs fail to include the context that the meeting, which occurred in January 2024, before HB 668 was even proposed in the legislature, was a two-day conference where the gender dysphoria policy was only one of a dozen topics covered. Drs. Campbell and Casady offered their phone numbers in case any of the attendees needed directions to the conference room.

- Chief Psychiatrist Walter Campbell texted a clinical supervisor on the gender dysphoria committee about what actions the clinical supervisor was taking in response to a homicide at ISCI. (*Id.* Ex. 16).

- The clinical supervisor on the gender dysphoria committee sent multiple texts to his clinical staff about the homicide at ISCI. (*Id.* Ex 16).

- Chief Psychiatrist Walter Campbell sent a number of texts asking the clinical supervisor on the gender dysphoria committee to follow up with his staff, the correctional staff, and ISCI leadership about the homicide. (*Id.* Ex. 16).

- Chief Psychiatrist Walter Campbell texted a clinical supervisor on the gender dysphoria committee about the clinical supervisor's time sheet. (*Id.* Ex. 16).

For each of the four examples above, Plaintiffs fail to include the context that, in Ex. 16, Dr. Campbell is documenting instances from the fall of 2021 where one of his former subordinates was having work attendance issues. Dr. Campbell resorted to texting his subordinate to keep track of his whereabouts**.**

Pointing out the mischaracterizations above is not meant to attribute any malintent to Plaintiffs, but rather to demonstrate the disconnect between Plaintiffs' understanding of cell phone use for "business purposes" and a more common understanding. Most people would view a text message to a supervisor asking for directions to a meeting, or a text to a subordinate asking when he'll be in the office, as incidental, non-substantive uses of an employee's personal cell phone. But in Plaintiffs' view, these are "text messages about issues central to this case" and they "reflect[] a deliberate, department-wide reliance on personal phones to conduct IDOC business. Dkt. 153-1 at 10–11.

The bottom line is that Plaintiffs have failed to meet their threshold burden to show spoliation—they have failed to show that the supposedly "lost" evidence

(personal cell phone data) is relevant to any party's claim or defense and they have failed to show that State Defendants had a duty to preserve that data.

### c.  Plaintiffs are not entitled to any of their requested sanctions

Under Rule 37(e), Plaintiffs are entitled to relief only if they can show ESI that should have been preserved is lost. Fed. R. Civ. P. 37(e). As argued above, Plaintiffs have failed to make that threshold showing. But even if they could have made such a showing—which they cannot—Plaintiffs would still need to show prejudice from the lost ESI or that State Defendants intended to deprive Plaintiffs of the information's use in the litigation. *Id.* Plaintiffs have not and cannot make either showing. They are, accordingly, not entitled to sanctions.

Plaintiffs assert they are entitled to sanctions under "the *Balla* factors." Dkt. 153-1 at 16; *Balla v. Idaho St. Bd. of Correction*, 119 F. Supp. 3d 1271, 1282 (D. Idaho 2015). But the *Balla* factors do not apply here. As this Court has recognized, a separate, more stringent, framework applies—not the *Balla* factors—when a party seeks sanctions for spoliation of ESI. *Hardy*, 2025 WL 252665, at *2. So, because Plaintiffs' claims of spoliation in this case involve ESI (cell phone data), the "more stringent" framework under Rule 37(e) applies. *Id.* Under that framework, a party seeking sanctions must show prejudice from the loss of ESI or that the opposing party acted with an intent to deprive them of the information. *Id.*

Plaintiffs do not claim State Defendants acted with an intent to deprive them of the cell phone records sought. With respect to prejudice, Plaintiffs argue "the loss of critical phone data from Director Tewalt has left significant evidentiary gaps." Dkt.

153-1 at 16. What those evidentiary gaps are and why they are significant, Plaintiffs do not say. The remedy Plaintiffs seek is for the Court to order discovery on discovery, an inquiry into data management, retention, and preservation practices. Plaintiffs assert that this discovery on discovery is "necessary to fill the evidentiary gaps." *Id.* Again, as to what those "evidentiary gaps" are or how this remedy fills them, Plaintiffs do not say. Alternatively, Plaintiffs request that the Court compel the production of cell phone records. *Id.* at 16–17. But again, Plaintiffs offer no explanation of exactly what prejudice they have suffered or how this remedy would cure it. In other words, even if Plaintiffs could show ESI was "lost" within the meaning of Rule 37(e)—which they cannot—Plaintiffs have nevertheless failed to show any prejudice that would entitle them to sanctions.

## II. Defendants have worked in good faith to resolve all discovery issues and provide Plaintiffs with all relevant discovery

State Defendants have cooperated throughout discovery. Plaintiffs are projecting when they accuse State Defendants of playing "procedural games." In fact, Plaintiffs are the ones who have shifted their position regarding cell phone records. At first Plaintiffs agreed that personal cell phone records were not relevant and did not need to be preserved in this case. And now Plaintiffs complain that those records were not preserved. Plaintiffs are the ones playing procedural games.

### A. Plaintiffs' have shifted their position regarding the relevance of cell phone records.

Plaintiffs' shifting positions on whether cell phone records are relevant in this case has resulted in this discovery litigation. During initial discussions regarding

discovery, the parties agreed that cell phone records were not relevant to Plaintiffs'

claim here. Maurer Decl. ¶ 4. Accordingly, the discovery plan the parties agreed to in

October 2024 specifically excluded cell phone data from the list of ESI to be preserved.

