RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

JAMES J. SIMERI, ISB #12332
GREGORY E. WOODARD, ISB #11329
MATTHEW L. MAURER, ISB #12575
DAVID J. MYERS, ISB #6528
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
james.craig@ag.idaho.gov
james.simeri@ag.idaho.gov
greg.woodard@ag.idaho.gov
matthew.maurer@ag.idaho.gov
david.myers@ag.idaho.gov

*Attorneys for State Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBINSON, *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; *et al.*,<br><br>*Defendants.* | Case No. 1:24-cv-00306-DCN<br><br>**REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION FOR PROTECTIVE ORDER [DKT. 144]** |

Plaintiffs have opposed State Defendants' motion for a protective order, arguing that the personal cell phone records they have subpoenaed for Mr. Tewalt and Dr. Campbell are "one of the most probative sources of evidence in this case." Dkt. 155 at 1. Plaintiffs need these personal cell phone records, they claim, because the records contain IDOC employees' contemporaneous opinions regarding the merits of § 18-8901, the statute Plaintiffs have challenged as unconstitutional. *Id.* at 1–2.

What Plaintiffs fail to make clear is how phone records—mere logs of texts and calls—from Mr. Tewalt's and Dr. Campbell's personal cell phones having any bearing whatsoever on the constitutionality of § 18-8901. To be clear, Mr. Tewalt and Dr. Campbell had no role in proposing, drafting, voting on, or ratifying the statute Plaintiffs are challenging. This means that Mr. Tewalt's and Dr. Campbell's opinions about whether § 18-8901's prohibition on cross-sex hormones is harmful or helpful are completely irrelevant. They were not the ones ordering the prohibition—that was the legislature who passed the law. Their opinions of the law have zero relevance to this case.

But even if Mr. Tewalt's and Dr. Campbell's opinions on § 18-8901 were relevant, the cell phone records Plaintiffs have subpoenaed wouldn't reveal those opinions. The records simply contain logs of texts and calls, no content. State Defendants pointed this fact out in their motion, and it is undisputed. In their written opposition to State Defendants' motion, Plaintiffs completely ignore this issue. Instead, Plaintiffs continue to repeat their claim that Mr. Tewalt's and Dr. Campbell's "text messages…provide some of the most contemporaneous and

REPLY IN SUPPORT OF STATE DEFENDANTS'
MOTION FOR PROTECTIVE ORDER [DKT. 144]—1

unfiltered evidence…critical to proving" Plaintiffs' case [Dkt. 155 at 5]—but they know full well the records they have subpoenaed contain absolutely no text messages, only logs of texts and calls.

The bottom line is that the personal cell phone records Plaintiffs have subpoenaed have no relevance whatsoever to this case and the disclosure of those private records would be a substantial invasion of privacy. There is, therefore, good cause for the Court to quash Plaintiffs' subpoena and issue a protective order under Rule 26(c) forbidding the discovery of Mr. Tewalt's and Dr. Campbell's personal cell phone records.

## ARGUMENT

### I. Personal cell phone records are not relevant to the constitutionality of the statute.

Mr. Tewalt's and Dr. Campbell's personal cell phone records have no bearing on whether § 18-8901 is constitutional. Plaintiffs' sole claim is that cross-sex hormone treatment is medically necessary for some transgender inmates and that § 18-8901's prohibition on that treatment for inmates in IDOC custody amounts to cruel and unusual punishment in violation of the Eighth Amendment. State Defendants assert that the Idaho legislature has the authority to determine that cross-sex hormones are never medically necessary and that § 18-8901 is a reasonable measure to protect inmates, the state's medical and correctional systems, and citizens. Thus, the key issue is medical necessity, which is a question not for Mr. Tewalt and Dr. Campbell, but for the legislature.

Moreover, the information Plaintiffs seek—Mr. Tewalt's and Dr. Campbell's personal cell phone records from their wireless carriers—would show, at most, only logs of calls and text messages, not the content of any communication itself. A discovery request for contentless logs regarding irrelevant communications is the very definition of discovery that is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

### A. The cases Plaintiffs cite regarding deliberate indifference are inapposite.

Plaintiffs argue that because they must prove deliberate indifference under the Eighth Amendment, they need "contemporaneous evidence of what [Mr. Tewalt and Dr. Campbell] knew and how they responded" regarding the implementation of § 18-8901. Dkt. 155 at 5. Plaintiffs cite Eighth Amendment deliberate indifference cases where text messages were relied upon. *Id.* at 5–6. But all the cases Plaintiffs cite involve claims against specific employees taking specific actions that are challenged as deliberately indifferent to the plaintiff's serious medical needs. None of the cases involves a challenged statute, as in this case. And even if Mr. Tewalt and Dr. Campbell believed cross-sex treatments are medically necessary for prisoners, the fact that they followed the law prohibiting those treatments does not show that they were deliberately indifferent.

