UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLE ROBINSON, et al.,<br><br>　　Plaintiffs,<br><br>v.<br><br>RAUL LABRADOR, et al.,<br><br>　　Defendants. | Case No. 1:24-cv-00306-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are Plaintiffs' Motion to Amend Class Complaint (Dkt. 158) and sixth Motion for Preliminary Injunction (Dkt. 167). The Motion to Amend seeks to substitute Izaiha Singer as class representative for previously dismissed representative Rose Mills. The Motion for Preliminary Injunction seeks the same relief as the Court's five previously issued preliminary injunctions (Dkts. 58; 95; 120; 137; 150), the latest of which is set to expire on December 1, 2025. State Defendants do not oppose the Motion to Amend but oppose the Motion for Preliminary Injunction.[1]  Dkt. 177. Plaintiffs have replied. Dkt. 179.[2] Upon consideration, and for the reasons set forth below, the Court GRANTS both Motions.

---

[1] The "State Defendants" are several Idaho state officials, all sued in their official capacities: Brad Little, Governor of the State of Idaho; Raul Labrador, Idaho Attorney General; Josh Tewalt, Director of the Idaho Department of Corrections; and Bree Derrick, Deputy Director of the Idaho Department of Corrections. Defendants Centurion Health and Centurion of Idaho, LLC (together, "Centurion"), which provide medical care for prisoners in state custody, do not oppose Plaintiffs' Motion.

[2] Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

As the Court has discussed extensively in its five prior Orders, Plaintiff Katie Heredia[3] challenges the constitutionality of Idaho Code § 18-8901 (the "Act"), which took effect on July 1, 2024. The Act prohibits the use of public funds for medical interventions—surgical or otherwise—that "alter[] the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex[.]" *Id.* at § 18-8901(2). Such interventions have been referred to as "gender-affirming care."

Heredia is a transgender woman currently incarcerated in a facility administered by the Idaho Department of Corrections ("IDOC"). Heredia brings this claim as a putative class action on behalf of "all incarcerated persons in the custody of IDOC who are, or will be diagnosed with gender dysphoria, and are receiving, or would receive, hormone therapy proscribed by [the Act]." Dkt. 1, at 4. Heredia argues that the Act denies inmates diagnosed with gender dysphoria necessary medical treatment in violation of the Eighth Amendment and 42 U.S.C. § 1983. Dkt. 1, at 18–20. In a prior order, the Court certified the proposed class and enjoined enforcement of the Act as it applied to the use of state funds for providing hormone therapy while this lawsuit was pending. Dkt. 58, at 28.

However, 18 U.S.C. § 3626(a)(2) provides that injunctions pertaining to prison conditions automatically expire after 90 days. Thus, since the Court entered the first injunction, the Plaintiffs have sought a new preliminary injunction every three months. *See*

---

[3] Katie Heredia's legal name is Cole Robinson. At times, Katie Heredia has been referred to as Katie Robinson. The Court will use Heredia's preferred name throughout this Order.

Dkts. 80; 113; 134; 143; 167. The Court has subsequently issued those new injunctions on a showing by Plaintiffs that preliminary relief is still warranted. *See* Dkts. 95, 120, 137; 150.

In its most recent Order, the Court dismissed Heredia's co-plaintiff and co-class representative Rose Mills because Mills was released from IDOC custody. Plaintiffs subsequently moved to amend their pleadings to reflect Mills's dismissal and to add a new class representative, Izaiha Singer. Dkt. 158. Defendants do not oppose the Motion to Amend. Dkt. 158-1, at 1–2.

The Court's most recent injunction is set to expire on December 1, 2025. Dkt. 150. Accordingly, Plaintiffs moved the Court for a sixth injunction on October 31, 2025. Dkt. 167. Defendants responded on November 12, and Plaintiffs replied on November 19. Dkt. 177; 179.

The matters are ripe for decision.

### III. LEGAL STANDARDS

**A. Fed. R. Civ. P. 15(a)**

Rule 15 enables a party to amend its pleadings at any time with consent of all parties or by leave of the Court. Fed. R. Civ. P. 15(a)(2). The Court should grant leave to amend freely when justice so requires. *Id.* "Amendment under the Federal Rules of Civil Procedure should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999) (cleaned up).

### B. 18 U.S.C. § 3626(a)(2)

Under the Prison Litigation Reform Act ("PLRA"), when a court enters a preliminary injunction in a civil action with respect to prison conditions, the injunction will automatically expire 90 days after its entry unless the court enters a final injunctive order finding "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation" before the 90 days expires. 18 U.S.C. § 3626(a)(2).

