UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLE ROBINSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RAUL LABRADOR, et al., <br><br> Defendants. | Case No. 1:24-cv-00306-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiffs' Emergency Motion for Temporary Restraining Order. Dkt. 193. Plaintiffs ask the Court to temporarily restrain Defendants[1] from enforcing Idaho Code § 18-8901 ("the Act") until the Court can dispose of Plaintiff's Eighth Motion for a Preliminary Injunction (Dkt. 187).[2] Upon consideration, and for the reasons set forth below, the Court GRANTS the Motion and issues a TRO to take effect on June 1, 2026.

## II. BACKGROUND

Plaintiffs are a class of transgender individuals in the custody of the Idaho Department of Corrections ("IDOC") who challenge the constitutionality of the Act. They allege the Act, which prohibits the use of public funds for medical interventions that "alter[]

---

[1] The "State Defendants" are several Idaho state officials, all sued in their official capacities: Brad Little, Governor of the State of Idaho; Raul Labrador, Idaho Attorney General; Josh Tewalt, Director of the Idaho Department of Corrections; and Bree Derrick, Deputy Director of the Idaho Department of Corrections. Defendants Centurion Health and Centurion of Idaho, LLC (together, "Centurion"), which provide medical care for prisoners in state custody, do not oppose Plaintiffs' Motion.

[2] Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

MEMORANDUM DECISION AND ORDER - 1

the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex," violates the Eighth Amendment and 42 U.S.C. § 1983. Dkt. 1, at 18–20.

In a prior order, the Court certified the proposed class and enjoined enforcement of the Act as it applied to the use of state funds for providing hormone therapy while this lawsuit was pending. Dkt. 58, at 28. However, 18 U.S.C. § 3626(a)(2) provides that injunctions pertaining to prison conditions automatically expire after 90 days. Thus, since the Court entered the first injunction, the Plaintiffs have sought a new preliminary injunction every three months. *See* Dkts. 80; 113; 134; 143; 167; 183; 187. The Court has subsequently issued those new injunctions on a showing by Plaintiffs that preliminary relief is still warranted. *See* Dkts. 95, 120, 137; 150; 180. The Court's most recent injunction is set to expire on May 31, 2026. Dkt. 186. Plaintiffs moved the Court for an eighth injunction on April 6, 2026. Dkt. 183.

After the Court granted a stipulated motion to extend their time to respond, State Defendants responded. Dkt. 191. State Defendants attached three exhibits to their response totaling several dozen pages. *See* Dkts. 191-1; 191-2; 191-3. Plaintiffs' filed an unopposed motion to extend their time to reply to June 5, 2026. Dkt. 194. The Court granted that motion. Dkt. 195.

Since Plaintiffs' reply is now due after the seventh preliminary injunction is set to expire, Plaintiffs have sought a temporary restraining order to bridge the gap between the expiration of the seventh preliminary injunction and the Court's determination of the eighth motion. Dkt. 193. The Court expedited consideration of the emergency motion for a

MEMORANDUM DECISION AND ORDER - 2

temporary restraining order, Dkt. 196, Defendants have responded, Dkts. 197; 198, and Plaintiffs have replied, Dkt. 199.

The matter is ripe for decision.

### III. LEGAL STANDARDS

A plaintiff seeking a preliminary injunction or a temporary restraining order ("TRO") must establish "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (citation modified) A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); *see also* Fed. R. Civ. P. 65.

A key difference between a TRO and a preliminary injunction is its respective duration. A TRO is typically for a limited time, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n.1 (D. Or. 2018). Under certain limited conditions, a court may issue a TRO without a hearing and without notice to the adverse party. Fed. R. Civ. P. 65(b).

### IV. DISCUSSION

Plaintiffs argue the Court should issue a TRO to preserve the status quo—their uninterrupted access to proscribed treatments—while the Court determines whether to

MEMORANDUM DECISION AND ORDER - 3

issue an eighth preliminary injunction. Defendants, who largely incorporate their arguments against an eighth preliminary injunction itself, argue Plaintiffs cannot show a serious question going to the merits or a likelihood of irreparable harm.

