UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLE ROBINSON, et al., | Case No. 1:24-cv-00306-DCN |
| Plaintiffs, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| RAUL LABRADOR, et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the Court is Plaintiffs' Eighth Motion for Preliminary Injunction. Dkt. 187. The Motion seeks the same relief as the Court's seven previously issued preliminary injunctions (Dkts. 58; 95; 120; 137; 150; 180; 186): an injunction prohibiting Defendants[1] from denying them gender affirming medical interventions.[2] Upon consideration, and for the reasons set forth below, the Court GRANTS the Motion and issues an Eighth Preliminary Injunction.

---

[1] The "State Defendants" are several Idaho state officials, all sued in their official capacities: Brad Little, Governor of the State of Idaho; Raul Labrador, Idaho Attorney General; Josh Tewalt, Director of the Idaho Department of Corrections; and Bree Derrick, Deputy Director of the Idaho Department of Corrections. Defendants Centurion Health and Centurion of Idaho, LLC (together, "Centurion"), which provide medical care for prisoners in state custody, do not oppose Plaintiffs' Motion.

[2] Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

## II. BACKGROUND

Plaintiffs are a class of transgender individuals in the custody of the Idaho Department of Corrections ("IDOC") who challenge the constitutionality of Idaho Code § 18-8901 (the "Act"). They allege the Act, which prohibits the use of public funds for medical interventions that "alter[] the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex," violates the Eighth Amendment and 42 U.S.C. § 1983. Dkt. 1, at 18–20.

In a prior order, the Court certified the proposed class and enjoined enforcement of the Act as it applied to the use of state funds for providing hormone therapy while this lawsuit was pending. Dkt. 58, at 28. However, 18 U.S.C. § 3626(a)(2) provides that injunctions pertaining to prison conditions automatically expire after 90 days. Thus, since the Court entered the first injunction, the Plaintiffs have sought a new preliminary injunction every three months. *See* Dkts. 80; 113; 134; 143; 167; 183; 187. The Court has subsequently issued those new injunctions on a showing by Plaintiffs that preliminary relief is still warranted. *See* Dkts. 95, 120, 137; 150; 180.

Plaintiffs moved the Court for an eighth injunction on April 6, 2026. Dkt. 187. After the Court granted a stipulated motion to extend their time to respond, State Defendants responded. Dkt. 191. State Defendants attached three exhibits to their response totaling several dozen pages. *See* Dkts. 191-1; 191-2; 191-3. Plaintiffs filed an unopposed motion to extend their time to reply to June 5, 2026. Dkt. 194. The Court granted that motion. Dkt. 195.

Since Plaintiffs' reply was now due after the seventh preliminary injunction would expire, Plaintiffs sought a temporary restraining order to bridge the gap between the expiration of the seventh preliminary injunction and the Court's determination of the instant Motion. Dkt. 193. The Court expedited consideration of the emergency motion for a temporary restraining order, Dkt. 196, and granted Plaintiffs a temporary restraining order on May 28, 2026 (to take effect after the expiration of the seventh injunction). Dkt. 200. Plaintiffs have now filed their reply. Dkt. 202.

The matter is ripe for decision.

### III. LEGAL STANDARDS

#### A.  18 U.S.C. § 3626(a)(2)

Under the Prison Litigation Reform Act ("PLRA"), when a court enters a preliminary injunction in a civil action with respect to prison conditions, the injunction will automatically expire 90 days after its entry unless the court enters a final injunctive order finding "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation" before the 90 days expires. 18 U.S.C. § 3626(a)(2).

The Ninth Circuit has held that entering a second preliminary injunction after the first one has expired does not violate the PLRA. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001). It has also held that "§ 3626(a)(2) provides no way to *extend* a preliminary injunction other than making the injunctive relief final." *Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021). Reading these two cases together, the Court can enter a successive preliminary injunction, but it cannot extend its initial order without making it

final after reaching the requisite findings. Plaintiffs retain the burden of proof as to whether preliminary relief is warranted. *Mayweathers*, 258 F.3d at 936.

