UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COLE ROBINSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RAÚL LABRADOR, et al., <br><br> Defendants. | Case No. 1:24-cv-00306-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is a Motion to Dismiss filed by Centurion LLC (Dkt. 72), a Motion to Dismiss filed by Brad Little and Raúl Labrador (Dkt. 75), and a Motion to Amend Answer filed by Josh Tewalt and Bree Derrick (Dkt. 106).[1] Centurion, LLC ("Centurion") moves to dismiss on personal jurisdiction and Rule 12(b)(6) grounds. Brad Little and Raúl Labrador ("the State Officers") move to dismiss because they are improper defendants under *Ex parte Young*. And Tewalt and Derrick ("IDOC Defendants") move to amend their answer to state counterclaims for declaratory judgments on the validity of Idaho Code § 18-8901 (the "Act").[2]

---

[1] Since these motions were filed, Josh Tewalt vacated the office of IDOC director and has been replaced by Bree Derrick, formerly the IDOC deputy director. The office of deputy director appears to be currently vacant or unused. Under Federal Rule of Civil Procedure 25(d), Bree Derrick was substituted for Josh Tewalt by operation of law on the date of her appointment. All future proceedings shall refer to Bree Derrick as the IDOC director, except as necessary to avoid confusion or to refer to Josh Tewalt personally.

[2] The Court finds that oral argument would not significantly aid its decision-making process. Accordingly, the Court will decide the motions on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

MEMORANDUM DECISION AND ORDER - 1

For the reasons which follow, the Court DENIES Centurion's Motion AS MOOT, GRANTS the State Officers' Motion as to Governor Little, DENIES the same as to Attorney General Labrador, and DENIES IDOC Defendants' Motion.

## II. BACKGROUND

Plaintiffs are a putative class of Idaho Department of Corrections ("IDOC") inmates experiencing gender dysphoria. They allege the Act, which prohibits the use of public funds for medical interventions that "alter[] the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex," Idaho Code § 18-8901(2), will deprive them of medical care in deliberate indifference to their serious medical needs.

Plaintiffs have sued several individuals and organizations which are, or may be, responsible for implementing the Act: Raúl Labrador as Attorney General for the State of Idaho, Brad Little as Governor of the State of Idaho, Josh Tewalt as the Director of IDOC, Bree Derrick as Deputy Director of IDOC, IDOC's medical contractor Centurion of Idaho, LLC, and Centurion of Idaho, LLC's parent company, Centurion, LLC.

In a prior order, the Court certified the proposed class and enjoined enforcement of the Act as it applied to the use of state funds for providing hormone therapy while this lawsuit was pending. Dkt. 58, at 28. Consistent with the provisions of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(2), the Court has issued new injunctions every 90 days on a showing by Plaintiffs that preliminary relief is still warranted. *See* Dkts. 95, 120, 137; 150; 180; 186; 204.

Meanwhile, Centurion and State Officers have moved to dismiss. Centurion argues

MEMORANDUM DECISION AND ORDER - 2

the Court cannot exercise jurisdiction over it on personal jurisdiction grounds, and that it cannot be held vicariously liable for its subsidiaries' torts under § 1983. *See generally* Dkt. 72-1. State Officers argue they are not proper defendants under the doctrine of *Ex parte Young*, which establishes a limited exception to the Eleventh Amendment immunity accorded state officers acting in their official capacities. *See generally* Dkt. 75-1. Finally, the IDOC Defendants moved to amend their answer to state counterclaims for declaratory relief regarding the constitutionality of the Act. *See generally* Dkt. 106-1. Plaintiffs have responded to each motion, *see* Dkts. 88; 89; 117, and the respective movants have replied, *see* Dkts. 98; 100; 127. Additionally, the Court previously granted Plaintiffs leave to file a sur-reply regarding State Officers' Motion, Dkt. 107, which Plaintiffs filed, Dkt. 108. The State Officers filed a brief sur-surreply. Dkt. 109.

The matters are ripe for decision.