*Id.*; Dkt. 78. Again, this exclusion was a recognition that cell phones would have no

relevant, discoverable information in this case. There was, therefore, no duty to

preserve cell phone data, as the parties had agreed.

Four months later, however, in February of 2025, Plaintiffs abruptly shifted

their position. While the parties were discussing an extension of litigation deadlines,

Plaintiffs requested that cell phone records be added to the list of ESI to be preserved.

Mechling Decl. Ex. 4. After confirming that this request for preservation applied only

to named defendants Josh Tewalt and Bree Derrick and that the preservation only

applied from that point going forward, not retroactively, State Defendants agreed to

this request. Maurer Decl. ¶ 5, Ex. A. At no point, however, did State Defendants

agree that cell phone records were relevant or discoverable. Furthermore, at no point

did State Defendants advise Plaintiffs to subpoena Josh Tewalt's cell phone records.

Then in April 2025, the parties held a discovery meeting wherein Plaintiffs

requested that State Defendants "locate and produce Josh Tewalt's phone records and

other ESI." *Id.* In response, State Defendants reiterated their agreement was to

preserve cell phone records only as of the date of the amended discovery plan, not

retroactively. *Id.*

In May of 2025, State Defendants objected to Plaintiffs' discovery request to

produce personal cell phone records, noting the request constituted a fishing

expedition. Mechling Decl. Ex. 9. The parties mediated this dispute with the Court's clerk. The clerk agreed that IDOC employees' personal cell phone records, as a general matter, were not relevant to this case. She also suggested Plaintiffs' request for personal cell phone records was a fishing expedition. Maurer Decl. at ¶ 6.

Now five months later, Plaintiffs claim spoliation because State Defendants did exactly what was agreed to—preserved cell phone data only as of the date of the amended discovery plan. Plaintiffs are playing discovery "gotcha." They are crying foul on State Defendants for not preserving personal cell phone records Plaintiffs now claim to be crucial. But their initial position when discovery began was that personal cell phone records were not relevant and need not be preserved.

To recap: Plaintiffs initially agreed that cell phone records are irrelevant and the parties have no duty to preserve them. Then four months later, Plaintiffs changed their mind and requested that cell phone records be preserved. State Defendants agreed to this request, but not retroactively. Then Plaintiffs waited another five months and filed this motion complaining that cell phone records were not preserved retroactively. Plaintiffs' gotcha gamesmanship—where they effectively created their own spoliation issue by stating there is no duty to preserve cell phone data, and then complaining that cell phone data has not been preserved—is sanctionable under Rule 11(b) and should be condemned.

## B. The parties have worked together closely throughout discovery to avoid issues.

The parties have held weekly discovery meetings, stretching back to early February of this year. Each week the parties have had the opportunity to raise and

address issues. And State Defendants have worked in good faith to resolve any issues and provide Plaintiffs all relevant documents they have requested. Twice when the parties encountered impasses, the issues were productively mediated. Thus, Plaintiffs' claim that State Defendants have engaged in discovery "stonewalling" is patently false.

In particular, Plaintiffs' claim that State Defendants agreed to provide discovery on discovery but then did a "bait and switch maneuver" [Dkt. 153-1 at 6] is false. State Defendants have strongly and consistently opposed any discovery on discovery. Maurer Decl. ¶ 7, Ex. B.

Similarly, Plaintiffs' claim that State Defendants encouraged them to "subpoena…cell phone records directly from the phone carriers" but then filed a motion to quash when Plaintiffs did so [Dkt. 153-1 at 2] is false. State Defendants have consistently opposed Plaintiffs' attempts to obtain IDOC employees' personal cell phone records. In fact, in a discovery meeting on July 30, 2025, when Plaintiffs indicated they were planning to subpoena Josh Tewalt's personal cell phone records, State Defendants, far from encouraging this attempt, instead sought to block it and informed Plaintiffs they would be seeking a protective order. Maurer Decl. ¶ 8, Ex. C.

## CONCLUSION

State Defendants request that this Court deny Plaintiffs' motion for spoliation sanctions and deny the request to compel production of cell phone data.

DATED:  September 26, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By:  ___/s/ Matthew L. Maurer_____
        MATTHEW L. MAURER
        Deputy Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 26, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Paul Carlos Southwick
psouthwick@acluidaho.org

Emily Myrei Croston
ecroston@acluidaho.org

Malita Picasso
mpicasso@aclu.org

Chase B. Strangio
cstrangio@aclu.org

Leslie J. Cooper
lcooper@aclu.org

Alexandra Johnson
a.johnson@aclu.org

Carlisle S. Pearson
pearsoncs@ballardspahr.com

Harlan T. Mechling
mechlingh@ballardspahr.com

Nicholas J.H. Mercado
mercadon@ballardspahr.com

Pilar C. French
frenchp@lanepowell.com

*Attorneys for Plaintiff*

Christina M. Hesse
cmh@dukeevett.com

Michael J. Bentley
mbentley@bentley.com

*Attorneys for Defendants Centurion of Idaho, LLC and Centurion Health*

/s/ Matthew L. Maurer
MATTHEW L. MAURER