Plaintiffs argue that, since cell phone records were relevant in other Eighth Amendment cases, they should be relevant in this Eighth Amendment case. But Plaintiffs' argument elides decisive differences between the cases they cite and this case. For example, Plaintiffs cite *Cole v. McAllister*, 548 F. Supp. 3d 985, 990 (D.

Idaho 2021), in support of their argument. In that case, a medical provider was alleged to have been deliberately indifferent to an inmate's medical needs, which resulted in the inmate's death. *Id.* at 987. In scrutinizing the adequacy of the defendant's medical care to the inmate, the court relied on text messages that showed what the defendant knew about the inmate's medical condition, when he knew about the condition, and how he responded. *Id.* at 993.

The crucial distinction from *Cole*—and from all the cases Plaintiffs cite in support of their argument—is obvious: those plaintiffs were not bringing a blanket challenge to a statute, they were challenging specific actions of specific defendants, for which cell phone records had specific relevance. Here, Plaintiffs have not articulated and cannot articulate any specific relevance for Mr. Tewalt's and Dr. Campbell's personal cell phone records because Plaintiffs' claim does not relate to any specific actions that Mr. Tewalt and Dr. Campbell took. Instead, Plaintiffs seek their personal cell phone records to obtain their opinions on a statute they did not enact regarding medical treatment over which they have no control—that is, Plaintiffs seek a fishing expedition.

### B. Records from the wireless carrier would have no content, which completely undermines Plaintiffs' argument for their relevance.

The cell phone call and text records that Plaintiffs seek to obtain from Mr. Tewalt's and Dr. Campbell's wireless carriers would have no content of the communications themselves; at most the logs would show metadata—i.e., the dates that calls and texts were sent or received on those individuals' cell phones and the phone numbers of the senders or recipients of those communications.

As noted above, Plaintiffs have completely ignored this argument in their opposition to State Defendants' motion for a protective order. But it is devastating to their argument for the relevance of the subpoenaed cell phone records. Plaintiffs argue that "contemporaneous and unfiltered" text messages are not only relevant, but "critical" to proving their case. Dkt. 155 at 5. The cell phone records Plaintiffs have subpoenaed, however, contain no text messages at all, "unfiltered" or otherwise. The subpoenaed records contain only logs of texts and calls. And as to how those logs are relevant to this case, Plaintiffs offer not a word.

## II. Good cause exists to prohibit Plaintiffs from obtaining Mr. Tewalt's and Dr. Campbell's personal cell phone records.

### A. Case law clearly supports State Defendants' arguments regarding standing and good cause.

In their opposition to the motion for protective order, Plaintiffs argue that State Defendants lack standing to challenge their third-party subpoenas. Dkt. 155 at 10. They assert that "[a] party may challenge a subpoena served on a third party only if it demonstrates a personal right or privilege in the materials sought." *Id.* (citing *Diamond State Ins. Co. v. Rebel Oil Co.,* 157 F.R.D. 691, 695 (D. Nev. 1994). But Plaintiffs completely ignore the on-point—and more recent—case law cited in State Defendants' motion papers that directly contradicts this assertion. *See Cabell v. Zorro Prods., Inc.,* 294 F.R.D. 604, 607 (W.D. Wash. 2013) ("Although typically only the recipient of a subpoena has standing to assert objections, '[a] party has standing to challenge a subpoena issued to third parties where its own interests may be implicated.") (quoting *Johnson v. Bancorp*, 2012 WL 6726523, at *2 (W.D. Wash. 2012)); *see also Bite Tech, Inc. v. X2 Impact, Inc.*, 2013 WL 195598, at *4 (W.D. Wash.

2013) ("Parties are also permitted to seek a protective order from the presiding court in order to restrict the party seeking discovery from asserting certain requests from third parties.")

Plaintiffs also assert in their opposition that State Defendants failed to show good cause under Rule 26(c) because "the motion is devoid of evidentiary support." Dkt. 155 at 13. Plaintiffs claim that State Defendants needed "declarations or affidavits…showing harm." *Id.* But again, Plaintiffs completely ignore the case law cited in State Defendants' motion papers, which states that "[a] showing of irrelevancy of the proposed discovery can satisfy the good cause requirement of Rule 26(c)." *B.P. v. City of Johnson City*, 2024 WL 4844119, at *4 (E.D. Tenn. Nov. 20, 2024) (quotation omitted). State Defendants have demonstrated, at length, the "irrelevancy" of the personal cell phone records Plaintiffs seek, dispensing with the need for declarations or affidavits.

Moreover, State Defendant's hardly need an affidavit to establish that Mr. Tewalt and Dr. Campbell have personal, private communications in their personal cell phone records and that disclosing those records would constitute a massive invasion of their privacy. Good cause exists for instituting a protective order to prohibit such a disclosure and prevent the harm to their privacy.

### B. Plaintiffs, not State Defendants, have shifted their position regarding the relevance of cell phone records.

Plaintiffs argue that "[t]his discovery dispute exists only because of State Defendants' obstructive discovery tactics." Dkt. 155 at 9. But Plaintiffs are projecting when they charge State Defendants with "procedural gamesmanship." *Id.* at 8. In

fact, Plaintiffs are the ones who have shifted their position regarding cell phone records. At first Plaintiffs agreed that personal cell phone records were not relevant and did not need to be preserved in this case. But now Plaintiffs complain that those records were not preserved.