The Ninth Circuit has held that entering a second preliminary injunction after the first one has expired does not violate the PLRA. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001). It has also held that "§ 3626(a)(2) provides no way to *extend* a preliminary injunction other than making the injunctive relief final." *Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021). Reading these two cases together, the Court can enter a successive preliminary injunction, but it cannot extend its initial order without making it final after reaching the requisite findings. Plaintiffs retain the burden of proof as to whether preliminary relief is warranted. *Mayweathers*, 258 F.3d at 936.

### C. Preliminary Injunction

Plaintiffs must show "(1) they are likely to prevail on the merits of their substantive claims, (2) they are likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22–23 (2008)). When "the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry."

MEMORANDUM DECISION AND ORDER - 4

*Poretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

In the Ninth Circuit, these factors are evaluated "on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (cleaned up). Thus, a court may grant a preliminary injunction where the plaintiffs show only a "serious question" going to the merits—provided the balance of the hardships "tips sharply" in plaintiffs' favor and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 68 F.4th at 490–91. The serious-question standard is satisfied where a plaintiff raises questions "that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Id.* at 497 (cleaned up); *see also Fellowship of Christian Athletes*, 82 F.4th at 684 (explaining a showing of "serious questions" is "a lesser showing than likelihood of success").

Finally, under the PLRA, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). This is referred to as the needs-narrowness-intrusiveness requirement.

### IV. DISCUSSION

The Court will take up the Motion to Amend first, followed by each preliminary injunction factor and conclude with the needs-narrowness-intrusiveness requirement. The parties' arguments regarding the Motion for Preliminary Injunction largely incorporate the arguments made in their prior filings. The Court's analysis will, therefore, remain largely unchanged as well.

### A. Motion to Amend

Plaintiffs argue that leave to amend should be granted because Singer is already a member of the Plaintiff class, the Court dismissed one of the two class representatives recently, and the discovery burden on the Defendants would be relatively light. Dkt. 158-1, at 2–3. Defendants do not oppose the Motion. Dkt. 158-1, at 2. The Court finds that good cause exists to permit amendment here, and the Motion is accordingly GRANTED.

### B. Preliminary Injunction

*1. Serious Question Going to the Merits*

In its prior Orders, the Court found that Plaintiffs' Complaint presents a serious question going to the merits. Dkt. 95, at 8. Plaintiffs note that none of the material facts have changed since the Court entered its fifth preliminary injunction and incorporate their previous arguments by reference. Dkt. 167-1, at 3; 179, at 4. State Defendants incorporate their prior arguments, Dkt. 177, at 3, before adding a few recent judicial opinions for good measure. *See generally* Dkt. 177.

Significant questions remain in this case, notwithstanding State Defendants' new citations. Two cases require distinguishing here. State Defendants first cite to *Hoffer v. Sec'y, Fla. Dept. of Corr.*, 973 F.3d 1263 (11th Cir. 2020), where the Eleventh Circuit noted that Courts cannot apply a "best available" standard in lieu of the Constitutional "minimally adequate care" standard. In *Hoffer*, the plaintiffs argued that the state could not raise a treatment's cost as a defense to deliberate indifference liability. *Id.* at 1277. The Eleventh Circuit disagreed, finding that the state can consider cost in selecting a minimally adequate treatment plan. *Id.*

MEMORANDUM DECISION AND ORDER - 6

Here, however, Idaho is not attempting to eliminate gender affirming care on cost grounds. Rather, the State seeks to protect Idahoans from the harmful effects of gender affirming care which the Idaho Legislature purportedly identified. Dkt. 58, at 8–9. Because State Defendants objection to gender affirming care focuses on the wisdom of the treatment rather than its feasibility or cost, *Hoffer* is minimally relevant here.

State Defendants also cite to *Clark v. Valletta*, 157 F.4th 201 (2d Cir. 2025). In *Clark*, the Second Circuit concluded the Eighth Amendment did not guarantee a particular inmate a right to a particular preferred medical intervention (vaginoplasty). *Id.* at 212. Critically, however, the Second Circuit concluded that Connecticut complied with the Eighth Amendment because it provided other significant treatments—including treatments the Act would prohibit—for the plaintiff's gender dysphoria. *Id.* at 217. Because the Act does not deny a particular plaintiff a particular course of treatment but rather denies a class of inmates a class of treatments, *Clark* does not counsel against issuing a preliminary injunction here.