### A.      Serious Question Going to the Merits

In its prior Orders, the Court found that Plaintiffs' Complaint presents a serious question going to the merits. *See* Dkt. 95, at 8. State Defendants argue Plaintiffs cannot show a likelihood of success on the merits or irreparable harm because State Defendants cannot be deliberately indifferent as a matter of law and because newly disclosed expert reports indicate Plaintiffs' treatments are not medically necessary. *See* Dkts. 198 (incorporating arguments against the Eighth Motion for Preliminary Injunction by reference); 191, at 2.

State Defendants—all of whom are individuals—argue they cannot be held liable for deliberate indifference because they would be acting according to state policy. Deliberate indifference requires subjective disregard of a known risk of harm, and State Defendants argue they cannot possess that mental state when they simply carry out the policy of the Act. In other words, they argue the Act provides a shield which immunizes them from deliberate indifference.

The Court finds there is a sufficiently serious question regarding State Defendants' liability argument to justify preserving the status quo because their argument presents unique doctrinal difficulties and because they have been sued in their official capacities. First, as State Defendants acknowledge, district courts across the country have declined to

MEMORANDUM DECISION AND ORDER - 4

immunize individuals for acting pursuant to an unconstitutional policy.[3] Although not discussed by the State Defendants, circuit level decisions in the Fifth and Tenth Circuits hold that compliance with policy is relevant to, but not dispositive of, the subjective prong of deliberate indifference. *See Johnson v. Sanders*, 121 F.4th 80, 91–92 (10th Cir. 2024); *Arenas v. Calhoun*, 922 F.3d 616, 626 (5th Cir. 2019).

In the broader context of § 1983 liability, the approach outlined in those circuit cases makes sense. Section 1983 provides tort liability for acts *under color of state law*. According state officers immunity from § 1983 deliberate indifference liability because they took an act under color of state law is a poor fit for this statutory context. As *Johnson* explains, state-level policies do not define "the rights and obligations enshrined in the Constitution." 121 F.4th at 91. The existence of a policy is still factually relevant—the fact that a person acted according to a policy may explain why he or she failed to subjectively appreciate a particular risk, for instance—but the policy is not legally dispositive. As *Johnson* explains:

> Where a defendant has subjective knowledge that a course of action or inaction required by policy creates or fails to address a serious risk to an inmate's health or safety, he may not escape constitutional liability by disregarding such risk in compliance with the policy. In such circumstances, the Constitution demands more of state actors charged with overseeing the carceral punishment of a convicted prisoner.
>
> But where, as here, there are no record facts establishing Dr. Sanders's actual knowledge—or awareness "of facts from which [an] inference could be drawn"—that a substantial risk of serious harm exists, no reasonable jury could find that he acted with deliberate indifference by hewing to correctional policy.

---

[3] *See* Dkt. 191, at 7–9 (collecting cases cutting against State Defendants' argument).

MEMORANDUM DECISION AND ORDER - 5

*Id.* at 92. The reasoning in cases like *Johnson* raise a serious question on the merits of State Defendants' policy arguments sufficient to justify a TRO.

Moreover, it is unclear whether State Defendants could benefit from their own argument. State Defendants are all sued in their official capacities for injunctive relief. Suits against state officers in their official capacities for purely prospective relief, also known as *Ex parte Young* actions, challenge the constitutionality of a state policy rather than an individual's application of that policy. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Thus, even if deliberate indifference did immunize individuals acting according to state policy, there is a significant question as to whether State Defendants are "individuals" under that principle in this case.

Finally, State Defendants argue Plaintiffs cannot show a likelihood on the merits based on their newly-disclosed expert report. Plaintiffs argue they should not be forced to chose between hasty briefing filed before the expiration of the seventh preliminary injunction and adequate briefing following an interruption of the status quo. Because the Court has previously found a significant question on the merits (*see* Dkts. 58, at 5–9; 95, at 8–9; 120, at 6–7; 137, at 5–6; 150, at 5–7; 180, at 6–9; 186, at 5–7), because the Court does not find State Defendants' newly-disclosed report dispositive on its face, and because the purpose of a TRO is to preserve the status quo until the Court can pass on the merits of a preliminary injunction request, the Court finds that a significant question remains notwithstanding State Defendants' newly-disclosed report.