### B. Preliminary Injunction

Plaintiffs must show "(1) they are likely to prevail on the merits of their substantive claims, (2) they are likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22–23 (2008)). When "the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Poretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

In the Ninth Circuit, these factors are evaluated "on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (cleaned up). Thus, a court may grant a preliminary injunction where the plaintiffs show only a "serious question" going to the merits—provided the balance of the hardships "tips sharply" in plaintiffs' favor and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 68 F.4th at 490–91. The serious-question standard is satisfied where a plaintiff raises questions "that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Id.* at 497 (cleaned up); *see also Fellowship of Christian Athletes*, 82 F.4th at 684 (explaining a showing of "serious questions" is "a lesser showing than likelihood of success").

MEMORANDUM DECISION AND ORDER - 4

Finally, under the PLRA, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). This is referred to as the needs-narrowness-intrusiveness requirement.

## IV. DISCUSSION

The State Defendants raise new and interesting arguments, both factual and legal. But at this stage, those arguments do not materially change the Court's prior analyses in its seven prior preliminary injunctions. The Court, therefore, issues an eighth preliminary injunction.[3]

### A.      Serious Question Going to the Merits

In its prior Orders, the Court found Plaintiffs' Complaint presents a serious question going to the merits. *See* Dkt. 95, at 8. State Defendants now argue Plaintiffs cannot show a likelihood of success on the merits or irreparable harm because State Defendants cannot be deliberately indifferent as a matter of law and because newly disclosed expert reports indicate Plaintiffs' treatments are not medically necessary. *See* Dkt. 191, at 2. The Court previously discussed State Defendants' new arguments in its Order granting Plaintiffs a temporary restraining order. Dkt. 200.

The individual State Defendants first argue they cannot be held liable for deliberate indifference because, if they were to deny gender affirming care to inmates in compliance

---

[3] Both parties moved to seal their briefing on the Motion for Eighth Preliminary Injunction. Dkts. 192; 201. Because the briefing and exhibits provisionally filed under seal include information designated Confidential under the Stipulated Protective Order, Dkt. 86, the Motions are GRANTED.

with the Act, their acts would be dictated by state law rather than their own volition. Deliberate indifference requires subjective disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). State Defendants argue they cannot possess that mental state when simply carrying out the policy of the Act. In other words, they argue the Act provides a shield which immunizes them from deliberate indifference.

State Defendants are mistaken. As Plaintiffs point out, the Ninth Circuit has implicitly recognized the validity of purely prospective actions against state officers to remedy policies which, if enforced, would require officers to act with deliberate indifference. *See Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014). In *Peralta*, the plaintiff argued that the defendants, state prison officials, were deliberately indifferent to his serious dental needs. *Id.* at 1081. The district court instructed the jury that "[a] doctor or dentist is not responsible for services which he or she could not render or cause to be rendered because the necessary personnel, financial, and other resources were not available . . . or which he or she could not reasonably obtain." *Id.* Peralta challenged the instruction on appeal.

The en banc Ninth Circuit affirmed the instruction, relying heavily on the fact that *Peralta* was a retrospective suit against a state official. In doing so, the court of appeals noted a state policy would not be a valid defense to an action for prospective relief from a deliberate indifference violation. *Id.* at 1083 ("Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations."). By recognizing state policies could lead to deliberate indifference violations which could not

MEMORANDUM DECISION AND ORDER - 6

be remedied retrospectively, the *Peralta* court inferred that actions for prospective relief (like Plaintiffs' action here) might be the *only* effective remedy for deliberate indifference caused by state policy. *Id.* at 1084 ("We have no quarrel with the dissenters' view that Peralta may have suffered an Eighth Amendment violation. If the state provided insufficient resources to accord inmates adequate medical care, it could be compelled to correct those conditions. But such a lawsuit could provide no redress for past constitutional violations . . . .") (citation modified).