### III. LEGAL STANDARDS

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss claims for lack of subject matter jurisdiction. The objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). "Dismissal for lack of jurisdiction is not warranted to the extent that the complaint pleads facts from which federal jurisdiction clearly may be inferred." *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242

MEMORANDUM DECISION AND ORDER - 3

(9th Cir. 2000).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

**B. Motion to Dismiss for Lack of Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) permits defendants to object that the Court lacks personal jurisdiction over them. Under Federal Rule of Civil Procedure 4(k), federal courts sitting in diversity jurisdiction have personal jurisdiction to the extent permitted by the long-arm statute of the state in which they sit.[3] Idaho's long-arm statute authorizes the exercise of "all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023). Whether the exercise of jurisdiction satisfies due process turns on "the nature and extent of the defendant's relationship to the forum State." *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

Personal jurisdiction can be general or specific. *Id.* General jurisdiction applies when a defendant is "essentially at home" in the forum state. *Davis*, 71 F.4th at 1161. Corporations are essentially at home in state of incorporation and their principal place of

---

[3] Federal courts also have personal jurisdiction over persons served within 100 miles of the courthouse where the summons was issued, when authorized by federal law, or (in cases arising under federal law) over persons who are subject to the personal jurisdiction of the United States as a whole but not any state individually. Fed. R. Civ. P. 4(k)(1)(B–C); 4(k)(2). Plaintiffs do not base their argument for personal jurisdiction on any of these theories.

business. *Id.* General jurisdiction extends to all claims against the defendant concerning events and conduct anywhere in the world. *Id.*

Specific jurisdiction, on the other hand, permits jurisdiction over a defendant less intimately connected with the forum state. *Id.* To assert specific jurisdiction, the defendant must have taken some act by which it purposefully avails itself of the privilege of conducting activities within the forum state. *Id.* But, given the more limited contacts with the forum state, this type of jurisdiction is "case-linked," only covering a narrower class of claims. *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To assert specific jurisdiction consistent with due process, the plaintiff's claims must *arise out of* or *relate to* the defendant's contacts with the forum state. *Id.*

In *Cox v. Gritman Medical Center*, the Ninth Circuit listed three requirements for exercising specific jurisdiction over an out-of-state defendant: "(1) the defendant must have minimum contacts with the forum; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." 170 F.4th 724, 735 (9th Cir. 2026) (citation modified). The plaintiff bears the burden on the first two elements; if the plaintiff carries that burden, the defendant bears the burden to show that the third element is not satisfied. *Id.* (citing *Briskin v. Shopify*, 135 F.4th 739, 751 (9th Cir. 2025)).

In deciding a Rule 12(b)(2) motion, the Court may look past the pleadings to affidavits if necessary to resolve the motion. *Carmen v. Breville USA, Inc.*, 2017 WL 1197678, at *2 (D. Idaho Mar. 30, 2017). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie

showing of jurisdictional facts. In such cases, [courts] only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation modified). Uncontroverted allegations in the complaint must be accepted as true, and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

### C. Motion to Amend an Answer

Rule 15(a)(2) provides that once a responsive pleading has been filed, a party may amend its pleading only with the opposing party's written consent or the court's leave. Leave of the Court must be freely given when justice requires. *DCD Program v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The underlying purpose of Rule 15 is to facilitate a decision on the merits, rather than on the pleadings or technicalities. *Stanton v. Battelle Energy Alliance, LLC.,* 83 F. Supp. 3d 937, 948 (D. Idaho 2015). The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) is in the sole discretion of the trial court. *Id.* at 949. The Court is to consider five factors when determining whether leave to amend should be granted: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether movant has previously amended its pleading. *In re W. State Wholesale Nat. Gas Antitrust Litig.,* 715 F.3d 716, 738 (9th Cir. 2013).

### IV. DISCUSSION

### A. Centurion's Motion to Dismiss

Centurion moves to dismiss because the Complaint fails to state a claim and because the Court lacks personal jurisdiction over it. Plaintiffs' personal jurisdiction argument

depends, in large part, on allegations in the Amended Complaint that, "[u]pon information and belief, Centurion, LLC directly employs healthcare providers responsible for ensuring that proper medical, dental, psychiatric, and psychological services, and treatment are provided to inmates incarcerated under IDOC's jurisdiction." Dkt. 65, at ¶ 57.

However, since Centurion filed its Motion, the Court granted Plaintiffs' unopposed Motion to Amend, Dkt. 180, making the Second Amended Complaint (Dkt. 158-3) the operative complaint. The Second Amended Complaint's equivalent paragraph to ¶ 57—renumbered ¶ 59—includes changes which were not identified by either party or in Plaintiffs' redline. Dkt. 158-4, at ¶ 59. Where the Amended Complaint alleged that Centurion, LLC, directly employs Idaho-based healthcare providers responsible for IDOC inmates' medical and psychological treatment, the Second Amended Complaint alleges simply that, "[a]s IDOC's contract medical provider, Centurion is responsible for ensuring that proper medical, dental, psychiatric, and psychological services, and treatment are provided to inmates incarcerated under IDOC's jurisdiction." Dkt. 158-3, at ¶ 59.