Plaintiffs' shifting positions—not State Defendants' "obstructive tactics"—have resulted in this discovery dispute. During initial discussions regarding discovery, the parties agreed that cell phone records were not relevant to Plaintiffs' claim here. Maurer Decl. ¶ 4. Accordingly, the discovery plan the parties agreed to in October 2024 specifically excluded cell phone data from the list of ESI to be preserved. *Id.*; Dkt. 78. Again, this exclusion was a recognition that cell phones would have no relevant, discoverable information in this case. There was, therefore, no duty to preserve cell phone data, as the parties had agreed.

Four months later, however, in February of 2025, Plaintiffs abruptly shifted their position. While the parties were discussing an extension of litigation deadlines, Plaintiffs requested that cell phone records be added to the list of ESI to be preserved. Mechling Decl. Ex. 4. After confirming that this request for preservation applied only to named defendants Josh Tewalt and Bree Derrick and that the preservation only applied from that point going forward, not retroactively, State Defendants agreed to this request. Maurer Decl. ¶ 5; Ex. A. At no point, however, did State Defendants agree that cell phone records were relevant or discoverable. Furthermore, at no point did State Defendants advise Plaintiffs to subpoena Josh Tewalt's cell phone records.

Then in April 2025, the parties held a discovery meeting wherein Plaintiffs

Reply in Support of State Defendants'<br>Motion for Protective Order [Dkt. 144]—7

requested that State Defendants "locate and produce Josh Tewalt's phone records and other ESI." *Id.* In response, State Defendants reiterated their agreement was to preserve cell phone records only as of the date of the amended discovery plan, not retroactively. *Id.*

In May of 2025, State Defendants objected to Plaintiffs' discovery request to produce personal cell phone records, noting the request constituted a fishing expedition. Mechling Decl. Ex. 9. The parties mediated this dispute with the Court's clerk. The clerk agreed that IDOC employees' personal cell phone records, as a general matter, were not relevant to this case. She also suggested Plaintiffs' request for personal cell phone records was a fishing expedition. Maurer Decl. at ¶ 6.

Now five months later, Plaintiffs claim spoliation because State Defendants did exactly what was agreed to—preserved cell phone data only as of the date of the amended discovery plan. Plaintiffs are playing discovery "gotcha." They are crying foul on State Defendants for not preserving personal cell phone records Plaintiffs now claim to be crucial. But their initial position when discovery began was that the personal cell phone records were not relevant and need not be preserved.

To recap: Plaintiffs initially agreed that cell phone records are irrelevant and the parties have no duty to preserve them. Then four months later, Plaintiffs changed their mind and requested that cell phone records be preserved. State Defendants agreed to this request, but not retroactively. Then Plaintiffs waited five months and filed this motion complaining that cell phone records were not preserved retroactively. Plaintiffs' gotcha gamesmanship—where they effectively created their

REPLY IN SUPPORT OF STATE DEFENDANTS'
MOTION FOR PROTECTIVE ORDER [DKT. 144]—8

own spoliation issue by stating there is no duty to preserve cell phone data, and then complaining that cell phone data has not been preserved—is sanctionable under Rule 11(b) and should be condemned.

### CONCLUSION

State Defendants request that this Court quash Plaintiffs' subpoenas and issue a protective order forbidding the discovery of Mr. Tewalt's and Dr. Campbell's personal cell phone records.

DATED: September 26, 2025

                                      STATE OF IDAHO
                                      OFFICE OF THE ATTORNEY GENERAL

                                      By:   /s/ *Matthew L. Maurer*
                                               MATTHEW L. MAURER
                                               Deputy Attorney General

# CERTIFICATE OF SERVICE

I certify that on September 26, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Paul Carlos Southwick
psouthwick@acluidaho.org

Emily Myrei Croston
ecroston@acluidaho.org

Malita Picasso
mpicasso@aclu.org

Chase B. Strangio
cstrangio@aclu.org

Leslie J. Cooper
lcooper@aclu.org

Alexandra Johnson
a.johnson@aclu.org

Carlisle S. Pearson
pearsoncs@ballardspahr.com

Harlan T. Mechling
mechlingh@ballardspahr.com

Nicholas J.H. Mercado
mercadon@ballardspahr.com

Pilar C. French
frenchp@lanepowell.com

*Attorneys for Plaintiff*

Christina M. Hesse
cmh@dukeevett.com

Michael J. Bentley
mbentley@bentley.com

*Attorneys for Defendants Centurion of Idaho, LLC and Centurion Health*

/s/ *Matthew L. Maurer*
MATTHEW L. MAURER

REPLY IN SUPPORT OF STATE DEFENDANTS'
MOTION FOR PROTECTIVE ORDER [DKT. 144]—10