Indeed, *Clark* recognized what this Court has consistently held: "medical experts disagree about how to treat gender dysphoria." *Clark*, 157 F.4th at 216. While that disagreement may ultimately spell trouble for Plaintiffs, for now it suggests that a significant question remains. The Court once again has no new evidence that circumstances have changed, and the Court's previous reasons for finding a serious question as to the merits in this case still stand. Thus, the Court incorporates its reasoning in its previously-issued decisions regarding this matter (Dkts. 58, at 5–9; 95, at 8–9; 120, at 6–7; 137, at 5–6; 150, at 5–7) and finds this factor weighs in favor of another preliminary injunction.

*2. Irreparable Harm*

Neither party presents new arguments or evidence regarding the irreparable harm factor. The Court, therefore, incorporates its previous analyses regarding this prong. Dkts. 58, at 9–10; 95, at 9–11; 120, at 7–8; 137, at 6–7; 150, at 7. State Defendants have an interest in enforcing duly enacted laws. *See* Dkt. 137, at 6. But Plaintiffs have presented evidence that they would suffer severe physiological and psychological repercussions should Defendants discontinue their medication. *See* Dkt. 120, at 7–8. The Court finds that the irreparable harm prong continues to "tip sharply" in favor of the Plaintiffs. *See Alliance for the Wild Rockies*, 68 F.4th at 490–91.

*3. Balance of Equities/Public Interest*

Much as before, both these factors weigh in favor of the Plaintiffs. State Defendants have not raised any new arguments to counter the Court's reasoning in prior orders, and the Plaintiffs effectively argue the same reasoning is still pertinent. State Defendants remain silent on the potential burden of continuing to provide hormone therapy to the named Plaintiff and the class members. The balance of hardships weighs in favor of the Plaintiffs. And as previously addressed, the Court will continue to steer clear of potential constitutional impingement. The public interest factor weighs in favor of Plaintiffs.

*4. Needs-Narrowness-Intrusiveness Requirement*

Because the Court will not be altering the terms of the preceding preliminary injunction, it finds the additional requirements imposed by 18 U.S.C. § 3626(a)(2) continue to be met. The scope of the preliminary injunction continues to only enjoin the enforcement of the Act as it applies to class members receiving hormone therapy. *See* Dkt. 2, at 2. The

MEMORANDUM DECISION AND ORDER - 8

injunction remains narrowly drawn to only a small group of affected individuals receiving one type of gender-affirming treatment. It extends no further than necessary because it protects only those individuals who would have otherwise been eligible for hormone therapy under IDOC's previous policies, which, in turn, maintains the status quo and ensures no violation of class members' Eighth Amendment rights pending a final decision on the merits.[4]

Finally, the injunction continues to be the least intrusive means necessary to protect the class members' rights because it does not impose any burdens on prison operations beyond what IDOC had already self-imposed prior to the Act. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("What is important, and what the PLRA requires, is a finding that . . . the 'relief' . . . corrects the violations of the prisoners' rights with [as minimal of an impact as] possible on [a prison's] discretion over their policies and procedures."). Therefore, this preliminary injunction satisfies the needs-narrowness-intrusiveness requirement of the PLRA and can properly be issued.

## V. CONCLUSION

Plaintiffs have once again made the requisite showing that a preliminary injunction continues to be appropriate in this case. While case law continues to develop, none of the cases cited by the parties changes the Court's conclusion that a significant question remains, and further injunctive relief is warranted. Furthermore, the injunction once again

---

[4] The Court once again emphasizes this Order *is not* a final decision. It remains to be seen whether the disputed sections of Idaho Code § 18-8901 are constitutional. This Order simply allows the class members to continue to receive medication until the Court can make a final, informed decision in this case.

complies with the needs-narrowness-intrusiveness requirement of the PLRA. Accordingly, the Court orders a sixth preliminary injunction against enforcement of the Act as described herein.

## VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Motion to Amend (Dkt. 158) is GRANTED.
2. Izaiha Singer is added as a class representative.
3. Plaintiffs' Motion for Preliminary Injunction (Dkt. 167) is GRANTED.
4. The Court enjoins enforcement of Idaho Code § 18-8901's prohibition on the use of state funds for purposes of providing hormone therapy as against the class for the next 90 days.[5]

DATED: November 25, 2025

David C. Nye
Chief U.S. District Court Judge

---

[5] This injunction takes effect on December 2, 2025, immediately after the expiration of the fifth injunction on December 1, 2025.

MEMORANDUM DECISION AND ORDER - 10