Accordingly, the Court finds this factor weighs in favor of another preliminary injunction.

MEMORANDUM DECISION AND ORDER - 6

*2. Irreparable Harm*

State Defendants argue that Plaintiffs cannot show irreparable harm because named plaintiffs and class members have failed to take the prescribed treatments, were prescribed treatments without a finding of medical necessity, or experienced medical emergencies which may be attributable to hormone therapy. Yet State Defendants do not dispute that some of the class members are continuing to take hormone therapies at the direction of their physicians. The Court, therefore, finds its previous analyses regarding this prong is largely unchanged. Dkts. 58, at 9–10; 95, at 9–11; 120, at 7–8; 137, at 6–7; 150, at 7; 180, at 8; 186, at 7. State Defendants have an interest in enforcing duly enacted laws. *See* Dkt. 137, at 6. But Plaintiffs have presented evidence that they would suffer severe physiological and psychological repercussions should Defendants discontinue their medication. *See* Dkt. 120, at 7–8. The Court finds that the irreparable harm prong continues to "tip sharply" in favor of the Plaintiffs. *See Alliance for the Wild Rockies*, 68 F.4th at 490–91.

*3. Balance of Equities/Public Interest*

Much as before, both these factors weigh in favor of the Plaintiffs. State Defendants have not raised any new arguments to counter the Court's reasoning in prior orders, and the Plaintiffs effectively argue the same reasoning is still pertinent. State Defendants remain silent on the potential burden of continuing to provide hormone therapy to the named Plaintiff and the class members. The balance of hardships weighs in favor of the Plaintiffs. And as previously addressed, the Court will continue to steer clear of potential constitutional impingement. The public interest factor weighs in favor of Plaintiffs.

### 4. Needs-Narrowness-Intrusiveness Requirement

Because the Court's TRO will continue the terms of the preceding preliminary injunction, it finds the additional requirements imposed by 18 U.S.C. § 3626(a)(2) continue to be met. The scope of the TRO continues to only enjoin the enforcement of the Act as it applies to class members receiving hormone therapy. *See* Dkt. 2, at 2. The injunction remains narrowly drawn to only a small group of affected individuals receiving one type of gender-affirming treatment. It extends no further than necessary because it protects only those individuals who would have otherwise been eligible for hormone therapy under IDOC's previous policies, which, in turn, maintains the status quo and ensures no violation of class members' Eighth Amendment rights pending a final decision on the merits.[4]

Finally, the TRO continues to be the least intrusive means necessary to protect the class members' rights because it does not impose any burdens on prison operations beyond what IDOC had already self-imposed prior to the Act. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("What is important, and what the PLRA requires, is a finding that . . . the 'relief' . . . corrects the violations of the prisoners' rights with [as minimal of an impact as] possible on [a prison's] discretion over their policies and procedures."). Moreover, the TRO will expire automatically on the determination of the eighth motion for preliminary injunction or after the passage of fourteen days, whichever is earlier. Therefore, this TRO satisfies the needs-narrowness-intrusiveness requirement of

---

[4] The Court once again emphasizes this Order *is not* a final decision. It remains to be seen whether the disputed sections of Idaho Code § 18-8901 are constitutional. This Order simply allows the class members to continue to receive medication until the Court can make a final, informed decision in this case.

MEMORANDUM DECISION AND ORDER - 8

the PLRA and can properly be issued.

## V. CONCLUSION

Because the Court's decision of the eighth motion for a preliminary injunction will be aided by full briefing, and because the *Winter* factors justify maintaining the status quo under the circumstances, the Court GRANTS the Emergency Motion for a Temporary Restraining Order.

## VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Emergency Motion for Temporary Restraining Order (Dkt. 193) is GRANTED.

2. The Court temporarily restrains enforcement of Idaho Code § 18-8901's prohibition on the use of state funds for purposes of providing hormone therapy as against the class for fourteen days from the date it takes effect.[5] This Order will lift automatically on the Court's determination of the Eighth Motion for Preliminary Injunction (Dkt. 187).

DATED: May 28, 2026



David C. Nye
U.S. District Court Judge

---

[5] This TRO takes effect on June 1, 2026, immediately after the expiration of the seventh injunction on May 31, 2026.