The Ninth Circuit is not alone in recognizing that actions to enjoin policies which would cause deliberate indifference violations qualify as valid suits for relief. In *Fields v. Smith*, the Seventh Circuit held that plaintiffs could bring a suit to enjoin a state law which would violate the Eighth Amendment on its face. 653 F.3d 550, 556 (7th Cir. 2011); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 796 (9th Cir. 2019) (favorably citing *Fields v. Smith*). Although State Defendants criticize *Fields* for not considering state statutes as distinct from state policies, the Court finds the critique unavailing. The Seventh Circuit held there was no relevant distinction between state policies and state statutes because the standard of care was a matter of constitutional law; thus states cannot evade Eighth Amendment scrutiny using their general power to limit physician discretion. *See Fields*, 653 F.3d at 556–57.[4]

---

[4] The other reason State Defendants attempt to distinguish *Fields*—the fact that the *Fields* defendants did not produce evidence for another adequate treatment on the one hand or dispute the efficacy of hormone replacement therapy on the other—could prove significant. However, as this Court has repeatedly held, the ongoing debate regarding the proper course of treatment for gender dysphoria creates a significant question justifying an injunction. *See, e.g.*, Dkt. 180, at 5–7.

**MEMORANDUM DECISION AND ORDER - 7**

As the Court's prior order recognized, if individual plaintiffs sued for damages caused by the Act, the jury could consider whether the defendants' failed to subjectively appreciate a risk due to the Act. *See* Dkt. 200, at 5–6. But because Plaintiffs' action seeks to enjoin the Act's enforcement rather than impose liability on the defendants, the Act itself cannot constitute a defense. *See Peralta*, 744 F.3d at 1083.

State Defendants next argue Plaintiffs cannot show a likelihood of success on the merits based on their newly-disclosed expert report and declarations.

State Defendants point out that the record shows a genuine debate in the medical community about using cross-sex hormones to treat gender dysphoria. Dkt. 191, at 10. The Court has consistently held as much. But State Defendants now argue that the existence of a genuine debate regarding gender affirming care dooms Plaintiffs' case. Dkt. 191, at 9–10. State Defendants rely on *Gibson v. Collier*, where the Fifth Circuit held that, if the record shows genuine debate within the medical community at summary judgment, defendants cannot be held liable for deliberate indifference. 920 F.3d 212, 220–21 (2019).

*Gibson* is readily distinguishable. First, *Gibson* was decided at summary judgment, on a record which presented no evidence that the care sought was universally accepted. *Id.* at 220. Second, *Gibson* concerned sex reassignment surgery, whereas this case primarily concerns hormone replacement therapy. *Id.* And third, the Ninth Circuit has rejected *Gibson*'s reasoning, explicitly and at length. *Edmo*, 935 F.3d at 794–97.

Although Plaintiffs must show more at summary judgment, for now they need show only a "serious question going to the merits." *Alliance for the Wild Rockies*, 68 F.4th at 490–91. They have met that burden here by submitting expert reports indicating that

hormone replacement therapy is medically necessary in general and for at least some class members. *See, e.g.*, Dkts. 2-5; 114-5; 201-3; 201-4. State Defendants' new evidence is illuminating, but they fall short of totally discrediting Plaintiffs' position.[5] Once again, Plaintiffs have shown that there is at least a genuine debate in the medical community sufficient to justify a serious question going to the merits here.

Accordingly, the Court finds this factor weighs in favor of another preliminary injunction.