Because Plaintiffs' prior opposition to Centurion's 12(b)(2) motion hinged in substantial part on language that is no longer in the operative complaint, *see* Dkt. 89, at 7–8, the Court finds that Centurion's 12(b)(2) motion to dismiss is moot. And because the Court cannot proceed to the merits of Centurion's 12(b)(6) motion until it determines whether it has personal jurisdiction over Centurion, *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007), the 12(b)(6) portion of Centurion's motion is moot as well.

Accordingly, Centurion's Motion to Dismiss (Dkt. 72) is DENIED AS MOOT

MEMORANDUM DECISION AND ORDER - 7

without prejudice to Centurion's right to refile its motion to address whether, on the allegations of the Second Amended Complaint, the Court has personal jurisdiction over it.

**B. State Officers' Motion to Dismiss**

Governor Little and Attorney General Labrador argue they are entitled to Eleventh Amendment immunity for suits against them in their official capacity. Plaintiffs argue that either or both are proper defendants under the doctrine of *Ex parte Young*.

The Eleventh Amendment immunizes states from suit without their consent. U.S. Cont. amend. xi. The "state," for purposes of the Eleventh Amendment, includes the state per se, its agencies, and—usually—its officers when sued in their official capacities. *See Ex parte Young*, 209 U.S. 123, 150 (1908).

> However, under *Ex parte Young . . .* , this immunity is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with enforcement of the act.

*Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (citation modified).

Both Governor Little and Attorney General Labrador argue they have a merely generalized duty to enforce the law, rather than specific duties with respect to the Act. The Governor is correct. The Attorney General is not.

*1. Governor Little*

Plaintiffs allege Governor Little is a proper defendant because Idaho law requires him to terminate the IDOC director if the director violates the Act. The Act defines distributing funds in violation of its terms as "misuse of public funds," citing Idaho Code § 18-5702. Idaho Code § 18-8901(7). Idaho Code § 18-5702, in turn, provides that "any

public officer or employee who pleads guilty to or is found guilty of [misuse of public funds] shall be terminated for cause from the public office or employment subject to any procedures applicable to such termination." Idaho Code § 18-5702(5)(a). Because the IDOC director's removal is not otherwise provided for by law, the Governor is tasked with removing the IDOC director.[4] *See* Idaho Code § 67-2404(2); *see also* Richard Seamon, *Idaho Administrative Law: A Primer for Students and Practitioners*, 51 IDAHO L. REV. 421, 472 (2015). Plaintiffs argue the Governor's putative obligation to remove the IDOC director constitutes "some connection" with the enforcement of the Act.

"The 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Mecinas*, 30 F.4th at 903–04 (citing *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). But because governors' responsibilities typically constitute a generalized duty to faithfully execute the law and supervise the executive branch, they are often improper *Ex parte Young* defendants. *See, e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013); *King v. Youngkin*, 122 F.4th 539, 548 (4th Cir. 2024); *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023); *Bio Gen LLC v. Sanders*, 142 F.4th 591, 605 (8th Cir. 2025).

---

[4] Defendants question Plaintiffs' constitutional premise that *only* the Governor can remove the IDOC director, arguing that the Board of Corrections has the power to remove the IDOC director as well. The Court is not sure the distinction matters. Even if the Governor bore the sole responsibility for firing the IDOC director, the Court would still find the connection insufficient because the Governor's obligation: a) is nondiscretionary, and b) arises out of his general supervisory responsibilities over executive officials. *Cf. Animal Legal Def. Fund v. Otter*, 44 F. Supp. 3d 1009, 1017 (D. Idaho 2014) (nondiscretionary acts taken as a response to another officers' prosecution of a law cannot establish proper party status).

MEMORANDUM DECISION AND ORDER - 9

This case is no exception. The Governor's obligation to remove the IDOC director arises from a statute governing removal of executive branch officials in general. Idaho Code § 67-2404(2). In fact, the Governor owes *no* obligations under the Act until: a) the IDOC director violates the Act, and b) a *different* executive officer successfully prosecutes the IDOC director—two levels of separation from Plaintiffs' alleged injury.[5] Idaho Code §§ 18-8901; 18-5702. And if the IDOC director is convicted, the Governor's resulting obligations are entirely ministerial. *Cf. Animal Legal Def. Fund*, 44 F. Supp. 3d at 1017 (declining to find the Idaho Governor a proper defendant in part due to the ministerial nature of his obligations).