### B. Irreparable Harm

As the Court noted in its Order granting the TRO, State Defendants argue Plaintiffs cannot show irreparable harm because named plaintiffs and class members have failed to take the prescribed treatments, were prescribed treatments without a finding of medical necessity, or experienced medical emergencies which may be attributable to hormone therapy. Yet State Defendants do not dispute that some of the class members continue to take hormone therapies at the direction of their physicians. The Court, therefore, finds its analysis on this prong is largely unchanged from its previous orders. Dkts. 58, at 9–10; 95, at 9–11; 120, at 7–8; 137, at 6–7; 150, at 7; 180, at 8; 186, at 7; 200, at 7. State Defendants have an interest in enforcing duly enacted laws. *See* Dkt. 137, at 6. But Plaintiffs have presented evidence that they would suffer severe physiological and psychological repercussions should Defendants discontinue their medication. *See* Dkt. 120, at 7–8. The

---

[5] The Court finds the individual medical histories of the named plaintiffs minimally helpful at this stage. Plaintiffs are challenging a blanket statutory policy. Whether the policy's application to named plaintiffs supports the class's claims is a matter for summary judgment or trial. For now, it is enough that Robinson's doctors continue to prescribe hormone replacement therapy, whether Robinson takes that therapy or not.

Court finds that the irreparable harm prong continues to "tip sharply" in favor of the Plaintiffs. *See Alliance for the Wild Rockies*, 68 F.4th at 490–91.

### C. Balance of Equities/Public Interest

Much as before, both these factors weigh in favor of the Plaintiffs. State Defendants have not raised any new arguments to counter the Court's reasoning in prior orders, and the Plaintiffs effectively argue the same reasoning is still pertinent. State Defendants argue that each day the Act is enjoined Idaho continues to pay for procedures prohibited by Idaho law. But State Defendants remain silent as to the extent of that expense. The balance of hardships weighs in favor of the Plaintiffs. And as previously addressed, the Court will continue to steer clear of potential constitutional impingement. The public interest factor weighs in favor of Plaintiffs.

### D. Needs-Narrowness-Intrusiveness Requirement

The additional requirements imposed by 18 U.S.C. § 3626(a)(2) continue to be met. The eighth preliminary injunction only enjoins the enforcement of the Act as it applies to class members receiving hormone therapy. *See* Dkt. 2, at 2. The injunction remains narrowly drawn to only a small group of affected individuals receiving one type of gender-affirming treatment. It extends no further than necessary because it protects only those individuals who would have otherwise been eligible for hormone therapy under IDOC's

previous policies, which, in turn, maintains the status quo and ensures no violation of class members' Eighth Amendment rights pending a final decision on the merits.[6]

Finally, the injunction continues to be the least intrusive means necessary to protect the class members' rights because it does not impose any burdens on prison operations beyond what IDOC had already self-imposed prior to the Act. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("What is important, and what the PLRA requires, is a finding that . . . the 'relief' . . . corrects the violations of the prisoners' rights with [as minimal of an impact as] possible on [a prison's] discretion over their policies and procedures."). Therefore, this injunction satisfies the needs-narrowness-intrusiveness requirement of the PLRA and can properly be issued.

## V. CONCLUSION

Because the Court finds the *Winter* factors continue to justify maintaining the status quo under the circumstances, the Court GRANTS Plaintiffs' Eighth Motion for Preliminary Injunction.

## VI. ORDER

The Court HEREBY ORDERS:

1. Plaintiffs' Eighth Motion for Preliminary Injunction (Dkt. 187) is GRANTED.

2. State Defendants' Motion to Seal (Dkt. 192) and Defendants' Unopposed Motion to Seal (Dkt. 201) are GRANTED.

---

[6] The Court once again emphasizes this Order *is not* a final decision. It remains to be seen whether the disputed sections of Idaho Code § 18-8901 are constitutional. This Order simply allows the class members to continue to receive medication until the Court can make a final, informed decision in this case.

3.  The Court enjoins enforcement of Idaho Code § 18-8901's prohibition on the use of state funds for purposes of providing hormone therapy as against the class for 90 days from the entry of this Order.

DATED: June 12, 2026

David C. Nye
U.S. District Court Judge