Such generalized obligations to enforce and supervise do not make the Governor a proper defendant. *See id.*, *see also Minnesota Chapter of Associated Builders & Contractors v. Ellison*, 153 F.4th 695 (8th Cir. 2025), *Forward, Inc. v. Macomber*, __ F.4th __, 2025 WL 4785110, at *2–3 (9th Cir. Apr. 27, 2026) (connection to enforcement of the challenged law must be "fairly direct" as opposed to mere "supervision, management, and control" in general).

---

[5] Plaintiffs argue that "no other state actor needs to decide whether to enforce H.B. 668 for the Governor's enforcement duty to attach." Dkt. 88, at 14. But the Governor's alleged "duty" arises out of Idaho Code § 18-5702(5), which provides that, "[i]n addition to any penalty imposed in this section, any public officer or public employee *who pleads guilty to or is found guilty of a violation* . . . shall: (a) Be terminated for cause from the public office . . . ." (emphasis added). Plaintiffs do not explain why guilt is not a predicate to removal under the Act, even though it is a predicate under the enforcement scheme the Act adopts by reference. Because conviction is an express predicate to the Governor's alleged duty under Idaho Code § 18-5702(5), and because the Act adopts the provisions of Idaho Code § 18-5702 by reference, the Court finds that conviction is a predicate to the Governor's removal obligations under the Act. Of course, the Governor may be able to terminate the IDOC Director if he became convinced the IDOC Director had misused public funds without waiting for a conviction. But in that case, the Governor would be acting out of his discretion to supervise the executive branch rather than pursuant to a statutory duty. The fact the Governor might terminate the IDOC Director in his general discretion cannot constitute "some connection" to the Act.

MEMORANDUM DECISION AND ORDER - 10

Plaintiffs argue Governor Little is a proper defendant based on three cases meriting mention here. First, Plaintiffs cite *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71 (2d Cir. 2007), for the proposition that unconstitutionally terminated public servants can challenge their termination through *Ex parte Young* actions. Dkt. 88, at 10. That may be true, but it does not help Plaintiffs. To be a proper defendant, a state officer must have a "fairly direct" connection to the enforcement of the unconstitutional act or policy. *See Macomber*, 2025 WL 4785110 at *2–3. In unconstitutional termination cases, the connection is as direct as it gets: the terminating official terminated the plaintiff, and the termination itself was the unconstitutional act. *See, e.g.*, *Rowland*, 494 F.3d at 78–79.

But here, the Governor would allegedly terminate someone other than the plaintiffs, the termination would not itself be an unconstitutional act, and the Governor's termination obligations only arise after a different official has successfully prosecuted the IDOC director for failing to enforce an unconstitutional policy. Even then, the Governor has no discretion in performing his duty. The connection between the allegedly unconstitutional act and the Governor's obligations is far more attenuated than in the usual unconstitutional termination cases.

Plaintiffs also cite *Los Angeles Cnty. Bar Ass'n v. Eu*, where the Ninth Circuit found the California governor was a proper defendant in a suit challenging the constitutionality of California's court system. 979 F.2d 697, 700 (9th Cir. 1992). The *Eu* court found that the governor's appointment power was a sufficient connection in that case. *Id.* at 704. But in doing so, the Ninth Circuit explicitly distinguished *Eu* from cases in which an allegedly unconstitutional act or policy is "enforced." *Id.*; *see also Snoeck v. Brussa*, 153 F.3d 984,

MEMORANDUM DECISION AND ORDER - 11

987 (9th Cir. 1998) (distinguishing *Eu* because an entity—the Nevada Supreme Court—could enforce the challenged rules). This case concerns whether Idaho officers can constitutionally enforce the Act; *Eu* is thus inapposite.

Finally, Plaintiffs note that in the Third Circuit, "even entirely ministerial duties can be sufficient under *Young*, because the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Const. Party of Pennsylvania v. Cortes*, 824 F.3d 386, 396 (3d Cir. 2016) (citation modified). But even if the Third Circuit's opinion was binding here, and even if ministerial duties *can* be sufficient under *Young*, that does not mean their ministerial status is totally irrelevant to determining whether the defendant has a "fairly direct" connection to the law's enforcement.

Here, the Court finds that a combination of factors suggest the Governor's connection to the Act is not "fairly direct." *See Macomber*, 2025 WL 4785110 at *2–3. The Act itself does not create the Governor's duty; rather, the duty is the product of the Act's interaction with two unchallenged laws. The duty is triggered only after one officer commits misconduct and another successfully prosecutes the first. And yes, the Court considers it relevant that the duty is nondiscretionary. *Cf. Animal Legal Def. Fund*, 44 F. Supp. 3d at 1017. But the nature of the Governor's Act matters far less than the several layers of insulation between the Governor and the Act's enforcement mechanisms.

Accordingly, the Court GRANTS the State Officer's Motion to Dismiss as to

Governor Little.[6] Because the Governor's *Ex parte Young* liability under the Act is a pure question of law, amending the complaint to add additional factual allegations would not cure the deficiency. Leave to amend is, therefore, DENIED as futile. *See Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

2. *Attorney General Labrador*

The Ninth Circuit and this District have repeatedly found the Idaho Attorney General to be a proper *Ex parte Young* defendant when the challenged law creates criminal liability. *See, e.g.*, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919–20 (9th Cir. 2004); *Pocatello Educ. Ass'n v. Heideman*, 123 F. App'x 765, at *1 (9th Cir. 2005); *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*, 32 F. Supp. 3d 1143, 1148–50 (D. Idaho 2014); *Almerico v. Denney*, 532 F. Supp. 3d 993, 1000–01 (D. Idaho 2021); *Poe by Poe v. Labrador*, 709 F. Supp. 3d 1169, 1188–89 (D. Idaho 2023); *Poe by Poe v. Labrador*, 2024 WL 170678, at *1–2 (D. Idaho Jan. 16, 2024); *Matsumoto v. Labrador*, 122 F.4th 787, 802–03 (9th Cir. 2024); *Planned Parenthood Greater Nw. v. Labrador*, 684 F. Supp. 3d 1062, 1077–79 (D. Idaho 2023), *aff'd sub nom. Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 842–43 (9th Cir. 2024).

The Attorney General's liability to suit under *Ex parte Young* typically arises out of his "assistance" power, codified at Idaho Code § 67-1401(7). Starting in *Planned Parenthood of Idaho, Inc. v. Wasden*, the Ninth Circuit found that under Idaho law, the

---

[6] Because the Court dismisses the Governor for lack of jurisdiction, it cannot reach the Governor's arguments that he is immune from suit for his legislative and executive acts.

Attorney General could assist county prosecutors, and when doing so could perform every act the county prosecutor could perform (so long as the prosecutor does not object). 376 F.3d at 919–20 (citing *Newman v. Lance*, 922 P.2d 395, 399–401 (Idaho 1996)). The Ninth Circuit found the Attorney General's assistance power made him a proper defendant under *Ex parte Young* and the constitutional standing analysis. *Wasden*, 376 F.3d at 920.

The Attorney General argues he is not a proper defendant because he cannot use his "assistance" powers until a county prosecutor independently initiates a prosecution. Dkt. 75-1, at 9. The Ninth Circuit has recently held that distinction immaterial to the *Ex parte Young* analysis. *See Planned Parenthood Great Nw*, 122 F.4th at 843. The Court is bound by that holding.

The Attorney General next argues he is not a proper defendant because the Attorney General's authority under the Act is limited to prosecuting the IDOC director rather than Plaintiffs. Dkt. 75-1, at 10. Because the Attorney General cannot prosecute the Plaintiffs, he argues, the Plaintiffs' injury is not fairly traceable to him, nor would an injunction against him redress their alleged injury.

Plaintiffs argue the Attorney General confuses the proper defendant inquiry with the constitutional standing inquiry. Dkt. 88, at 9. The two analyses are "closely related— indeed overlapping." *Mecinas*, 30 F.4th at 903 (citation modified). But the *Ex parte Young* and Article III inquiries are, nonetheless, distinct. *Wasden*, 376 F.3d at 919. For instance, the imminence of the defendant's enforcement role and willingness to perform that role are aspects of the Article III standing inquiry but not the *Ex parte Young* inquiry. *Matsumoto*, 122 F.4th at 803.

MEMORANDUM DECISION AND ORDER - 14

Although the Attorney General does not squarely raise an Article III standing objection, "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). And in *Wasden*, the Ninth Circuit treated constitutional traceability and redressability as a part of the proper defendant analysis. *Wasden*, 376 F.3d at 919 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Thus, to the extent the standing analysis "overlaps" with the *Ex parte Young* analysis, the Court will evaluate the overlapping issues under both Article III and *Ex parte Young*.

Traceability (sometimes called "causation") and redressability are "flip sides of the same coin." *See Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 111–12 (2025). "When a plaintiff is the 'object' of a government regulation, there should 'ordinarily' be 'little question' that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries." *Id.* at 114 (citing *Lujan*, 504 U.S. at 561). But if the court can reasonably predict that a regulation will cause the directly regulated party to injure individuals who are not directly regulated, those individuals may have standing as well. *Id.* Put differently, "Article III standing cannot be supported by the 'independent action of some third party not before the court,' but 'that does not exclude injury produced by determinative or coercive effect upon the action of someone else.'" *San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1170 (9th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

If Plaintiffs can show traceability, they must show redressability as well. "To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (citation modified). "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "Partial amelioration of a harm also suffices for redressability." *Matsumoto*, 122 F.4th at 801. In evaluating a motion to dismiss based on a lack of standing, the Court accepts as true all well-pleaded facts and draws all reasonable inferences in the light most favorable to the plaintiff. *See Lujan*, 504 U.S. at 561.

The Attorney General argues his responsibilities under the Act could not cause Plaintiffs harm unless the IDOC director was willing to violate the Act but cowed into compliance by the Attorney General's enforcement power. At this stage, *see id.*, that allegation is sufficient. Whether the IDOC director was subjectively willing to violate the Act or not, the Act's incorporation of Idaho Code § 18-5702 would have a "powerful coercive effect" on the IDOC director. *See Bennett*, 520 U.S. at 169; *see also Salazar*, 638 F.3d at 1170–71. It is probable, rather than merely speculative, that the IDOC director would not feel free to violate the Act if the director was otherwise so inclined. At the pleading stage, the Attorney General's authority to coerce the IDOC director into compliance is sufficient for traceability/causation.

For the same reasons, an injunction against the Attorney General would redress Plaintiffs' injury by abating the Act's coercive effect on the IDOC director, leaving the

MEMORANDUM DECISION AND ORDER - 16

director freer to comply with the Eighth Amendment (assuming, as the Court must on this procedural posture, that the Act violates the Eighth Amendment). *See Diamond Alternative Energy*, 606 U.S. at 117 (enjoining a policy designed to have a particular effect will ordinarily reduce the effect).

Because Plaintiffs' alleged injury is traceable to the Attorney General's authority to prosecute the IDOC director under Idaho Code § 18-5702, and because an injunction barring that authority would redress Plaintiffs' injury, the Court finds Plaintiffs have standing to challenge the Act. The Attorney General's attempts to distinguish this case from *Wasden* and its progeny must also fail, as the Attorney General's authority to prosecute the IDOC director constitutes a sufficient connection to the Act to make him a proper defendant under *Ex parte Young*. *Wasden*, 376 F.3d at 920 (treating the proper defendant analysis as satisfied by the same factors as the constitutional standing analysis).

In sum, the Idaho Attorney General, but not the Governor of the State of Idaho, can be sued under *Ex parte Young* with respect to the Act. Accordingly, the State Officers' Motion to Dismiss is GRANTED as to Governor Little and DENIED as to Attorney General Labrador.

### C. IDOC Defendants' Motion to Amend

Finally, the IDOC Defendants seek to amend their answer to seek two declarations: first, that the Act does not expose them to damages liability (the "damages counterclaim"), and second, that the Act's prohibitions on gender-affirming surgery do not violate the Eighth Amendment (the "surgical counterclaim"). Dkt. 106. IDOC Defendants argue these issues are not directly raised in this action but should be addressed to avoid the

MEMORANDUM DECISION AND ORDER - 17

"Damoclean" threat of impending litigation. Dkt. 106, at 5. Plaintiffs object that amendment would be futile because the damages counterclaim is redundant, absent class members are not "opposing parties" under Rule 13, and Defendants' surgical counterclaim is not yet ripe as against the named Plaintiffs.

### 1. Damages Counterclaim

Plaintiffs argue the damages counterclaim is redundant because the operative Complaint already raises the issue of whether the Act causes a constitutional violation. The IDOC Defendants argue their counterclaim is not redundant because, without it, the Court may not decide the constitutionality of the Act regarding surgical interventions, and because it is necessary to preserve their jury trial rights.

What neither party addresses—but what turns out to be dispositive on this issue— is the fact that the IDOC Defendants do not have standing to raise this counterclaim.[7] The IDOC Defendants define "Counterclaimants" as "Josh Tewalt, *in his official Capacity* as the Director of the Idaho Department of Corrections (IDOC), and Bree Derrick, *in her official capacity* as the Deputy Director of IDOC." Dkt. 106-3, at ¶ 8 (emphasis added).[8] Yet the damages counterclaim seeks a declaration that the Act "does not give rise to liability for damages against Counterclaimants *in their individual capacities*." *Id.* at ¶ 30 (emphasis added).

---

[7] The Court must address the issue of standing *sua sponte*, as it implicates the Court's subject matter jurisdiction. *FW/PBS*, 493 U.S. at 231; *see also* Fed. R. Civ. P. 12(h)(3); *Vasquez Perdomo v. Noem*, 148 F.4th 656, 673 (9th Cir. 2025).

[8] As noted above, the IDOC Director is now Bree Derrick, and the office of deputy director is presently vacant.

"[T]he distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (citation modified). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25.

Put simply, an office and its occupant are different people with different rights, defenses, and liabilities. *See id.* (contrasting an office's Eleventh Amendment immunity and *Monell* liability with an individual's common law immunities and traditional § 1983 liability). It is for that reason that "a government official in his official capacity is not in privity with himself in his personal capacity" for res judicata purposes. *Greiser v. Chavez*, 2023 WL 4680765, at *9 (C.D. Cal. May 11, 2023) (collecting cases).

So the question is: does the Office of the IDOC director have standing to assert the claims and defenses of its occupants? Standing requires three elements: injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation modified).

The office of the IDOC director lacks any legally protected interest in the individual liability of its present occupant. The IDOC director cannot be made liable for the torts of its occupant, *Kentucky v. Graham*, 473 U.S. 159, 167 (1985), and a ruling that the occupant

MEMORANDUM DECISION AND ORDER - 19

was acting unconstitutionally cannot constrain the office's legitimate discretion. Because the office of the IDOC director has no legally protected interest in the liability of its occupant, the office of the IDOC director lacks standing to establish whether its occupant is personally liable.

Because the IDOC director lacks standing to assert the damages counterclaim, amendment would be futile.

### 2. Surgical Counterclaim Against Absent Class Members

Federal Rule of Civil Procedure 13 permits parties to counterclaim against "opposing parties." Courts in this Circuit and across the country have held absent class members are not "opposing parties" within the meaning of Rule 13. *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 WL 4353550, at *4–5 (N.D. Cal. Aug. 13, 2013); *Strickland v. Truckers Exp., Inc.*, 2006 WL 8067553, at *3–4 (D. Mont. Oct. 30, 2006); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259–60 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Portillo v. Nat'l Freight, Inc.*, 2021 WL 1884892, at *3–4 (D.N.J. May 11, 2021).

Although some courts have nonetheless permitted counterclaims against absent class members, they do so only with the caveat that the decision to permit a counterclaim against absent class members is committed to the discretion of the district court. *See, e.g.*, *Allapattah*, 333 F.3d at 1259 n.14. Because counterclaims against absent class members are in tension with the purposes of class actions, such counterclaims—called "discretionary" counterclaims—are disfavored. *See Circle Click Media LLC*, 2013 WL

MEMORANDUM DECISION AND ORDER - 20

4353550, at *5; *see also* 3 *Newberg and Rubenstein on Class Actions* §§ 9:23–9:28 (6th ed. 2026).

The Court declines to authorize the IDOC Defendants' counterclaim because the class, as certified, is not the proper defendant for the relief the IDOC Defendants seek. The IDOC Defendants ask for a judgment that the Act is constitutional with respect to *surgical interventions*, but the certified class in this case includes "all incarcerated persons in the custody of IDOC who are, or will be diagnosed with Gender Dysphoria, *and are receiving, or would receive hormone therapy*." Dkt. 58, at 28. There might be substantial overlap between the group of IDOC inmates seeking hormone-replacement therapy and those seeking gender-affirming surgery. But the groups are not necessarily identical. There may be IDOC inmates who desire hormone replacement therapy who do not want surgery, and even (possibly) inmates who desire surgery but not hormone therapy.

In the context of class actions, the possible distinction matters. As the Supreme Court has recently emphasized, the ability to bind nonparties to a judgment "can come about in federal courts in just one way—through the procedure set out in Rule 23." *See Trump v. CASA, Inc.*, 606 U.S. 831, 849–50 (2025). Rule 23 requires the Court to certify, among other things, that the class is too numerous to be joined in traditional litigation, the claims and defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). Unless Rule 23's requirements are met with respect to the claims at issue, nonparties cannot be bound by the judgment. *See CASA*, 606 U.S. at 849–50.

MEMORANDUM DECISION AND ORDER - 21

The IDOC Defendants have not explained how a counterclaim against the Plaintiff class would satisfy the requirements of Rule 23(a) as to the existing class, nor have they moved to certify a new class or subclass. There is insufficient evidence before the Court to show that the surgical counterclaim involves too many claimants to litigate traditionally. The Court cannot determine that the named plaintiffs' experiences are typical of IDOC inmates seeking sex reassignment surgery. Nor have IDOC Defendants shown the named plaintiffs would adequately represent that interest. At base, the IDOC Defendants seek to litigate the surgical counterclaim against one group of nonparties—who, as presently defined, have no legal interest in or right to litigate the issue of sex reassignment surgery—in order to dispose of the claims of another. Rule 23 prevents them from doing so. The Court thus declines to authorize a discretionary counterclaim against the absent plaintiffs.[9] Amendment is, therefore, futile here as well.

*3. Surgical Counterclaim Against Named Plaintiffs*

With the damages counterclaim dismissed for lack of standing, and the surgical counterclaim denied as to the absent plaintiffs, the Court must determine whether the surgical counterclaim against the named plaintiffs would be futile. The Court determines that it would.

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party," but only "[i]n a case of actual controversy . . .

---

[9] By this ruling, the Court takes no position on the propriety of IDOC Defendants would succeed in certifying a defendant class if they sought to do so in an appropriate motion. The Court merely notes that the absent defendants, as that group is presently defined in this case, are not the proper defendants for the IDOC Defendants' surgical counterclaim.

MEMORANDUM DECISION AND ORDER - 22

." 28 U.S.C. § 2201. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Put differently, "a plaintiff has standing to seek declaratory relief . . . if he demonstrates a real and reasonable apprehension that he will be subject to liability if he continues with his course of conduct." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1023 (9th Cir. 2023) (citation modified).

Robinson is the only named plaintiff named in the counterclaim allegations, but the allegations show, at most, a desire to obtain sex reassignment surgery at some point, not the present belief that sex reassignment surgery is medically necessary. Dkt. 106-3, at ¶ 21. The countercomplaint alleges Robinson testified that sex reassignment surgery is something that many class members would desire. In other materials of record—though not in the countercomplaint's allegations—Robinson expressed a personal desire to undergo sex reassignment surgery at some point. Yet nowhere does Robinson say that sex reassignment surgery would be medically necessary, and the IDOC Defendants do not point to anywhere in the record where a clinical provider opined that surgery was necessary in Robinson's case. Robinson may have been "approved" for surgery, and perhaps even a "good candidate." But neither being approved for surgery nor being a good candidate makes surgery medically necessary as might violate the Eighth Amendment. Indeed, Robinson's own statements seem to show some recognition that surgery may not be

MEMORANDUM DECISION AND ORDER - 23

medically necessary. *See* Dkt. 46-1, at 54:14–16 (recognizing medication as the basic standard of care for a gender dysphoric individual).

IDOC Defendants may have a reasonable apprehension that Robinson will seek sex reassignment surgery at some point in the future. But the complaint does not allege a reasonable apprehension that Robinson will assert a constitutional right to sex reassignment surgery. The IDOC Defendants do not, therefore, have a ripe controversy against Robinson regarding the surgery counterclaim.

Because the IDOC Defendants lack standing to assert the damages counterclaim, because the absent class members are improper defendants under the surgical counterclaim, and because the surgical counterclaim would be unripe as against Robinson, amendment would be futile. The IDOC Defendants' Motion to Amend is, therefore, DENIED.

## V. CONCLUSION

Class actions and civil rights actions are, by themselves, complicated creatures with uniquely arcane rules. This case is both simultaneously. The Court, therefore, thanks the parties for their able briefing. Because the Second Amended Complaint lacks the allegations on which Centurion's Motion to Dismiss turned, its Motion is DENIED AS MOOT without prejudice to its right to refile. Because the Attorney General, but not the Governor, is a proper party under *Ex parte Young*, their Motion is GRANTED IN PART and DENIED IN PART. And because the IDOC Defendants' proposed counterclaims would be futile, their Motion is DENIED.

## VI. ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Centurion, LLC's Motion to Dismiss (Dkt. 72) is DENIED AS MOOT. Centurion, LLC may refile its Motion to address the Second Amended Complaint should it have a reasonable basis to do so.

2. Governor Brad Little and Attorney General Raúl Labrador's Motion to Dismiss (Dkt. 75) is GRANTED IN PART and DENIED IN PART. Governor Brad Little is dismissed from this action with prejudice and without leave to amend.

3. Director Josh Tewalt and Deputy Director Bree Derrick's Motion to Amend Answer (Dkt. 106) is DENIED.

DATED: June 29, 2026

David C. Nye
U.S. District Court Judge